1  JEFFREY F. KELLER (SBN 148005)
   **KELLER GROVER, LLP**
2  425 Second Avenue, Suite 500
   San Francisco, California 94107
3  Telephone:    (415) 543-1305
   Facsimile:    (415) 543-7861
4  jfkeller@kellergrover.com

5  JOHN G. JACOBS (pending *PRO HAC VICE*)
   BRYAN G. KOLTON (pending *PRO HAC VICE*)
6  **THE JACOBS LAW FIRM, CHTD.**
   122 South Michigan Avenue, Suite 1850
7  Chicago, Illinois 60603
   Telephone: (312) 427-4000
8  Facsimile: (312) 427-1850
   jgjacobs@thejacobslawfirm.com
9  bgkolton@thejacobslawfirm.com

10 DAVID SCHACHMAN (pending *PRO HAC VICE*)
   **DAVID SCHACHMAN & ASSOCIATES, P.C.**
11 122 South Michigan Avenue, Suite 1850
   Chicago, Illinois 60603
12 Telephone: (312) 427-9500
   Facsimile: (312) 427-1850
13 ds@schachmanlaw.com

14 Attorneys for Plaintiff
   Joy Nwabueze
15

**IN THE UNITED STATES DISTRICT COURT**

16

**NORTHERN DISTRICT OF CALIFORNIA**

17
   JOY NWABUEZE, individually and on behalf )   Case 09
18 of a class of similarly situated individuals,   )
                                                   )   CLASS ACTION
19              Plaintiff,                          )
                                                   )   **COMPLAINT FOR DAMAGES,**
20 v.                                              )   **DECLARATORY AND**
                                                   )   **INJUNCTIVE RELIEF**
21 AT&T INC., a Delaware corporation,              )
   PACIFIC BELL TELEPHONE COMPANY                  )
22 d/b/a AT&T CALIFORNIA, a California             )   **DEMAND FOR JURY TRIAL**
   corporation and DOES 1 through 21,              )
23                                                 )
                Defendants.                        )
24                                                 )
                                                   )
25 _____)

26

27

28 **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
                                   - 1 -

1    Plaintiff Joy Nwabueze, on behalf of herself and a class and sub-class of similarly situated
2 individuals, brings this class action against AT&T Inc., Pacific Bell Telephone Company d/b/a
3 AT&T California and Does 1 through 21 (collectively "AT&T"), and alleges as follows upon
4 personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon
5 information and belief, including investigation conducted by her attorneys.

## I.    NATURE OF THE CASE

7    1.    This class action against AT&T involves a particularly abusive practice: the
8 unauthorized charging of consumers for products and services they have not purchased and the
9 illegal billing and collection of such charges. The problem lies in business practices AT&T has
10 adopted for billing and collecting on behalf of itself and myriad third-party companies for various
11 third-party products and services.

12    2.    AT&T knows that its third-party billing and collection system lacks sufficient checks
13 and safeguards to prevent unauthorized charges from being added to customers' wireline telephone
14 bills – indeed, to the contrary, it knows that there is a significant likelihood of unauthorized charges,
15 given the system presently used – yet it continues to bill and collect such third-party charges without
16 taking sufficient steps to ensure that the charges are in fact authorized by the persons legally
17 empowered to authorize such charges.

18    3.    AT&T is well aware from numerous sources – including its customer service
19 department who receives on a daily basis numerous calls from customers complaining of third-party
20 items billed on their AT&T bill that they know nothing about – of the widespread incidence of
21 unauthorized billing by it for third-party providers, yet fails to take with regard to its third-party
22 billings even the steps that it requires for one of its own customers to change his or her account with
23 AT&T to make sure that any person purporting to change the billing on that account is in fact an
24 authorized person.

25    4.    AT&T is by no means an innocent conduit in these matters, merely billing on behalf
26 of third parties and passing the collected money on to the third parties. Instead, AT&T is a full joint

27

28
COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

- 2 -

1 | venturer with the third-party providers and the aggregators involved in this system, keeping for itself
2 | a substantial portion of the amounts billed and collected for these third-party services.

