1  JEFFREY F. KELLER (SBN 148005)
2  **KELLER GROVER, LLP**
   425 Second Avenue, Suite 500
3  San Francisco, California 94107
   Telephone: (415) 543-1305
4  Facsimile: (415) 543-7861
   jfkeller@kellergrover.com

5  JOHN G. JACOBS (*PRO HAC VICE*)
   BRYAN G. KOLTON (*PRO HAC VICE*)
6  **THE JACOBS LAW FIRM, CHTD.**
   122 South Michigan Avenue, Suite 1850
7  Chicago, Illinois 60603
   Telephone: (312) 427-4000
8  Facsimile: (312) 427-1850
   jgjacobs@thejacobslawfirm.com
9  bgkolton@thejacobslawfirm.com

10 DAVID SCHACHMAN (*PRO HAC VICE*)
   **DAVID SCHACHMAN & ASSOCIATES, P.C.**
11 122 South Michigan Avenue, Suite 1850
   Chicago, Illinois 60603
12 Telephone: (312) 427-9500
   Facsimile: (312) 427-1850
13 ds@schachmanlaw.com

14 Attorneys for Plaintiff
   Joy Nwabueze and the putative class

15                     **IN THE UNITED STATES DISTRICT COURT**

16                      **NORTHERN DISTRICT OF CALIFORNIA**

17

18 JOY NWABUEZE, individually and on behalf  ) Case No. 09-cv-1529 SI
   of a class of similarly situated individuals,     )
19                                                   ) CLASS ACTION
                  Plaintiff,                         )
20                                                   ) **FIRST AMENDED COMPLAINT**
   v.                                                ) **FOR DAMAGES,**
21                                                   ) **DECLARATORY AND**
   AT&T INC., a Delaware corporation;                ) **INJUNCTIVE RELIEF**
22 PACIFIC BELL TELEPHONE COMPANY                    )
   d/b/a AT&T CALIFORNIA, a California               )
23 corporation;  AT&T SERVICES, INC., a              ) **DEMAND FOR JURY TRIAL**
   Delaware corporation; AT&T OPERATIONS,            )
24 INC., a Delaware corporation; and DOES 1          ) The Honorable Susan Illston
   through 21,                                       )
25                  Defendants.                      )

26

27

28 **FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
   09-cv-1529 SI

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff Joy Nwabueze, on behalf of herself and a class and sub-class of similarly situated individuals, brings this class action against AT&T Inc., Pacific Bell Telephone Company d/b/a AT&T California, AT&T Services, Inc., AT&T Operations, Inc., and Does 1 through 21 (collectively "AT&T"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.    NATURE OF THE CASE

1.    This class action against AT&T involves a particularly abusive practice: the intentional charging of consumers for products and services they have not requested or authorized and the illegal billing and collection of such charges.  The problem lies in business practices AT&T has adopted for billing and collecting on behalf of itself and myriad third-party companies for various third-party products and services.

2.    AT&T knows that its third-party billing and collection system lacks sufficient checks and safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills – indeed, to the contrary, it knows it could easily eliminate virtually all billing and collection of millions of dollars of unauthorized charges – yet it continues to bill and collect such third-party charges without taking sufficient steps to ensure that the charges are in fact authorized by the persons legally empowered to authorize such charges.   AT&T could eliminate the problem in an instant if it chose to, but it has very deliberately chosen to continue things as they are.

3.    AT&T is well aware from numerous sources – including its customer service department who receives on a daily basis numerous calls from customers complaining of third-party items billed on their AT&T bill that they know nothing about, as well as from state and federal regulatory bodies across the nation, including the California Public Utilities Commission in California – of the widespread incidence of unauthorized billing by it for third-party providers, yet fails to take with regard to its third-party billings even the steps that it requires for one of its own customers to change his or her account with AT&T to make sure that any person purporting to deal

with the billing on that account is in fact an authorized person.  For instance, AT&T will not allow a customer to change or manage his or her AT&T account without providing either the last four digits of the customer's Social Security number or the three-digit customer code assigned by AT&T to that person's account.  Yet, AT&T does *not* require its billing aggregators to provide such confirmatory information, nor does it require its billing aggregators to make sure the third-party providers for whom the billing aggregators bill obtain such identifying information from persons purporting to subscribe an AT&T customer to a third-party service.  Such a requirement would essentially eliminate the problem overnight.

4.      AT&T is by no means an innocent conduit in the matter of third-party billing, merely billing on behalf of third parties and passing the collected money on to the billing aggregators and third parties.  Instead, AT&T is a full joint venturer with the third-party providers and the billing aggregators involved in this system, keeping for itself a substantial portion of the amounts billed and collected for these third-party services, running in the millions of dollars annually.

5.      AT&T does not allow most third party service providers to place charges directly on their bills.  Instead, AT&T requires that the third party providers bill through so-called billing aggregators, of which there are only a few.  The billing aggregators (such as Billing Services Group, Ltd. ("BSG"), by far the largest landline billing aggregator in the country and its various subsidiaries through whom it does business, including Enhanced Services Billing, Inc. d/b/a ESBI on whose behalf the Plaintiff here was billed) act as an intermediary between the third-party providers and the local exchange carriers (so-called "LECs," i.e, local phone companies).  The third parties send their billings to the billing aggregators, and the billing aggregators in turn send those billings along to the appropriate LEC, and the LEC places those charges on its customers' monthly phone bills.  All the way up and down the line, AT&T, the billing aggregators and the third-party providers know that the billing and collection system used lacks sufficient checks and safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills – indeed, to the contrary, they all know that there is a significant likelihood of unauthorized charges, given the system presently used –

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-cv-1529 SI**

1    and they have knowingly exploited those defective systems to implement and carry out their

2    fraudulent scheme.

3        6.      As set forth below, Plaintiff and the Class and Sub-Class bring claims against AT&T

4    for (a) violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968;

5    (b) violation of the Telecommunications Act of 1934, 47 U.S.C. §§ 201, *et seq.* (the "TCA"); and (c)

6    breach of trust.  Plaintiff and the Class and Sub-Class bring claim against AT&T Inc., AT&T

7    Operations, Inc. and AT&T Services, Inc. for tortious interference with contract.  Plaintiff and the

8    Sub-Class bring additional claims against AT&T California for  (a)  violation of California Public

9    Utilities Code § 2890 (the "CPUC"), (b) violation of California Business and Professions Code

10   sections 17200, *et seq*., and (c) breach of contract.