3 | 5. As set forth below, Plaintiff and the Class and Sub-Class bring claims against AT&T
4 | for (a) violation of the Telecommunications Act of 1934, 47 U.S.C. §§ 201, *et seq.* (the "TCA"); and
5 | (b) breach of contract. Plaintiff and the Sub-Class bring additional claims against AT&T for
6 | violation of (a) California Public Utilities Code § 2890 (the "CPUC") and (b) California Business
7 | and Professions Code sections 17200, *et seq.*

8 | 6. Plaintiff and the Class and Sub-Class seek actual and exemplary damages, injunctive
9 | and declaratory relief, interest, costs, and reasonable attorneys' fees.

10 | **II. PARTIES**

11 | 7. Plaintiff Joy Nwabueze is a citizen of San Francisco, California.

12 | 8. Defendant AT&T Inc. ("AT&T Inc.") is the largest provider of local wireline
13 | telephone service in the United States. AT&T Inc. is a Delaware corporation with its headquarters
14 | and principal place of business in Dallas, Texas.

15 | 9. AT&T Inc. does business and has offices throughout the United States, including the
16 | State of California and this District. AT&T Inc., directly and/or through subsidiary corporations,
17 | partnerships, limited liability companies or other entities, provides local wireline telephone services
18 | in at least the following states: Alabama, Arkansas, California, Connecticut, Illinois, Indiana,
19 | Florida, Georgia, Kentucky, Louisiana, Kansas, Michigan, Mississippi, Missouri, Nevada, North
20 | Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas and Wisconsin. On information and
21 | belief, AT&T Inc. and its wireline subsidiaries provide local wireline telephone services to 35
22 | million retail consumer phone lines and 27 million retail and wholesale business phone lines.

23 | 10. AT&T Inc. provides telephone service in California through its subsidiary, Pacific
24 | Bell Telephone Company d/b/a AT&T California ("AT&T California"), a California corporation
25 | with its headquarters and principal place of business in San Francisco, California.

26
27
28

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 3 -

1    11.    Defendants Does 1 through 21 are additional AT&T-owned subsidiary corporations,
2 || partnerships, limited liability companies or other entities that provide AT&T wireline local
3 || telephone services. Plaintiff is unaware of the true names and capacities of the Defendants sued as
4 || Does 1 through 22.  Plaintiff will amend her complaint when the true names and capacities have
5 || been ascertained.    Each Doe Defendant is responsible in some actionable manner for the events,
6 || occurrences, injuries and damages alleged herein.

7                        III.    JURISDICTION

8    12.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, 47
9 || U.S.C. § 201, *et seq.*, and 28 U.S.C. § 1332(d).  This Court also has supplemental jurisdiction
10 || pursuant to 28 U.S.C. § 1367.

11                        IV.    VENUE

12    13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) and pursuant
13 || to 47 U.S.C. § 207.

14          V.    FACTS RELATING TO AT&T'S WIRELINE TELEPHONE
15                    BILLING AND COLLECTION SYSTEM

16    14.    The wireline telephone billing and collection system in the United States was initially
17 || devised and used exclusively by AT&T – when it was known colloquially as "Ma Bell" – when it
18 || maintained a monopoly over wireline telephone services in the United States.  The charges handled
19 || by "Ma Bell's" wireline telephone billing and collection system were limited to those generated
20 || through consumers' use of "Ma Bell" wireline telephone transmission services.

21    15.    That situation changed in the mid-1980s with the "The Bell Divesture," *i.e.*, the U.S.
22 || Justice Department's break-up of "Ma Bell" and "The Bell System."

23    16.    At that time, the units of The Bell System that had become local exchange carriers
24 || ("LECs"), such as AT&T, took over responsibility for billing and collection.

25    17.    LECs, including AT&T, also began billing and collecting not only on their own
26 || behalf for local telephone services, but also on behalf of other third-party companies ("third-party

27

28
COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 4 -

1  service providers") for third-party telecommunication products and services, such as long distance
2  services ("LEC third-party billing").

3      18.    Through the years, the LECs, including AT&T, have made their billing and collection
4  systems available to a myriad of providers of varied products and services. As a result, there has
5  been a proliferation in the number of service providers "piggybacking" on the LECs', including
6  AT&T's, billing and collection systems and a corresponding proliferation in the number and type of
7  products and services being billed for.