11       7.      Plaintiff and the Class and Sub-Class seek actual, treble and exemplary damages,

12   injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

13

14                        **II.     PARTIES**

15       8.      Plaintiff Joy Nwabueze is a citizen of San Francisco, California.

16       9.      Defendant AT&T Inc. ("AT&T Inc.") is the largest provider of local wireline

17   telephone service in the United States.  AT&T Inc. is a Delaware corporation with its headquarters

18   and principal place of business in Dallas, Texas.

19       10.     AT&T Inc., directly and/or indirectly through subsidiary corporations, partnerships,

20   limited liability companies or other entities, provides local wireline telephone services in at least the

21   following states: Alabama, Arkansas, California, Connecticut, Illinois, Indiana, Florida, Georgia,

22   Kentucky, Louisiana, Kansas, Michigan, Mississippi, Missouri, Nevada, North Carolina, Ohio,

23   Oklahoma, South Carolina, Tennessee, Texas and Wisconsin. AT&T Inc. and its wireline

24   subsidiaries provide local wireline telephone services to 35 million retail consumer phone lines and

25   27 million retail and wholesale business phone lines.  AT&T Inc. is a publicly-traded company

26   whose stock is traded on the New York Stock Exchange with a market capitalization of over 150

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-CV-1529 SI**

1   billion dollars.  Yet it claims to own (directly) no telephone poles, no lines, no switching stations; it

2   purports to have no employees.  Instead, it sits on top of a hydra-structure of a myriad of wholly-

3   owned subsidiaries, each of which provides a piece of the services relentlessly marketed to the

4   public as coming from "AT&T."  All operating subsidiaries pass their earnings upstream to AT&T

5   Inc., which reports those earnings as its own.  AT&T Inc. directs and controls AT&T Services,

6   AT&T Operations and the AT&T LECs in furtherance of AT&T's corporate objectives, including

7   specifically the fraudulent scheme alleged in this complaint.  AT&T Inc. has chosen this fragmented

8   structure at least in part so as to make it as difficult as possible for consumers to be able to sue in a

9   single forum and obtain nationwide relief.

10          11.    AT&T Services, Inc. ("AT&T Services) is a Delaware corporation, registered to do

11   business in California, with its principal place of business in Texas.  It is a wholly-owned subsidiary

12   of AT&T, Inc.  AT&T Services, *inter alia,* provides billing and collection services for AT&T Inc.

13   and its various subsidiaries, including providing and managing online billing and payment

14   capabilities for customers of the various subsidiary LECs throughout the country, including Pacific

15   Bell Telephone Corporation and the other Doe defendant subsidiary LECs (the "AT&T LECs").

16   AT&T Services also administers the website www.att.com.

17          12.    AT&T Operations, Inc. ("AT&T Operations") is a Delaware corporation, registered

18   to do business in California, with its headquarters in Texas.  It is AT&T Operations that enters into

19   the billing and collection service contracts on behalf of the AT&T LECs with the various billing

20   aggregators to perform billing and collection services for all the AT&T LECs around the country,

21   including defendant Pacific Bell Telephone Corporation.

22          13.    AT&T Inc. provides telephone service in California through its subsidiary, Pacific

23   Bell Telephone Company d/b/a AT&T California ("AT&T California"), a California corporation

24   with its headquarters and principal place of business in San Francisco, California.  Through the

25   contracts entered into on its behalf by AT&T Operations with the billing aggregators, AT&T

26

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-CV-1529 SI**

California (or another AT&T Inc. subsidiary) billed its customers, including Plaintiff herein as set forth below, for charges for third-party services.

14.    Defendants Does 1 through 21 are additional AT&T-owned subsidiary corporations, partnerships, limited liability companies or other entities that provide AT&T wireline local telephone services and/or facilitate AT&T's billing and collection practices.  Plaintiff is unaware of the true names and capacities of the Defendants sued as Does 1 through 22.   Plaintiff will amend her complaint when the true names and capacities have been ascertained.    Each Doe Defendant is responsible in some actionable manner for the events, occurrences, injuries and damages alleged herein.

### III.    JURISDICTION

15.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, 47 U.S.C. § 207, 28 U.S.C. § 1332(d) and 18 U.S.C. § 1964.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### IV.    VENUE

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) and 18 U.S.C. § 1965 (a) and (b).

### V.    FACTS RELATING TO AT&T'S WIRELINE TELEPHONE BILLING AND COLLECTION SYSTEM

17.    The wireline telephone billing and collection system in the United States was initially devised and used exclusively by AT&T – when it was known colloquially as "Ma Bell" – when it maintained a monopoly over wireline telephone services in the United States.  The charges handled by "Ma Bell's" wireline telephone billing and collection system were limited to those generated through consumers' use of "Ma Bell" wireline telephone transmission services.

18.    That situation changed in the mid-1980s with the "The Bell Divesture," *i.e.*, the U.S. Justice Department's break-up of "Ma Bell" and "The Bell System."

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF CASE NO. 09-cv-1529 SI**

19.     At that time, the former units of The Bell System that had become local exchange carriers ("LECs"), such as the AT&T LECs, took over responsibility for billing and collection.

20.     LECs, including the AT&T LECs, also began billing and collecting not only on their own behalf for local telephone services, but also on behalf of other third-party companies ("third-party service providers") for third-party telecommunication products and services, such as long distance services ("third-party billing").

21.     Through the years, the LECs, including the AT&T LECs, have made their billing and collection systems available to a myriad of providers of varied products and services.  As a result, there has been a proliferation in the number of service providers "piggybacking" on the LECs', including the AT&T LECs', billing and collection systems and a corresponding proliferation in the number and type of products and services being billed for.

22.     Some of these products and services directly relate to "basic" telephone service, *i.e.*, the transmission of telecommunications; some, such as voice mail services and long distance, are offered and used through the telephone.  Other products and services being billed for, however, are farther afield.

23.     For example, automobile roadside service clubs bill for memberships on consumers' wireline telephone bills.  Diet companies claiming to create personalized diet plans for consumers to lose weight include recurring monthly subscription charges on wireline telephone bills.  Credit repair companies claim to help consumers fix their credit ratings and then charge hefty subscription fees on their local phone bills.