8      19.    Some of these products and services directly relate to "basic" telephone service, *i.e.*,
9  the transmission of telecommunications, some, such as voice mail services and long distance, are
10  offered and used through the telephone. Other products and services being billed for, however, are
11  further afield.

12      20.    For example, automobile roadside service clubs bill for memberships on consumers'
13  wireline telephone bills. Diet companies claiming to create personalized diet plans for consumers to
14  lose weight include recurring monthly subscription charges on wireline telephone bills. Credit repair
15  companies claim to help consumers fix their credit ratings and then charge hefty subscription fees on
16  their local phone bills.

17      21.    The products and services are typically subscription-based and renew automatically
18  each month, and the charges are included on the LEC customer's monthly bill, such as on AT&T's
19  bills.

20      22.    LECs such as AT&T are compensated for their billing and collection services by
21  retaining substantial portions of the amounts so billed and collected, typically based upon a
22  percentage of the billing revenue. AT&T typically purchases the accounts receivable from the
23  aggregators and other billers, bills and collects from its customers and then through a system of
24  allowances and refunds, effectively remits to the aggregators and other billers the amount of the
25  collected sums minus its cut.

26
27
28

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 5 -

1    23. Due to cost and other factors, only the largest third-party service providers are able to
2    bill directly through the LECs such as AT&T. Instead, the vast bulk of third-party service providers
3    (many of which are virtual operations without any substantial assets) typically turn to one of a
4    handful of third-party billing aggregators or billing clearinghouses ("billing aggregators"). Billing
5    aggregators act as intermediaries between the service providers and LECs, opening the gate to the
6    LECs' telephone billing and collection system for service providers by contracting with the LECs to
7    have charges on behalf of their service provider clients placed on consumers' telephone bills and to
8    have the LECs collect those charges. AT&T has devised and utilized at all relevant times a fully
9    computerized, standardized, systemized billing system, such that it requires all aggregators to pass
10   on to it for billing all bills in this standardized, systemized computerized format specified by AT&T
11   and requires that third-party providers provide data and information to the aggregators in the same
12   format.

13   24. Billing aggregators are compensated for their billing and collection services by
14   retaining a portion of the amounts so billed, typically based upon a percentage of the billing revenue.

15   25. Once the charges are billed and collected by the LECs such as AT&T, the LECs after
16   taking their cut, pass the remaining funds back to the billing aggregators, who in turn, take their cut
17   and pass the remaining funds back to their third-party service provider clients.

18   26. LEC third-party billing has become a very lucrative business for LECs, such as
19   AT&T, billing aggregators and third-party service providers.

20   **VI.    AT&T'S FLAWED THIRD-PARTY BILLING SYSTEM**

21   27. The largely unsupervised growth of the LEC third-party billing industry has led both
22   to the above-described structure and to a disastrous flaw within it. That flaw – understood,
23   perpetuated, and even encouraged by AT&T and other LECs, billing aggregators, and service
24   providers – is an open secret within the industry, but little understood outside of it.

25   28. Unlike more conventional billing and collection systems, such as credit cards and
26   checks, LEC third-party billing and collection systems, such as AT&Ts, lack sufficient checks or
27

28   COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
                                           - 6 -

1  safeguards to prevent billing and collection of unauthorized charges and instead effectively
2  encourage unauthorized billing.

3      29.     The bankcard billing and collection system, for example, has a number of
4  mechanisms to protect against the billing and collection of unauthorized charges. The most obvious
5  is that the bankcard billing and collection system uses, as a basis for billing charges, a physical card
6  with a unique account number assigned to each individual cardholder that, unlike a telephone
7  number, is not widely available to the public.

8      30.     Unlike transactions made using checks and credit cards, which use signatures, highly
9  private account numbers and various other security measures, under the system used by AT&T the
10  only thing a billing aggregator or service provider needs to charge a consumer for its products and
11  services is a telephone number. Once the service provider or billing aggregator has the number, they
12  can submit it to the LEC directly, or via a billing aggregator, to initiate billing for services.

13      31.     Using a telephone number as the basis for billing of products and services is a virtual
14  invitation to fraud and abuse because there is no reasonable basis for believing that the person
15  providing a telephone number is the LEC customer, that is, the person legally empowered to
16  authorize charges to that number.