24.     The products and services are typically subscription-based and renew automatically (on a monthly, quarterly or annual basis), and the charges are included on AT&T's bills to its customers.

25.     AT&T is compensated for its billing and collection services by retaining substantial portions of the amounts so billed and collected, typically based upon a percentage of the billing revenue.  AT&T typically purchases the accounts receivable from the billing aggregators and other

1   billers, bills and collects from its customers and then through a system of allowances and refunds,

2   effectively remits to the billing aggregators and other billers the amount of the collected sums minus

3   its cut.

4          26.    Due to cost and other factors, only the largest third-party service providers are able to

5   bill directly through AT&T.  Instead, the vast bulk of third-party service providers (many of which

6   are "virtual" operations without any substantial assets) typically turn to one of a handful of third-

7   party billing aggregators or billing clearinghouses ("billing aggregators").  Billing aggregators act as

8   intermediaries between the service providers and LECs, opening the gate to the LECs' telephone

9   billing and collection system for service providers by contracting with the LECs to have charges on

10  behalf of their service provider clients placed on consumers' telephone bills and to have the LECs

11  collect those charges.  By far, the largest landline billing aggregator in the country is BSG. AT&T

12  has devised and utilized at all relevant times a fully computerized, standardized, routenized,

13  systemized billing system, such that it requires all billing aggregators to pass on to it for billing all

14  bills in this standardized, systemized computerized format specified by AT&T and requires that

15  third-party providers provide data and information to the billing aggregators in the same format.

16         27.    Billing aggregators are compensated for their billing and collection services by

17  retaining a portion of the amounts so billed, typically based upon a percentage of the billing revenue.

18         28.    Once the charges are billed and collected by AT&T, after taking its cut, it passes the

19  remaining funds back to the billing aggregators, who in turn, take their cut and pass the remaining

20  funds back to their third-party service provider clients.

21         29.    Third-party billing has become a very lucrative business for AT&T, the billing

22  aggregators, such as BSG, and third-party service providers.

23

24         **VI.**    **AT&T'S FLAWED THIRD-PARTY BILLING SYSTEM**

25         30.    The largely unsupervised growth of the LEC third-party billing industry has led both

26  to the above-described structure and to a disastrous flaw within it.  That flaw – understood,

27

28

1  perpetuated, and encouraged by AT&T, billing aggregators such as BSG, and service providers – is

2  an open secret within the industry, but little understood outside of it.

3       31.    Unlike more conventional billing and collection systems, such as credit cards and

4  checks, LEC third-party billing and collection systems, such as AT&T's, lack sufficient checks or

5  safeguards to prevent billing and collection of unauthorized charges and instead effectively

6  encourage unauthorized billing.

7       32.    The bankcard billing and collection system, for example, has a number of

8  mechanisms to protect against the billing and collection of unauthorized charges. The most obvious

9  is that the bankcard billing and collection system uses, as a basis for billing charges, a physical card

10  with a unique account number assigned to each individual cardholder that, unlike a telephone

11  number, is not widely available to the public.

12       33.    Unlike transactions made using checks and credit cards, which use signatures, highly

13  private account numbers and various other security measures, under the system used by AT&T the

14  only thing a billing aggregator or service provider needs in order to be able to charge a consumer for

15  its products and services is a telephone number. Once the service provider or billing aggregator has

16  the number, they can submit it to the LEC directly, or via a billing aggregator, to initiate billing for

17  services.

18       34.    Using a telephone number as the basis for billing of products and services is a virtual

19  invitation to fraud and abuse because there is no reasonable basis for believing that the person

20  providing a telephone number is in fact the actual customer; that is, the person legally empowered to

21  authorize charges to that number.

22       35.    Indeed, *any person* capable of obtaining a consumer's telephone number can cause

23  charges for a product or service to be included on that consumer's phone bill.

24       36.    There are literally hundreds upon hundreds of third-party service provider web sites

25  on the internet where anyone can initiate billing subscriptions by filling out and submitting

26  electronic forms, using *anyone's* phone number.

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-cv-1529 SI**

37.     The lack of sufficient checks or safeguards within the AT&T third-party billing and collection system to prevent unauthorized charges from being added to customers' wireline telephone bills has led to rampant abuse of AT&T's wireline customers.

38.     AT&T knows, or is reckless in not knowing, that its third-party billing and collection system lacks sufficient checks or safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills.

39.     AT&T knows or is reckless in not knowing, that its third-party billing and collection system is subject to widespread abuse, and that it has, in fact, been so abused.

40.     AT&T knows or is reckless in not knowing, that significant amounts of money, in the millions of dollars, have been billed and collected by it on account of such unauthorized charges.

41.     Nonetheless, AT&T continues to bill and collect third-party charges, without taking sufficient steps to ensure that such charges have in fact been authorized by the person legally empowered to authorize charges billed to that number ("valid authorizations").

42.     AT&T has a policy and practice of not obtaining valid authorizations directly from its telephone customers, but rather purports to rely upon its billing aggregators and/or third-party services providers to obtain such authorizations, even though it knows or is reckless in not knowing that the billing aggregators and/or third-party service providers are not obtaining such authorizations. Instead, AT&T uses a standardized contract with its billing aggregators that purports to shift the burden to the billing aggregators to only submit billing from third-party providers who represent that they will only submit billing based upon valid authorizations.  AT&T continues to improperly shift responsibility to third parties for obtaining authorization even though it knows or is reckless in not knowing that on a widespread and recurring basis, charges are in fact being sent from the third-party providers through the billing aggregators via AT&T to AT&T's customers that are not based on valid authorizations.  AT&T places this responsibility-shifting language into its contracts with the billing aggregators so as to seek to give it plausible deniability with respect to the unauthorized

1  charges for which it bills its customers that it knows or is reckless in not knowing are not based on

2  valid authorizations.

3      43.   AT&T has a policy and practice of not verifying whether the billing aggregators

4  and/or third-party service providers obtained valid authorizations before placing third-party charges

5  on customers' bills, instead satisfying itself with its contractual requirements that others do so, even

6  though it knows or is reckless in not knowing that on a widespread and recurring basis, valid

7  authorizations are not being obtained.