17      32.     Indeed, *any person* capable of obtaining a consumer's telephone number can cause
18  charges for a product or service to be included on that consumer's phone bill.

19      33.     There are literally hundreds upon hundreds of third-party service provider websites
20  on the internet where anyone can initiate billing subscriptions by filling out and submitting
21  electronic forms, using *anyone's* phone number.

22      34.     The lack of sufficient checks or safeguards within the AT&T third-party billing and
23  collection system to prevent erroneous and unauthorized charges from being added to customers'
24  wireline telephone bills has led to rampant abuse of AT&T's wireline customers.

25
26
27
28
COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 7 -

35. AT&T knows, or is reckless in not knowing, that its third-party billing and collection system lacks sufficient checks or safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills.

36. AT&T knows, or is reckless in not knowing, that its third-party billing and collection system is subject to widespread abuse, and that it has, in fact, been so abused.

37. AT&T knows, or is reckless in not knowing, that significant amounts of money, in the millions of dollars, have been billed and collected by it on account of such unauthorized charges.

38. Nonetheless, AT&T continues to bill and collect third-party charges, without taking sufficient steps to ensure that such charges have in fact been authorized by the person legally empowered to authorize charges billed to that number ("valid authorizations").

39. AT&T has a policy and practice of not obtaining valid authorizations directly from its telephone customers, but rather purports to rely upon its billing aggregators and/or third-party services providers to obtain such authorizations, even though it knows or is reckless in not knowing that the billing aggregators and/or third-party service providers are not obtaining such authorizations. Instead, AT&T uses a standardized contract with its aggregators that purports to shift the burden to the aggregators to only submit billing from third-party providers who represent that they will only submit billing based upon valid authorizations. AT&T continues to improperly shift responsibility to third parties for obtaining authorization even though it knows or is reckless in not knowing that on a widespread and recurring basis, charges are in fact being sent from the third-party providers through the aggregators via AT&T to AT&T's customers that are not based on valid authorizations. AT&T places this language into its contracts with the aggregators so as to seek to give it plausible deniability with respect to the unauthorized charges for which it bills its customers that it knows or is reckless in not knowing are not based on valid authorizations.

40. AT&T has a policy and practice of not verifying whether the billing aggregators and/or third-party service providers obtained valid authorizations, before placing third-party charges on customers' bills, instead satisfying itself with its contractual requirements that valid

1   authorizations be obtained, even though it knows or is reckless in not knowing that on a widespread
2   and recurring basis, valid authorizations are not being obtained.

3       41.    As a result, AT&T has for years systematically, repeatedly and uniformly billed and
4   collected millions of dollars of charges from its customers for products and services that its
5   customers never authorized. AT&T, billing aggregators and third-party service providers have, on
6   information and belief, profited greatly from this conduct.

7       42.    AT&T's conduct constitutes a deliberate and willful scheme to cheat large numbers
8   of people out of small amounts of money.

9       43.    Because the amount AT&T is taking is small on an individual basis – as little as a few
10  dollars to at most several hundreds of dollars per customer – and because of AT&Ts vast resources
11  and superior bargaining power, AT&T employs this scheme with the hope and expectation that its
12  illegal conduct will go undetected and unpunished.

13      44.    Unchecked, AT&T's practices will injure an ever-increasing number of unwitting
14  consumers, inflicting damages of an untold magnitude.

15              VII.    AT&T'S TELEPHONE BILLS

16      45.    AT&T's billing and collection of unauthorized charges is further exacerbated by the
17  misleading and deceptive nature of the telephone bills it uniformly sends to customers. AT&T's
18  telephone bills are misleading and deceptive in that consumers are led to believe that the charges on
19  the bill are legitimate by the very fact of their inclusion in the amount indicated as owed to AT&T
20  on the bill. The placing of a charge for products or services on a telephone bill is a representation
21  that the subscriber has in fact authorized any such charge included on the bill and actually owes that
22  sum.

23      46.    AT&T bills customers for charges and represents to them that they owe money (i.e.,
24  charges were authorized) when AT&T either knows that the charges were not authorized or at least
25  lacks a reasonable basis to believe that they were authorized.