8      44.   As a result, AT&T has for years systematically, repeatedly and uniformly billed and

9  collected millions of dollars of charges from its customers for products and services that the

10  customers never authorized.  AT&T, the billing aggregators and third-party service providers have

11  profited greatly from this conduct.

12     45.   AT&T's conduct constitutes a deliberate and willful scheme to cheat large numbers

13  of people out of small amounts of money.

14     46.   Because the amount of these charges is small on an individual basis – as little as a

15  few dollars to at most several hundred dollars per customer over the course of a year – and because

16  of AT&T's and the billing aggregators' vast resources and superior bargaining power, AT&T and

17  the billing aggregators employ this scheme with the expectation that their illegal conduct will, if

18  detected, go unpunished.   AT&T knows, however,  that many customers will not even notice the

19  unauthorized charges, and that if they do, the amounts will be so small that many of them will not

20  take the time to investigate and object and will ultimately grow frustrated in trying to rectify the

21  situation and abandon such efforts.  Other than placing third-party charges on customers' bills

22  (whether authorized or not), AT&T never informs its customers of the possibility of the charges that

23  are the subject of this complaint being placed on their bills.

24     47.   The LECs such as AT&T California and the other AT&T LECs have a legal duty

25  under federal law (*e.g.,* 47 U.S.C. 201 *et seq.*) not to bill and collect for unauthorized charges. In

26  addition the AT&T LECs have a legal duty under the various regulatory laws of the states in which

27

28

1    they operate that prohibit the type of billing and collection practices that are the subject of this suit

2    and which have for many years resulted in the billing and collection of unauthorized charges.  Thus,

3    the improper conduct that is the subject of this Complaint is unlawful under both Federal and State

4    law.  The AT&T defendants other than the AT&T LECs know that their conduct permits,

5    encourages, and gives substantial assistance to the AT&T LECs to violate the Federal and State law

6    prohibiting the billing and collection of unauthorized charges.

7            48.    AT&T knows that there are available simple and effective methods of virtually

8    eliminating the billing and collection of the unauthorized charges that are the subject of this

9    Complaint.  The simple and effective security procedures or measures that would prevent

10   unauthorized charges include procedures that AT&T itself uses to insure that requests for access to,

11   or changes to, a customer's billing information, are authorized, that is, actually requested by the

12   customer.  These procedures include requiring the person to prove that he or she is authorized by

13   providing either the last four digits of the customer's Social Security number, the customer's account

14   number which is only found on the customer's monthly bill sent by AT&T, or the use of password-

15   type validation.

16           49.    AT&T has the ability to dictate the terms and conditions under which it permits the

17   billing aggregators and the third party providers to place charges on AT&T's bills, and AT&T could

18   easily require that in contracts with the billing aggregators,  the billing aggregators obtain (or require

19   the aggregators to require the third party providers to provide) this information, which would easily

20   and effectively prevent the billing and collection of the unauthorized charges that are the subject of

21   this Complaint.  Instead, AT&T has drafted its contracts with the billing aggregators to

22   require numerous and complicated -- but virtually useless -- procedures to make it appear that AT&T

23   is attempting to prevent the billing and collection of unauthorized charges when, in fact, the

24   contractual procedures and measures are simply a charade or pretext designed to create the false

25   impression that AT&T is doing everything in its power to prevent the billing and collection of

26   unauthorized charges.  It is not.

27

28

50.     AT&T's conduct is deliberate and wilful because, *inter alia,* (a) AT&T has been aware for years of the fraudulent billing and collection of charges from its customers as a result of its customers' complaints and the anti-cramming laws passed by the federal government and the states, (b) AT&T knows from the procedures it itself uses that it has solely within its power and discretion to require the billing aggregators and third party providers to use and provide to it that would put a stop to the billing and collection of unauthorized charges on its bills, and (c) yet AT&T refuses to utilize the simple and effective security procedures and instead continues to engage in the fraudulent scheme.

51.     Unchecked, the practices challenged here will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

## VII.    AT&T'S TELEPHONE BILLS

52.     AT&T's billing and collection of unauthorized charges is further exacerbated by the misleading and deceptive nature of the telephone bills it uniformly sends to customers.  AT&T's telephone bills are misleading and deceptive in that consumers are led to believe that the charges on the bill are legitimate by the very fact of their inclusion in the amount indicated as owed to AT&T on the bill.  The placing of a charge for products or services on a telephone bill is a representation that the subscriber has in fact authorized any such charge included on the bill and actually owes that sum.

53.     AT&T bills customers for charges and represents to them that they owe money (*i.e.*, charges were authorized) when AT&T either knows that the charges were not authorized or acts in reckless disregard of the likelihood that the charges were not authorized.

54.     AT&T's telephone bills also uniformly contain misleading and/or unclear billing descriptions.  The charges that appear on customers' bills are not sufficiently identified or explained; thus, a reasonable consumer cannot determine whether he or she actually requested and received the services for which the charge is made.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-cv-1529 SI**

55.    AT&T's telephone bills also uniformly contain misleading and/or unclear descriptions of the manner in which disputes regarding the third-party charges could be addressed and lack sufficient information (such as the date the charges were authorized, the manner in which they were authorized, the name of the person who authorized the charges, etc.) such that reasonable customers could inquire about, or contest, charges on the bill.

## VIII.   THE FACTS RELATING TO NAMED PLAINTIFF JOY NWABUEZE

56.    At all relevant times, Plaintiff Nwabueze ("Ms. Nwabueze") was an AT&T local wireline telephone customer.

57.    Each month, AT&T mailed Ms. Nwabueze a bill for her telephone service by mail, but through an autopayment system AT&T provided, using wire and/or mails, automatically removed the money from her checking account at her bank to pay the bill.

58.    On her November 2008 AT&T bill, AT&T included a $12.95 charge from AT&T on behalf of ESBI on behalf of a third-party company, Voicemail Club, Inc. for what turned out to be voicemail services.   This was an unauthorized charge.   The same unauthorized $12.95 charge appeared on her December 2008 AT&T bill.  Both bills were paid by the automatic removal of funds from Ms. Nwabueze's bank account.

59.    Ms. Nwabueze is the only person legally empowered to authorize charges to her telephone, but she never authorized these third-party charges.  Indeed, Ms. Nwabueze was already paying AT&T for voicemail services as part of her plan with AT&T and had no need or desire for any other voicemail service.