26      47.    AT&T's telephone bills also uniformly contain misleading and/or unclear billing
27  descriptions. The charges that appear on customers' bills are not sufficiently identified or explained;

28
COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 9 -

1  thus, a reasonable consumer cannot determine whether he or she actually requested and received the
2  services for which the charge is made.

3      48.    AT&T's telephone bills also uniformly contain misleading and/or unclear
4  descriptions of the manner in which disputes regarding the third-party charges could be addressed
5  and lack sufficient information (such as the date the charges were authorized, the manner in which
6  they were authorized, the name of the person who authorized the charges, etc.) such that reasonable
7  customers could inquire about, or contest, charges on the bill.

8      **VIII.  THE FACTS RELATING TO NAMED PLAINTIFF JOY NWABUEZE**

9      49.    At all relevant times, Plaintiff Nwabueze ("Ms. Nwabueze") was an AT&T local
10 wireline telephone customer.

11     50.    Each month, AT&T sent Ms. Nwabueze a bill for her telephone service.

12     51.    On her November 2008 AT&T bill, AT&T included a $12.95 charge from AT&T on
13 behalf of Enhanced Services Billing Inc. on behalf of a third-party company, Voicemail Club, Inc.
14 for what turned out to be voicemail services.  This was an unauthorized charge.  The same
15 unauthorized $12.95 charge appeared on her December 2008 AT&T bill.

16     52.    Ms. Nwabueze is the only person legally empowered to authorize charges to her
17 telephone, but she never authorized these third-party charges.  Indeed, Ms. Nwabueze was already
18 paying AT&T for voicemail services as part of her plan with AT&T and had no need or desire for
19 any other voicemail service.

20     53.    AT&T has failed to provide Ms. Nwabueze a complete refund of such charges, with
21 interest, costs and attorneys' fees, nor has Ms. Nwabueze received such a refund from anyone else.
22 AT&T has likewise failed and refused to provide an assurance that it will not continue to bill her for
23 this and/or other unauthorized charges, even after having been notified that the charges are
24 unauthorized.

25                      **IX.    CLASS ALLEGATIONS**

26
27
28
   **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
                              - 10 -

54.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 (b)(2), on behalf of herself and the following class (the "Injunctive And Declaratory Class"):

> All AT&T local wireline customers in the United States.with respect to whom AT&T billed charges for third-party products and services using its billing and collection system.

and pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of herself and the following class (the "Damages" Class"):

> All current and former AT&T local wireline customers (1) with respect to whom AT&T billed and collected charges for third-party products and services using its billing and collection system and for which AT&T did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

55.     Additionally, Plaintiff brings this action on behalf of a state-wide sub-class (the "Sub-Class"), consisting of all current and former AT&T wireline customers within the State of California (1) with respect to whom AT&T billed and collected charges for third-party products and services using its billing and collection system and for which AT&T did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

56.     Excluded from the foregoing Class and Sub-Class are Defendants, their officers and directors and persons whose third-party charges were exclusively for pay-per-call services.

57.     The Classes and Sub-Class consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of FRCP 23(a)(1).  The exact size of the respective classes and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to their billing and collection records.

58.     The claims of Plaintiff are typical of the claims of the respective classes.  The claims of the Plaintiff and the respective classes are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective classes.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 11 -

1    59.    The respective classes have a well-defined community of interest.  The Defendants
2   have acted and failed to act on grounds generally applicable to the Plaintiff and the respective
3   classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct
4   toward the respective classes.

5    60.    There are many questions of law and fact common to the claims of Plaintiff and the
6   respective class members, and those questions predominate over any questions that may affect only
7   individual class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

8    61.    Common questions of fact and law affecting members of the Class include, but are
9   not limited to, the following:

10       a.    Whether Defendants' conduct described herein is in violation of 47 U.S.C.
11          201 et seq. and 47 C.F.R. § 64.2401; and

12       b.    Whether Defendants' conduct described herein is in breach of Contract.

13   62.    Common questions of fact and law affecting members of the Sub-Class include, but
14   are not limited to, the following:

15       a.    Whether Defendants' conduct described herein is in violation of California
16          Public Utility Code § 2890; and

17       b.    Whether Defendant's conduct described herein violates California Business
18          and Professions Code §§ 17200, et seq.