60.    AT&T has failed to provide Ms. Nwabueze a complete refund of such charges, with interest, costs and attorneys' fees, nor has Ms. Nwabueze received such a refund from anyone else. AT&T has likewise failed and refused to provide an assurance that it will not continue to bill her for this and/or other unauthorized charges, even after having been notified that the charges are unauthorized.

## IX.    CLASS ALLEGATIONS

61.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 (b)(2), on behalf of herself and the following class (the "Injunctive And Declaratory Class"):

> All AT&T local wireline customers in the United States with respect to whom AT&T billed charges for third-party products and services using its billing and collection system.

and pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of herself and the following class (the "Liabilty Class")

> All current and former AT&T local wireline customers (1) with respect to whom AT&T billed and collected charges for third-party products and services using its billing and collection system and for which AT&T did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

62.    Additionally, Plaintiff brings this action on behalf of a state-wide sub-class (the "Sub-Class"), consisting of all current and former AT&T wireline customers within the State of California (1) with respect to whom AT&T billed and collected charges for third-party products and services using its billing and collection system and for which AT&T did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

63.    Excluded from the foregoing Classes and Sub-Class are Defendants, their officers and directors and persons whose third-party charges were exclusively for message toll services (e.g., 1+ Direct Dial Calls, Operator Handled Calls, Directory Assistance) and/or any service for which the customer is charged on a per-use or per-call basis.

64.    The Classes and Sub-Class consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of FRCP 23(a)(1).  The exact size of the respective classes and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to their billing and collection records.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
**CASE NO. 09-cv-1529 SI**

65.     The claims of Plaintiff are typical of the claims of the respective classes.  The claims of the Plaintiff and the respective classes are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective classes.

66.     The respective classes have a well-defined community of interest.  The Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the respective classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective classes.

67.     There are many questions of law and fact common to the claims of Plaintiff and the respective class members, and those questions predominate over any questions that may affect only individual class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

68.     Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

        a.     Whether Defendants' conduct described herein is in violation of 18 U.S.C. § 1962(c) which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

        b.     Whether each of the Defendants herein is a corporate "person" under 18 U.S.C. § 1961(4).

        c.     Whether Defendants' conduct described herein is in violation of 18 U.S.C. § 1962(d) which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

        d.     Whether Defendants' conduct constituted wire fraud, mail fraud or financial institution fraud under, respectively, 18 U.S.C. §§ 1341, 1343 and 1344.

1          e.      Whether Defendants' conduct described herein is in violation of 47 U.S.C.

2                  201 *et seq.* and 47 C.F.R. § 64.2401..

3          f.      Whether an enterprise has existed that affects interstate or foreign commerce.

4          g.      Whether the Defendants have been associated with the enterprise.

5          h.      Whether the Defendants participated in the conduct of the enterprise's affairs.

6          i.      Whether Defendants have engaged in an ongoing, open-ended scheme, artifice

7                  and pattern of racketeering.

8          j.      Whether the entities forming the enterprise conduct lawful business activity

9                  unrelated to the illegal acts that constitute the pattern of racketeering.

10         k.      Whether Defendants obtained and held customers' personal and financial

11                 information in a position of trust.

12         l.      Whether Defendants AT&T, Inc., AT&T Operations, Inc. and AT&T

13                 Services, Inc. tortiously interfered with the contracts between customers and

14                 the AT&T LECs.

15         m.      Whether Defendants received confidential information from class members

16                 and were required to treat that information with fiduciary responsibility.

17     69.     Common questions of fact and law affecting members of the Sub-Class include, but

18 are not limited to, the following:

19         a.      Whether AT&T California's conduct described herein is in violation of

20                 California Public Utility Code § 2890.

21         b.      Whether AT&T California's  conduct described herein is in breach of

22                 contract. and

23         c.      Whether AT&T California's conduct described herein violates California

24                 Business and Professions Code §§ 17200, *et seq.*

25     70.     Absent a class action, most of the respective class members would find the cost of

26 litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
**CASE NO. 09-CV-1529 SI**

common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

71.     Plaintiff will fairly and adequately represent and protect the interests of the members of the respective classes.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.   Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other respective class members, and have the financial resources to do so.  Neither Plaintiff nor her counsel have any interest adverse to those of the other respective class members.

## FIRST CAUSE OF ACTION
### For Violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968

72.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

73.     In relevant part, 18 U.S.C. § 1961(1) defines "racketeering activity" as …(B) "any act which is indictable under any of the following provisions of title 18, United States Code: [including] … section 1343 [18 USCS § 1343] (relating to wire fraud), section 1344 [18 USCS § 1344] relating to financial institution fraud…."

74.     18 U.S.C. § 1961(3) defines "person" to "include[] any individual or entity capable of holding a legal or beneficial interest in property[.]"

75.     18 U.S.C. § 1961(4) defines "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"

76.     18 U.S.C. § 1961(5) provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this

chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]"

77.     18 U.S.C. § 1343, the federal wire fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

78.     18 U.S.C. § 1341, the federal mail fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation

affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

79.     18 U.S.C. § 1344, the federal bank fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, states:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice --

1.     to defraud a financial institution, or

2.     to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $1,000,000 or imprisoned for not more than 30 years, or both."

80.     18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

81.     At all times relevant hereto, Defendants AT&T, Inc., AT&T Services, AT&T Operations and AT&T California were corporate "person[s]" within the meaning of 18 U.S.C. § 1961(4), with a definable corporate structure and a hierarchy of corporate direction and control, as were the Doe Defendants.

82.     At all times relevant hereto, the plaintiff in this First Amended Complaint, and each putative member of the Class, was and is a "person" within the meaning of 18 U.S.C. § 1961(3).

### The RICO Enterprise

83.     The enterprise consists of Defendant AT&T Inc., AT&T Services, AT&T Operations, AT&T California, the Doe Defendants, the billing aggregators (such as ESBI)

and the hundreds of third party providers for which AT&T provided third party billing services, such as Voicemail Club (hereinafter the "Enterprise"). Each and every member of the Enterprise participated in the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on AT&T's wireline bills to the members of the class.   In addition to the unlawful activities of the Enterprise as alleged herein, AT&T and the billing aggregators also utilized the identical contractual relationships, computer systems, and organization of their joint billing and collection business to conduct legitimate and lawful billing and collection services for proper and authorized charges for AT&T's services and third party billing services.  The contractual relationships between and among AT&T Inc, AT&T Services, AT&T Operations, AT&T California, the Doe defendants, the billing aggregators and the third-party providers constitutes an enterprise in fact.