19   63.    Absent a class action, most of the respective class members would find the cost of
20   litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of
21   common questions of law and fact is also superior to multiple individual actions or piecemeal
22   litigation in that it conserves the resources of the courts and the litigants, and promotes consistency
23   and efficiency of adjudication.

24   64.    Plaintiff will fairly and adequately represent and protect the interests of the members
25   of the respective classes.  Plaintiff has retained counsel with substantial experience in prosecuting
26   complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously

27

28
    **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
                                    - 12 -

1    prosecuting this action on behalf of the other respective class members, and have the financial

2    resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other

3    respective class members.

4                                 **FIRST CAUSE OF ACTION**

5              **(Violations of 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401**
                      **on behalf of the Classes and Sub-Class)**

6         65.    Plaintiff incorporates by reference the foregoing allegations.

7         66.    At all times relevant hereto, there was in existence 47 U.S.C.§ 201, which provided,

8    in relevant part, as follows:

9

10              All charges, practices, classifications, and regulations for and in
                connection with such communication service [*i.e.*, interstate or
11              foreign communication by wire or radio], shall be just and
                reasonable, and any such charge, practice, classification, or
12              regulation that is unjust or unreasonable is declared to be unlawful
                . . . .

13        67.    Defendants' practice of billing and collecting unauthorized third-party charges from

14   Plaintiff and the respective classes and sub-classes is neither just nor reasonable and is, in fact,

15   unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

16        68.    At all times relevant hereto, there was also in existence 47 C.F.R. § 64.2401, entitled

17   "Truth-in-Billing Requirements," which provided, in relevant part, as follows:

18
                (b) Descriptions of billed charges. Charges contained on telephone
19              bills must be accompanied by a brief, clear, non-misleading, plain
                language description of the service or services rendered. The
20              description must be sufficiently clear in presentation and specific
                enough in content so that customers can accurately assess that the
21              services for which they are billed correspond to those that they
                have requested and received, and that the costs assessed for those
22              services conform to their understanding of the price charged.
23              . . .

24
                (d) Clear and conspicuous disclosure of inquiry contacts.
25              Telephone bills must contain clear and conspicuous disclosure of
                any information that the subscriber may need to make inquiries
26              about, or contest, charges on the bill.

27

28
     COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
                                        - 13 -

69.     The charges contained on Defendants' bills were not accompanied by "clear, non-misleading, plain language description of the service or services rendered" nor did they "contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill," in violation of 47 C.F.R. § 64.2401.

70.     Defendants are liable to Plaintiff and the respective classes and sub-classes for damages and attorney's fees, pursuant to 47 U.S.C. § 206, which provides as follows:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

71.     As a result of Defendants' violations, Plaintiff and the respective classes and sub-classes suffered damages, and pursuant to 47 U.S.C. § 207 are entitled to recover, as follows:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

## SECOND CAUSE OF ACTION

### (Breach of Contract on behalf of the behalf of the Classes and Sub-Class)

72.     Plaintiff incorporates by reference the foregoing allegations.

73.     Plaintiff and the Classes and Sub-Class entered into agreements with Defendants whereby Plaintiff and the respective classes agreed to pay a certain sum of money in exchange for Defendants' activation of Plaintiff's and the respective classes' local wireline telephone account and its promise to provide various communication and related services to Plaintiff and the respective classes.

74.     Defendants expressly and/or impliedly agreed to bill and collect only for such charges that Plaintiff and the respective classes clearly and explicitly authorized.

1    75.    Defendants also expressly and/or impliedly agreed to provide clear and non-

2  misleading telephone bills to Plaintiff and the respective classes.

3    76.    Defendants further expressly and/or impliedly agreed to carry out their obligations of

4  good faith and fair dealing.

5    77.    Defendants breached their contractual obligations, including their contractual

6  obligation of good faith and fair dealing, by billing and collecting from Plaintiff and the respective

7  classes for products or services, the purchase of which they never authorized.

8    78.    Defendants further breached their contractual obligations by providing Plaintiff and

9  the respective classes with telephone bills that were unclear and misleading.

10    79.    Plaintiff and the respective classes performed their contractual obligations.