84.    Plaintiff is informed and believes that each member of the Enterprise played a role as alleged herein in obtaining, transmitting, billing and collecting phony, unauthorized charges on AT&T's bills under the direction of AT&T and pursuant to its scheme to bill and collect millions of dollars for unauthorized charges from AT&T's customers.

## Defendants' Ongoing Pattern of Racketeering

85.    Beginning at a date currently unknown to plaintiff but at least four years prior to the filing of this complaint, AT&T adopted and implemented one centrally managed, uniform, nationwide scheme to defraud its customers by billing and collecting a percentage of bogus and unauthorized charges from its customers, and for the purposes of implementing this fraudulent scheme AT&T associated itself with the billing aggregators and third party providers by entering into dozens of  virtually identical contractual relationships with billing aggregators  operating nationwide setting  forth  the  terms  and  conditions  upon  which  the billing aggregators, and in turn, the third-party providers, would be permitted to utilize AT&T's billing and collection system for purposes of submitting the bogus and unauthorized

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
**CASE NO. 09-CV-1529 SI**

1    charges to AT&T's customers, while simultaneously permitting AT&T to falsely claim that it

2    was the billing aggregators and the third party providers, not AT&T, that submitted the bogus

3    unauthorized charges.  As part of the scheme, AT&T shares with the billing aggregators and

4    the third party providers a portion of the proceeds of the fraudulent, bogus, unauthorized

5    charges that AT&T bills and collects from its customers through the fraudulent scheme (the

6    "fraudulent scheme") that inures to the benefit of AT&T.

7         86.    Pursuant to the fraudulent scheme, AT&T directly or indirectly through its

8    byzantine corporate structure operating nationwide, and intermediate subsidiary corporations,

9    has designed and implemented one common, uniform, nationwide scheme to defraud its

10   customers. AT&T's contracts with the billing aggregators, and the billing and collection

11   system used for purposes of implementing the nationwide fraudulent scheme, is one

12   common, uniform nearly identical system of provisions and rules and procedures used in

13   virtually an identical manner in each and every state nationwide in which AT&T provides the

14   local wireline services and the billing and collection system involved in this case

15   notwithstanding that AT&T claims that its operations are conducted separately and

16   independently by twenty-two or more separate and independent subsidiaries, without any

17   common, uniform direction or control by AT&T Inc. Thus, while there are dozens

18   of purportedly separate billing and collection contracts between as many as twenty-two

19   separate AT&T subsidiaries and the billing aggregators (executed at ATT&T Inc.'s behest on

20   behalf of all of the AT&T LECs by AT&T Operations), all of the billing and collection

21   contracts are virtually identical and designed and implemented to further the one uniform,

22   nationwide fraudulent scheme alleged herein.

23        87.    Within the past four years AT&T has billed and collected millions of dollars

24   in unauthorized charges pursuant to the above-described fraudulent scheme to bill and collect

25   unauthorized charges from customers.

26

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-cv-1529 SI**

88.     Within the past four years, AT&T has knowingly, intentionally, and/or recklessly engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering under 18 U.S.C. § 1962(c) by committing the predicate acts of mail fraud within the meaning of 18 U.S.C. § 1341, wire fraud within the meaning of 18 U.S.C. § 1343, and bank fraud within the meaning of 18 U.S.C. § 1344(2), by knowingly and intentionally implementing the scheme to bill and collect millions of dollars for unauthorized charges from its customers

89.     AT&T, having devised or intended to devise a scheme or artifice to defraud consumers, for the purpose of executing such scheme or artifice or attempting so to do, placed and/or knowingly caused to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or a private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to: (1) the AT&T bills mailed to AT&T wireline customers; (2) the receipt of payments mailed by AT&T wireline customers for phony, unauthorized third party charges; (3) billing and collection agreements between AT&T and the billing aggregators and/or the billing aggregators and the third party providers; and/or (4) correspondence regarding the foregoing (hereinafter referred to collectively as "Mailing Acts").

90.     Plaintiff is informed and believes that AT&T, having devised or intended to devise a scheme or artifice to defraud consumers, for the purpose of obtaining money from the consumers by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed and/or knowingly caused to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or a private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to the Mailing Acts.

91.     AT&T, having devised or intending to devise a scheme or artifice to defraud consumers as described herein, and/or for obtaining money from the consumers by means of false or fraudulent pretenses, representations, or promises as to phony and unauthorized charges on the AT&T wireline bills, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, and pictures, for the purpose of executing such scheme or artifice, including by: (1) transmission of phony, unauthorized charges by third party providers to billing aggregators for purposes of ultimately being billed and collected by AT&T pursuant to the scheme; (2) transmission of phony, unauthorized charges by billing aggregators to AT&T for purposes of ultimately being billed and collected by AT&T pursuant to the scheme; (3) by transmitting e-mail communications relating to the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on AT&T's bills to the members of the Class; and/or (4) by collecting funds from consumers via electronic fund transfers or electronic communication with the consumer's bank or credit card institution and transmitting payment from AT&T to the billing aggregators, and by  transmitting payments from the billing aggregators to the third party providers.

92.     In addition to the foregoing, Plaintiff is informed and believes that AT&T used the mails and wires in conjunction with reaching the agreement between itself and the other members of the Enterprise with respect to the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on AT&T's bills to the members of the Class.

## The Effect of the Racketeering Scheme On Interstate Commerce

93.     As part of the racketeering scheme described herein, AT&T has used the racketeering Enterprise to increase its profits to the detriment of consumers residing in the twenty two states in the nation in which AT&T operates its unlawful scheme.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF CASE NO. 09-CV-1529 SI**

94.     The interstate commerce requirement of a RICO claim is satisfied here because the racketeering claims alleged in this Amended Complaint arise out of, and are based upon, Defendants' use of the Internet, agreements with entities in other states in conjunction with the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on AT&T's bills to the members of the Class, in furtherance of the racketeering scheme as alleged herein above.