11    80.    The aforementioned breaches of contract have proximately caused the Plaintiff and

12  the respective classes' economic injury and other damages.

13  ### THIRD CAUSE OF ACTION

14  **(Violation Of California Public Utilities Code § 2890 on behalf of the Sub-Class)**

15    81.    Plaintiff incorporates by reference the foregoing allegations.

16    82.    California Public Utilities Code § 2106 provides as follows:

17      Any public utility which does, causes to be done, or permits any
        act, matter, or thing prohibited or declared unlawful, or which
18      omits to do any act, matter, or thing required to be done, either by
        the Constitution, any law of this State, or any order or decision of
19      the commission, shall be liable to the persons or corporations
        affected thereby for all loss, damages, or injury caused thereby or
20      resulting therefrom. If the court finds that the act or omission was
        willful, it may, in addition to the actual damages, award exemplary
21      damages.  An action to recover for such loss, damage, or injury
        maybe brought in any court of competent jurisdiction by any
22      corporation or person.

23    83.    AT&T is a "public utility" within the meaning of the CPUC.

24    84.    According to the California Public Utilities Commission, "the practice of cramming

25  has become a serious and widespread problem in California, draining time and money from

26  California consumers and businesses."

27

28

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 15 -

85. CPUC § 2890, provides, *inter alia*, as follows:

> (a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized.
> …
>
> (b) (2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:
>
> (A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.
>
> (B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

86. Defendants violated § 2890(a) since their telephone bills contained charges for products and services, the purchase of which Plaintiff and the Sub-Class did not authorize.

87. Defendants' billing for unauthorized charges is further exacerbated by its failure to comply strictly with various disclosure-related requirements of § 2890(d), making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

88. Although required to do so, the bills issued by Defendants systematically and uniformly failed to include "a clear and concise description of the service, product, or other offering for which a charge has been imposed" or "a description of the manner in which a dispute regarding the charge may be addressed."

89. Defendants' conduct was, as set forth above, willful.

90. As a result of Defendants' conduct, Plaintiff and the Sub-Class have suffered and will continue to suffer loss, damage, and injury.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 16 -

91.     Plaintiff and the Sub-Class are entitled to actual and exemplary damages.

## FOURTH CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.* on behalf of the Sub-Class)

92.     Plaintiff incorporates by reference the foregoing allegations.

93.     The Unfair Business Practices Act proscribes unfair business competition and defines the same to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Business & Professions Code §§17200, *et seq.*

94.     Defendants violated, and continue to violate this proscription through their conduct alleged above, including their violations of the California Public Utilities Code section 2890, as set forth above.

95.     Defendants, through their acts of unfair competition, have obtained money from Plaintiff and members of the proposed Classes.  Plaintiff and the members of the Classes ask that this Court restore this money to them and enjoin Defendants from continuing their illegal practices.

96.     Defendants' conduct, as set forth above, is likely to deceive members of the public and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

97.     Such conduct is ongoing and continues to this date.  Plaintiff, the Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class and sub-class, request the following relief:

1.      That the Court enter an order certifying the Classes and Sub-Class and appointing Plaintiff as the representative of the Classes and Sub-Class, and appointing counsel for Plaintiff as lead counsel for the respective classes;

2.      That the Court enter an order declaring that the actions of Defendants, as set out above, as well as in other respects, violate the law in the respects alleged;

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 17 -

3. That the Court enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the respective classes exemplary damages;

4. That the Court award Plaintiff and the respective classes their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

5. That the Court award Plaintiff and the respective classes pre- and post-judgment interest;

6. That the Court issue an injunction prohibiting Defendants from cont inuing their conduct complained of herein;

7. That the Court award such other and further relief as may be necessary or appropriate.

Respectfully submitted,

**KELLER GROVER, LLP**

Dated: April 7, 2009

By:
JEFFREY F. KELLER

Attorneys for Plaintiff and the Putative
Classes and Sub-Class

1          **JURY DEMAND**

2      Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

3
                                                              **KELLER GROVER, LLP**
4      Dated: April 7, 2009

5
                                                    By:
6                                                          JEFFREY F. KELLER

7                                                          Attorneys for Plaintiff and the Putative
                                                          Classes and Sub-Class
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
                                              - 19 -