### Injury to Plaintiff and Putative Class Members in their Business or Property by Reason of the Pattern of Racketeering Activity

95.     Plaintiff and class members are the only direct victims of AT&T's wrongful and unlawful conduct; in that Plaintiff and class members directly paid to AT&T money to pay for an unauthorized charge, including money which was in the custody or control of a financial institution, such as when the charge was paid for by check, debit card or automatic clearing house fund withdrawals from bank accounts.

96.     Plaintiff and the putative class were injured by reason of the fact that they were billed for and paid for a service that they did not authorize, and because they were the primary and intended victims of the scheme to defraud.  It was a foreseeable and natural consequence of AT&T's scheme that consumers would pay for the unauthorized charges. There are no independent factors that account for Plaintiff's and the putative class members' economic injuries.  There is no risk of duplicative recoveries by Plaintiff and the putative class, removed at different levels of injury from the violation.

97.     No more immediate victims are better situated to sue for the RICO violations at issue, given that Plaintiff and the putative class members were billed for and paid the unauthorized charges from AT&T.  Indeed, Plaintiff and the putative class members are the only known victims of the fraudulent scheme.

98.     Plaintiff was a victim of the scheme to defraud consumers by billing and collecting for unauthorized charges.   Numerous consumers were exposed to the same fraudulent scheme to defraud.

99.     As a direct and proximate result of Defendants' fraudulent scheme, Plaintiff and the putative Class members have lost money comprised of the amounts paid for unauthorized charges, in an amount according to proof.   Damages will be calculated with greater accuracy according to information contained in Defendants' records.

100.    The pattern of racketeering activity, as described herein, is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering practices.   AT&T has consistently demonstrated its unwillingness to discontinue the illegal practices described herein, and continues its pattern of racketeering as of this moment.

101.    As a direct and proximate result of the racketeering activities described herein, Plaintiff and the absent Class members are entitled to recover treble damages for the injuries they have sustained, according to proof, restitution, as well as costs of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

102.    As a direct and proximate result of the racketeering activities as described herein, Plaintiff, on behalf of herself and the absent Class members, is entitled to an Order, pursuant to 18 U.S.C. § 1964(a), enjoining and prohibiting Defendants from further engaging in the unlawful conduct which the Enterprise has engaged in.


**SECOND CAUSE OF ACTION**

**For Conspiracy To Violate the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968**


103.    Plaintiff incorporates by reference the foregoing allegations.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF CASE NO. 09-CV-1529 SI**

104.     AT&T, Inc., Pacific Bell Telephone Company, AT&T Services, Inc., AT&T Operations, Inc., and the Doe Defendants have conspired with each other and with billing aggregators, including specifically Billing Services Group and its subsidiaries including ESBI, and the third party providers, to carry out the Enterprise pleaded above and to violate 18 U.S.C. § 1962(c), as alleged above in violation of  18 U.S.C. § 1962(d).  Each has aided, assisted and abetted the others in carrying out and attempting to carry out the Enterprise.

105.     As alleged above, each Defendant by words or action manifested an agreement to commit two or more predicate acts in furtherance of the common purpose of the RICO Enterprise.

106.     As  alleged above, each Defendant knew of the conspiracy's goals and agreed to facilitate and/or to aid, assist and abet the others in carrying out the conspiracy by, among other things, two predicate acts of mail, wire, and/or bank fraud.

### THIRD CAUSE OF ACTION
**(Violations of 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401 on behalf of the Class and Sub-Class)**

107.     Plaintiff incorporates by reference the foregoing allegations.

108.     At all times relevant hereto, there was in existence 47 U.S.C.§ 201, which provided, in relevant part, as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . .

109.     Defendants' practice of billing and collecting unauthorized third-party charges from Plaintiff and the respective classes and sub-classes is neither just nor reasonable and is, in fact, unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

110.     At all times relevant hereto, there was also in existence 47 C.F.R. § 64.2401, entitled "Truth-in-Billing Requirements," which provided, in relevant part, as follows:

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
**CASE NO. 09-CV-1529 SI**

- 26 -

(b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged.
. . .

(d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill.

111.    The charges contained on Defendants' bills were not accompanied by "clear, non-misleading, plain language description of the service or services rendered" nor did they "contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill," in violation of 47 C.F.R. § 64.2401.

112.    Defendants are liable to Plaintiff and the respective classes and sub-classes for damages and attorneys' fees, pursuant to 47 U.S.C. § 206, which provides as follows:

In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

113.    As a result of Defendants' violations, Plaintiff and the respective classes and sub-classes suffered damages, and pursuant to 47 U.S.C. § 207 are entitled to recover, as follows:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

**FOURTH CAUSE OF ACTION**
**(Breach of Contract on behalf of the behalf of the Sub-Class)**

114.    Plaintiff incorporates by reference the foregoing allegations.

115.    Plaintiff and the Classes and Sub-Class entered into agreements with Defendant AT&T California whereby Plaintiff and the respective classes agreed to pay a certain sum of money in exchange for the AT&T California's activation of Plaintiff's and sub-class's local wireline telephone account and its promise to provide various communication and related services to Plaintiff and the Sub-Class..

116.    AT&T California expressly and/or impliedly agreed to bill and collect only for such charges that Plaintiff and the Sub-Class's clearly and explicitly authorized.

117.    AT&T California also expressly and/or impliedly agreed to provide clear and non-misleading telephone bills to Plaintiff and the Sub-Class.

118.    AT&T California further expressly and/or impliedly agreed to carry out its obligations of good faith and fair dealing.

119.    AT&T California breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by billing and collecting from Plaintiff and the Sub-Class for products or services, the purchase of which they never authorized.

120.    AT&T California further breached its contractual obligations by providing Plaintiff and the Sub-Class with telephone bills that were unclear and misleading.

121.    Plaintiff and the Sub-Class performed their contractual obligations.

122.    The aforementioned breaches of contract have proximately caused the Plaintiff and the Sub-Class economic injury and other damages.

**FIFTH CAUSE OF ACTION**

**(Tortious Interference with a Contract on behalf of the Class And Sub-Class)**

123.    Plaintiff incorporates by reference the foregoing allegations.

124.    Plaintiff and the Class and Sub-class had contractual relationships with their AT&T LECs whereby they agreed to pay a certain sum of money in exchange for activation of their telephone accounts and their carriers' promise to provide various communication and

related services to Plaintiff and the Class and Sub-class and to bill them only for products or services the purchase of which they had authorized.

125.    AT&T Inc., AT&T Operations and AT&T Services  knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

126.    AT&T Inc., AT&T Operations and AT&T Services intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing to be placed on the class members' bills across the nation unauthorized charges.

127.    Plaintiff and the Class and Sub-Class suffered loss as a direct result of the conduct of AT&T Inc., AT&T Operations and AT&T Services.

## SIXTH CAUSE OF ACTION
### (Breach of Trust on behalf of the Class and Sub-Class)

128.    Plaintiff incorporates by reference the foregoing allegations.

129.    In connection with the opening of accounts for AT&T wireline service, AT&T received from the customer class members herein extremely confidential personal information including, *inter alia*, information concerning the customer's name, address, Social Security number and various other items of personal identifying information, including, in the case of customers who signed up for automatic payments such as Plaintiff, information concerning the customer's bank account or credit card information.

130.    AT&T received the foregoing information in trust and was bound by fiduciary duties to hold that information in trust for the benefit of the customers providing such information.

131.    AT&T occupied a position of trust and confidence with respect to its customers, and was legally bound to treat all such information provided in connection with

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF CASE NO. 09-CV-1529 SI**

the opening of AT&T accounts or payment schemes with utmost fidelity.  In connection

therewith, AT&T owed fiduciary duties to its customers in this regard.

132.    Under well established law, any time a fiduciary has a financial interest in a

transaction, as AT&T did here, the transaction is presumptively fraudulent, and the burden

shifts to the fiduciary to prove by clear and convincing evidence that the transaction is in all

regards fair to the beneficiary (the customer here).

133.    Defendants' conduct here in using information it obtained in confidence to

impose charges on customers in which charges Defendants had a direct and substantial

interest was in violation of the duty of trust imposed on Defendants and were presumptively

fraudulent.

**SEVENTH CAUSE OF ACTION**
**(Violation Of California Public Utilities Code § 2890 on behalf of the Sub-Class)**

134.    Plaintiff incorporates by reference the foregoing allegations.

135.    California Public Utilities Code § 2106 provides as follows:

> Any public utility which does, causes to be done, or permits any
> act, matter, or thing prohibited or declared unlawful, or which
> omits to do any act, matter, or thing required to be done, either by
> the Constitution, any law of this State, or any order or decision of
> the commission, shall be liable to the persons or corporations
> affected thereby for all loss, damages, or injury caused thereby or
> resulting therefrom.  If the court finds that the act or omission was
> willful, it may, in addition to the actual damages, award exemplary
> damages.  An action to recover for such loss, damage, or injury
> maybe brought in any court of competent jurisdiction by any
> corporation or person.

136.    AT&T California is a "public utility" within the meaning of the CPUC.

137.    According to the California Public Utilities Commission, "the practice of cramming

has become a serious and widespread problem in California, draining time and money from

California consumers and businesses."

138.    CPUC § 2890, provides, *inter alia*, as follows:

(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized.
…

(b)    (2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed.    Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

139.    AT&T California violated § 2890(a) since its telephone bills contained charges for products and services, the purchase of which Plaintiff and the Sub-Class did not authorize.

140.    AT&T California's billing for unauthorized charges is further exacerbated by its failure to comply strictly with various disclosure-related requirements of § 2890(d), making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

141.    Although required to do so, the bills issued by AT&T California systematically and uniformly failed to include "a clear and concise description of the service, product, or other offering for which a charge has been imposed" or "a description of the manner in which a dispute regarding the charge may be addressed."

142.    AT&T California's conduct was, as set forth above, willful.

143.   As a result of Defendants' conduct, Plaintiff and the Sub-Class have suffered and will continue to suffer loss, damage, and injury.

144.   Plaintiff and the Sub-Class are entitled to actual and exemplary damages.

### EIGHTH CAUSE OF ACTION

**(Violation of California Business & Professions Code § l7200, *et seq.*
on behalf of the Sub-Class)**

145.   Plaintiff incorporates by reference the foregoing allegations.

146.   The Unfair Business Practices Act proscribes unfair business competition and defines the same to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Business & Professions Code §§17200, *et seq.*

147.   Defendants violated, and continue to violate this proscription through their conduct alleged above, including their violations of the California Public Utilities Code section 2890, as set forth above.

148.   Defendants, through their acts of unfair competition, have obtained money from Plaintiff and members of the proposed Classes. Plaintiff in fact has been injured by Defendants' conduct, as have members of the Class.  Plaintiff and the members of the Classes ask that this Court restore this money to them and enjoin Defendants from continuing their illegal practices.

149.   Defendants' conduct, as set forth above, is likely to deceive members of the public and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

150.   Such conduct is ongoing and continues to this date.  Plaintiff, the Class members and the general public are therefore entitled to the relief described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the class and sub-class, request the following relief:

1.      That the Court enter an order certifying the Class and Sub-Class and appointing Plaintiff as the representative of the Class and Sub-Class, and appointing counsel for Plaintiff as lead counsel for the respective classes;

2.      That the Court enter an order declaring that the actions of Defendants, as set out above, as well as in other respects, violate the law in the respects alleged;

3.      That the Court enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the class treble and exemplary damages;

4.      That the Court award Plaintiff and the classes their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

5.      That the Court award Plaintiff and the classes pre- and post-judgment interest;

6.      That the Court issue an injunction prohibiting Defendants from continuing their conduct complained of herein;

7.      That the Court award such other and further relief as may be necessary or appropriate.

Respectfully submitted,

THE JACOBS LAW FIRM, CHTD.

Dated:  August 13, 2009

By:/s/ John G. Jacobs
JOHN G. JACOBS

One of the Attorneys for Plaintiff
And the Putative Class and Sub-Class

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. 09-cv-1529 SI**

- 33 -

1

**JURY DEMAND**

2

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

3

The Jacobs Law Firm, Chtd.

4

Dated:  August  13, 2009

5

6

By: /s/ John G. Jacobs
John G. Jacobs

7

Attorneys for Plaintiff and the Putative
Classes and Sub-Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28