

Rosa Amelia Zurek
IN PRO PER
558 South 2nd Street, Apt. 8
El Centro, CA 92243-2760
Phone: 310.570.5069

**Case No.: CV 09-1529 SI**

FILED

JUN 1 4 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: AT&T Landline Third Party Billing Settlement, Nwabueze v. AT&T, Inc. )<br><br>)<br>)<br>)<br>)<br>)<br>Rosa Amelia Zurek, )<br>)<br>            Objector. )<br>)<br>)<br>)<br>)<br>) | Case No.: CV 09-1529 SI<br><br>**OBJECTION OF CLASS MEMBER ROSA AMELIA ZUREK TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Courtroom: 10<br>Judge: Hon. Susan Illston |

OBJECTION TO PROPOSED SETTLEMENT - Case No.: CV 09-1529 SI - 1

# Table of Contents

INTRODUCTION ................................................................. 5

I.   The Objector Is a Member of the Class ................................. 6

II.  The Objector changed her name due to marriage ........................ 7

III. The objector has moved ............................................... 8

IV.  The Objector is in PRO SE ............................................ 8

V.   The Objector Provides a Valuable Perspective for the Court in the Exercise of its Independent Duty to Closely Scrutinize the Proposed Settlement ...................... 9

VI.  The "Claim Forms" Are Coupons, and the Proposed Settlement Should Be Evaluated As Such ............................................................... 11

VII. The Proposed Settlement Would Violate the Class Action Fairness Act (CAFA), and Final Approval Should Be Denied On This Basis Alone ............................. 14

VIII. The Proposed Settlement Class Should Be Decertified Because Individualized Issues Predominate Over Common Issues ....................................... 16

IX.  The Attorney Fee Request Is Disproportionate to the Actual Benefit Derived By the Class and Should Be Both Reduced and Delayed. .............................. 18

a.   The particular circumstances and terms of the Proposed Settlement necessitate an especially high level of scrutiny............................................ 20

b.   The attorney fee request is excessive under a lodestar analysis, shows evidence of unreasonable hours claimed, and requires scrutiny by the Court................. 21

CONCLUSION .................................................................. 25

# Cases

Amchem Prods., Inc. v. Windsor ............................................... 9, 16, 17

Bluetooth ............................................................... passim

Bluetooth Headset Prod. Liability ............................................. 18

Bridgestone/Firestone, Inc. .................................................. 18

Cann v. Carpenters' Pension Trust Fund ............................................... 22

Create-A-Card, Inc. v. Intuit, Inc. ................................................. 22

Create-A-Card, Inc. v. Intuit, Inc. ................................................. 19

Davis v. City and Cnty. of San Francisco ............................................ 22

Diaz v. Trust Territory of Pacific Islands ........................................... 9

Dunleavy v. Nadler .................................................................. 9

Figueroa v. Sharper Image ........................................................... 13

Figueroa v. Sharper Image Corp. ..................................................... 13

Fischer v. SJB-P.D. Inc. ............................................................ 23

Fleury v. Richemont North Am., Inc .................................................. 12

Gates v. Deukmejian ................................................................. 23

General Motors Corp. Pick-Up Truck Fuel Tank ........................................ 16

Grand Theft Auto Video Game Consumer Litig .......................................... 17

Grand Theft Auto Video Game Consumer Litig. ......................................... 18

Grand Theft Auto Video Game Consumer Litigation ..................................... 17

Hanlon v. Chrysler Corp ............................................................. 10

Hanlon v. Chrysler Corp. ............................................................ 18

Hensley ............................................................................. 23

Hensley v. Eckerhart ................................................................ 22

HP Inkjet Printer Litig. ............................................................ 19

McCown v. City of Fontana ........................................................... 22

McLaughlin v. Am. Tobacco Co .................................................... 16, 17

Molski ............................................................................... 9

Molski v. Gleich ..................................................................... 9

Pl.'s Notice Of Mot. & Mot. For Award of Att'y's Fees, Reimbursement of Expenses &
  Incentive Award Payments, June 22, 2012, ECF No. 48 ............................... 24

Role Models Am., Inc. v. Brownlee ................................................... 23

Silber v. Mabon ...................................................................... 9

Six (6) Mexican Workers v. Arizona Citrus Growers ................................... 18

Sobel v. Hertz ................................................................. 13

St. Jude Med., Inc. ............................................................ 17

Staton v. Boeing Co. ........................................................... 19

Synfuel Techs., Inc. v. DHL Express (USA), Inc. ................................ 13

Torrisi v. Tucson Elec. Power Co. .............................................. 10

True v. Am. Honda Motor Co. ................................................ passim

Weinberger v. Great N. Nekoosa Corp ........................................... 11

Weinberger v. Great N. Nekoosa Corp. .......................................... 21

Welch .................................................................... 23, 24

Welch v. Metropolitan Life Ins. Co. .................................... 22, 23, 24

Wing v. Asarco, Inc. ........................................................... 20

**Statutes**

28 U.S.C. § 1712 ............................................................... 14

28 U.S.C. § 1712(a) ............................................................ 14

28 U.S.C. § 1712(c) ............................................................ 15

28 U.S.C. § 1712(e) ............................................................ 14

Fed. R. Civ. P. 23(h) .......................................................... 13

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket
    Guide for Judges 18 (3d ed. 2010) ......................................... 15

Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket
    Guide for Judges 20 (3d ed. 2010) ......................................... 10

Class Action Fairness Act of 2005 (CAFA) ....................................... 13

The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration
    Advisory 03-01 (2003) ..................................................... 24

Hereby the Objector, Mrs. Rosa Amelia Zurek, objects to the Settlement in Nwabueze v., AT&T, Inc., Case No. CV 09-1529 SI.

## INTRODUCTION

Rosa Amelia Zurek, the Objector, represents tens of thousands of class members who have been harmed by AT&T's unlawful actions. The Proposed Settlement will extinguish the class members' legal claims against AT&T while providing near-zero recovery. Mrs. Zurek believes that the proposed settlement is worthless, and she believes that she will receive no benefit from the proposed settlement. There is nothing wrong with class counsel being richly rewarded for a job well done. Where the recovery to the class is nothing, the class counsel should not be rewarded.

Mrs. Zurek spent valuable money on bills from AT&T at a time when she was a waitress at a chain restaurant just earning minimum wage, heavily in debt and with little discretionary income. Mrs. Zurek should be entitled to the protections of federal and California consumer protection law. Yet, under the terms of the Proposed Settlement, Mrs. Zurek will receive nothing of real value, while waiving all of her rights against AT&T both now and in perpetuity. The Proposed Settlement is unconscionable by its terms, violates the Class Action Fairness Act of 2005, and proposes a

1   Settlement Class that cannot properly be certified.
2   Furthermore, Class Counsel and other Plaintiffs'
3   counsel would claim $5,500,000 in attorneys' fees for
4   selling out Mrs. Zurek and the other absent class
5   members. This is an unconscionable amount in light of
6   the inadequate relief obtained, the indicia of
7   collusion in obtaining the Proposed Settlement, and the
8   inadequacy of Plaintiffs' counsel's billing practices.
9
10   *For all of these reasons, the Court should reject*
11   *the Proposed Settlement and the attorneys' fee award.*
12
13
14
15   I. The Objector Is a Member of the Class
16   Rosa Amelia Zurek is a resident of the state of
17   California who has been billed for third-party charges
18   on an AT&T landline telephone Account (BTN:
19   7603533529679) (see Exhibit) between January 1, 2005
20   and January 14, 2013 which she did not authorize.
21       The putative settlement class is defined as "All
22   current and former AT&T ILEC landline telephone
23   customers who between January 1, 2005 to January 14,
24   2013 were billed for Third-Party Charges submitted to
25   AT&T through a Clearinghouse, also known as a billing
26   aggregator, such as Billing Concepts Inc. a/k/a Billing
27   Services Group Clearing Solutions or BSG d/b/a USBI and
28   ZPDI, ACI Billing Services Inc. d/b/a OAN, Enhanced
    Services Billing, Inc. d/b/a ESBI, and HBS Billing

Services Company, The Billing Resource d/b/a The
Billing Resource or Integretel, ILD Teleservices, Inc.,
Transaction Clearing, LLC, PaymentOne Corp., d/b/a
PaymentOne or eBillit, and eTelcharge.com, Inc. [AT&T
ILEC means an AT&T-affiliated incumbent local exchange
carrier, such as Pacific Bell Telephone Company, d/b/a
AT&T California, Illinois Bell Telephone Company, d/b/a
AT&T Illinois, etc.]"

Excluded from the Settlement Class are:

Judicial officers to whom the Action is assigned; or
the U.S. government or any State government or
instrumentality thereof.

Mrs. Zurek has been billed for third-party charges on
an AT&T landline telephone Account (BTN: 7603533529679)
between January 1, 2005 and January 14, 2013 which she
did not authorize, according to this putative class
definition, and does not fall within any of the
excluded categories of persons and entities. Mrs. Zurek
is therefore a class member with standing to object.
She intends to appear at the fairness hearing with her
husband Michael Zurek.

## II. The Objector changed her name due to marriage

On the postcard (see Exhibit) which notified the
Objector about this instant matter her maiden name is

1  noted: "Rosa Amelia Mancilla". Due to her marriage on
2  February 5, 2013 she changed her name to "Rosa Amelia
3  Zurek".

4

5

6  ### III. The objector has moved

7  On the postcard which notified the Objector about this
8  instant matter her old address is noted. The old
9  address was:

10              1301 North 6th Street
11              El Centro, CA 92243-1456

12

13  The new address is:

14

15              Rosa Amelia Zurek
16              558 South 2nd Street, Apt. 8
17              El Centro, CA 92243-2760

18

19

20

21

22  ### IV. The Objector is in PRO SE

23  Objector, Mrs. Zurek, in PRO SE, and unskilled in law,
24  studying the instant matter and writing this objection
25  in her spare time after working long hours as a
26  waitress at minimum wage.

27

28

OBJECTION TO PROPOSED SETTLEMENT - Case No.: CV 09-1529 SI - 8

## V. The Objector Provides a Valuable Perspective for the Court in the Exercise of its Independent Duty to Closely Scrutinize the Proposed Settlement

"Both the class representative and the courts have a duty to protect the interests of absent class members." Silber v. Mabon, 957 F.2d 697, 701 (9th Cir. 1992); see also Diaz v. Trust Territory of Pacific Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members."). Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997); Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003).

This Proposed Settlement merits especially close scrutiny by the Court because it presents an instance where a settlement agreement precedes formal evaluation of class certification. "Settlements that take place prior to formal class certification require a higher standard of fairness." Molski, 318 F.3d at 953 (quoting Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000)). "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under

Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prod. Liability, 654 F.3d 935, 946-47 (9th Cir. 2011) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Accordingly, mere consideration and satisfaction of the eight *Churchill* factors[1] alone are not enough to sustain a settlement as fair, and is "not enough to survive appellate review." Id. at 946-47. Rather, the Court must also look for "subtle signs" of collusion in facts such as a **disproportionate attorneys' fees distribution** or a "clear sailing" arrangement, both of which exist here. See id. at 947.

The "clear sailing" agreement in the Proposed Settlement provides another reason for the Court to apply extra scrutiny. See Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 20 (3d ed. 2010) (defining a "clear sailing" agreement as a "stipulation that attorney fees

---

[1] These factors are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993).

1   based on the inflated settlement figure will not be
2   contested" and advising that it "adds decibels to the
3   alarms set off" by other settlement red flags). The
4   Ninth Circuit has cautioned that a clear sailing
5   agreement is a "warning sign" that may point toward
6   collusion. In re Bluetooth, 654 F.3d at 947. In the
7   instant Proposed Settlement, Defendants agreed not to
8   contest Plaintiffs' Counsel's fee request so long as it
9   was for a total amount of less than 25% of the
10  Settlement Fund amount. (Stipulation of Settlement §
11  I.1.) Clear sailing provisions such as this are
12  disfavored in the Ninth Circuit because they deprive
13  the court and the absent class members of the benefit
14  of the adversarial process, and thus necessitate
15  greater scrutiny. In re Bluetooth, 654 F.3d at 949.
16  "[T]he very existence of a clear sailing provision
17  increases the likelihood that class counsel will have
18  bargained away something of value to the class."
19  Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524
20  (1st Cir. 1991).
21
22
23
24  VI. The "Claim Forms" Are Coupons, and the Proposed Settlement Should
        Be Evaluated As Such
25
26  The primary relief offered by the proposed settlement
27  is to pay Class Members who timely submit a properly
28  completed Claim Form the full amount (100%) of
    unauthorized Third-Party Charges. Class members may

1   only receive cash compensation when they timely submit
2   a properly completed Claim Form for the full amount
3   (100%) of unauthorized Third-Party Charges. This
4   circumstance will undoubtedly be rare, since it
5   requires class members to complete a procedural maze:
6   request a Billing Summary from AT&T of all of the
7   Third-Party Charges that the class members were billed
8   from January 1, 2005 through January 14, 2013, and
9   finally out and submitting claim paperwork. In short,
10  the proposed Settlement was designed to make the cost
11  of securing of a cash settlement greater than the
12  benefit.

13      Because the primary relief offered by the proposed
14  settlement is to timely submit a properly completed
15  Claim Form in order to get any cash benefit, the
16  proposed settlement is a "coupon settlement." See True
17  v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1069 &
18  n.20 (C.D. Cal. 2010) (finding a coupon settlement
19  where coupons were the primary form of relief, even
20  where other forms of relief were involved); Fleury v.
21  Richemont North Am., Inc., No. C-05-4525 EMC, 2008 WL
22  3287154, at *2 (N.D. Cal. Aug. 6, 2008) (defining a
23  coupon settlement as one where the relief constitutes
24  "a discount on another product or service offered by
25  the defendant in the lawsuit"). The Claim Forms are a
26  form of in-kind compensation, which are not worth the
27  efforts of a yearlong lawsuit, unless you are the class
28  counsel collecting soon $5,500,000 in attorneys' fees.

1  Furthermore it is foreseeable that some percentage of
2  the possible claims will never be claimed and, as a
3  result, will not constitute a cost. Coupon settlements
4  are problematic because: (1) they often do not provide
5  meaningful compensation to class members; (2) they
6  often fail to disgorge ill-gotten gains from the
7  defendant; and (3) they often require class members to
8  do future business with the defendant in order to
9  receive compensation. See Figueroa v. Sharper Image
10 Corp., 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007).
11      For these reasons, a higher level of court scrutiny
12 has been mandated by Congress for coupon settlements
13 than for other types of settlements, under the Class
14 Action Fairness Act of 2005 (CAFA). See, e.g., Synfuel
15 Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d at
16 654; True v. Am. Honda Motor Co., 749 F. Supp. 2d at
17 1069; Figueroa v. Sharper Image Corp., 517 F. Supp. 2d
18 at 1321; see also S. Rep. No. 109-14, at 27 (2005), as
19 reprinted in 2005 U.S.C.C.A.N. 3, 27 (Section 5 of CAFA
20 "requires greater scrutiny of coupon settlements");
21 Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes
22 ("Settlements involving nonmonetary provisions for
23 class members also deserve careful scrutiny to ensure
24 that these provisions have actual value to the
25 class."). Accordingly, courts have rejected numerous
26 proposed coupon settlements. See, e.g., Sobel v. Hertz,
27 No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565 (D. Nev.
28 June 27, 2011) (denying final approval of proposed

coupon settlement); <u>True v. Am. Honda Motor Co</u>., 749 F. Supp. 2d at 1069-70, 1082-83 (declining to find proposed coupon settlement to be "fair, reasonable and adequate" under either Fed. R. Civ. P. 23(e) or 28 U.S.C. § 1712(e)).

VII.   The Proposed Settlement Would Violate the Class Action Fairness Act (CAFA), and Final Approval Should Be Denied On This Basis Alone

Although Class Counsel has been careful to never use the word "coupon" in describing the proposed settlement, instead favoring the term "Claim Form" (see generally Stipulation of Settlement), mere semantics are not sufficient to escape one's obligations under Federal law. In CAFA, Congress provided clear guidelines on how coupon settlements must be carried out and calculated. 28 U.S.C. § 1712. The proposed settlement would necessarily and by its own terms violate CAFA by violating the requirement that attorney fees attributable to coupons be based upon actual coupon redemption.

Because this is a coupon settlement, any award of attorneys' fees attributable to the value of the coupons "shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a) (emphasis added). This narrow focus on the actual value of redeemed coupons is mandated even where other forms of relief are proffered in addition to coupons. See 28

U.S.C. § 1712(c) (requiring that where mixed relief is awarded, including both coupons and equitable relief, the portion of any attorneys' fees attributable to the value from coupons must still be calculated according to § 1712(a)). It is not enough merely to know the total value of coupons that could be issued, nor is it even sufficient to know the total number of class members who have submitted claims. "Determining the precise value to the class of the rare beneficial coupon settlement . . . calls for hard data on class members' redemption of the coupons." Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 18 (3d ed. 2010). Under the proposed settlement terms, the value to the class attributable to redeemed coupons is not determined, and there are no plans in place to track or evaluate coupon redemption. Instead, attorneys' fees are justified based upon lodestar calculations. Thus, for the sake of mere convenience to Class Counsel in its mission to recover fees quickly and efficiently, actual coupon value and redemptions are entirely ignored. Such shenanigans do not comport with CAFA, and insofar as this settlement represents an attempt to sidestep a CAFA-mandated focus on the value of redeemed coupons, it should not garner final approval.

VIII.   The Proposed Settlement Class Should Be Decertified Because Individualized Issues Predominate Over Common Issues

When the simultaneous notice of the class and the settlement is distributed to the proposed class, objecting class members can still challenge the class on commonality, typicality, adequacy of representation, superiority, and predominance grounds—they are not limited to objections based strictly on the settlement's terms. In re General Motors Corp. Pick-Up Truck Fuel Tank, 55 F.3d 768, 791 (3d Cir. 1995) (citing 2 Herbert Newberg & Alba Conte, Newberg On Class Actions § 11.27 at 11-40 (3d ed. 1992)). The particular area where evaluation of a proposed settlement class often falls short is in predominance. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. at 693. The evaluation of a settlement class should not be less rigorous than formal evaluation of a class for litigation purposes, because such "legal or factual questions . . . preexist any settlement." Id. at 622-23. Although the predominance requirement is "readily met in certain cases alleging consumer . . . fraud," id. at 625, the presence of individualized issues regarding the necessity of proving reliance may preclude a finding of predominance. See McLaughlin v. Am. Tobacco Co.,

522 F.3d 215, 222-25 (2d Cir. 2008). Furthermore, the existence of differences in state law will compound any disparities. Amchem Prods., Inc. v. Windsor, 521 U.S. at 624. Multiple courts have decertified proposed settlement classes based upon inadequacies found during the predominance inquiry. E.g., Id. at 625; In re Grand Theft Auto Video Game Consumer Litigation, 251 F.R.D. 139 (S.D.N.Y. 2008). The proposed settlement class is nationwide, and would treat class members from divergent states in an identical manner. The class members in this consolidated litigation, like the Objector (who resides in California), have very different and specific claims based on divergent state consumer protection statutes. The original complaints, preconsolidation, sounded claims in state consumer protection laws including fraud, misrepresentation and false advertising. Federal courts have held that some state consumer protection laws, including those of California, implicate reliance as an element, requiring individualized proof. E.g., In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. at 146, 153-55; see also In re St. Jude Med., Inc., 522 F.3d 836, 839-40 (8th Cir. 2008)(decertifying a nationwide class of purchasers to whom the lower court had decided to apply Minnesota consumer-fraud law). Such reliance issues, implicated here, preclude final certification of this proposed settlement class. See McLaughlin v. Am. Tobacco Co., 522 F.3d at 222-26

1  (decertifying nationwide class on predominance grounds
2  due to individualized reliance issues); In re
3  Bridgestone/Firestone, Inc., 288 F.3d 1012, 1017-19
4  (7th Cir. 2002) (decertifying two nationwide classes on
5  predominance grounds due to differences in state law);
6  In re Grand Theft Auto Video Game Consumer Litig., 251
7  F.R.D. at 155-57. "Differences across states may be
8  costly for courts and litigants alike, but they are a
9  fundamental aspect of our federal republic and must not
10 be overridden in a quest to clear the queue in court."
11 In re Bridgestone/Firestone, Inc., 288 F.3d at 1020.

12
13
14
15 ### IX. The Attorney Fee Request Is Disproportionate to the Actual Benefit Derived By the Class and Should Be Both Reduced and Delayed.
16
17 Regardless of how the Court evaluates the Proposed
18 Settlement, the Court should also carefully scrutinize
19 the motion of Class Counsel for an award of attorneys'
20 fees. "Courts have long recognized that settlement
21 class actions present unique due process concerns for
22 absent class members." In re Bluetooth Headset Prod.
23 Liability, 654 F.3d 935, 946 (9th Cir. 2011) (quoting
24 Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir.
25 1998) (internal quotation marks omitted)). During the
26 settlement of class actions, "there is great concern
27 that attorneys may sacrifice the interests of the
28 class" for the sake of a fee award. Six (6) Mexican
   Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311

(9th Cir. 1990). "Given . . . economic realities, the
assumption in scrutinizing a class action settlement
agreement must be, and has always been, that the
members of the class retain an interest in assuring
that the fees to be paid class counsel are not
unreasonably high." Staton v. Boeing Co., 327 F.3d 938,
964 (9th Cir. 2003). Fees must be "fundamentally fair,
adequate, and reasonable." Id. The Ninth Circuit
therefore instructs that "a district court must
carefully assess the reasonableness of a fee amount
spelled out in a class action settlement agreement."
Id. at 963. While courts in this circuit regularly have
afforded a presumption of fairness to non-collusive
settlement, the same deference is not appropriate in
considering the fairness of an award of attorneys'
fees. See Staton v. Boeing Co., 327 F.3d 938, 964 (9th
Cir. 2003) ("That the defendant in form agrees to pay
the fees independently of any monetary award or
injunctive relief provided to the class in the
agreement does not detract from the need to carefully
scrutinize the fee award."); In re HP Inkjet Printer
Litig., 5:05-CV-3580 JF, 2011 WL 1158635, at *9 (N.D.
Cal. Mar. 29, 2011); Create-A-Card, Inc. v. Intuit,
Inc., No. C 07-06452 WHA, 2009 WL 3073920, at *2 (N.D.
Cal. Sept. 22, 2009)("It is clearly within the Court's
discretion to award less in fees than the amount sought
by counsel, even absent defendant's objection to the
requested amount."). The Court remains independently

obligated to ensure that any fee award is fair and reasonable, even if the parties have already agreed to an amount. In re Bluetooth, 646 F.3d at 941; see also Wing v. Asarco, Inc., 114 F.3d 986, 988 (9th Cir.1997).

a. *The particular circumstances and terms of the Proposed Settlement necessitate an especially high level of scrutiny.*

Courts have applied special care to evaluating fee requests which are "negotiated at the same time as the substantive relief to the class." True v. Am. Honda Motor Co., 749 F. Supp. 2d at 1078. This is because such negotiation creates a risk of collusion. One prominent example of simultaneous negotiation is found in "clear sailing" agreements. See Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 20 (3d ed. 2010) (defining a "clear sailing" agreement as a "stipulation that attorney fees based on the inflated settlement figure will not be contested" and advising that it "adds decibels to the alarms set off" by other settlement red flags). The Ninth Circuit has cautioned that a clear sailing agreement is a "warning sign" that may point toward collusion and gives "the district court . . . a special obligation to assure itself that the fees awarded in the agreement were not unreasonably high"— because if they are, this may indicate an unfair settlement agreement. In re Bluetooth, 654 F.3d at 947

1  (quoting Staton v. Boeing Co., 327 F.3d 938, 965 (9th

2  Cir. 2003) (internal marks omitted)).

3        In the instant Proposed Settlement, the settling

4  parties instituted a clear sailing arrangement, whereby

5  Defendants agreed not to contest Plaintiffs' Counsel's

6  fee request. Clear sailing provisions such as this are

7  disfavored in the Ninth Circuit because they deprive

8  the court and the absent class members of the benefit

9  of the adversarial process, and thus necessitate

10  greater scrutiny. In re Bluetooth, 654 F.3d at 949.

11  "[T]he very existence of a clear sailing provision

12  increases the likelihood that class counsel will have

13  bargained away something of value to the class."

14  Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524

15  (1st Cir. 1991).

16

17

18        b. *The attorney fee request is excessive under a lodestar analysis, shows*

19           *evidence of unreasonable hours claimed, and requires scrutiny by the*

20           *Court.*

21  While a lodestar method of awarding fees is

22  permissible under CAFA, application of a "lodestar

23  amount is particularly inappropriate where . . . the

24  benefit achieved for the class is small, as in the

25  instant case, and the lodestar amount large." True v.

26  Am. Honda Motor Co., 749 F. Supp. 2d at 1077. While a

27  lodestar figure is presumptively reasonable, the Ninth

28  Circuit has cautioned that any lodestar figure should

   be adjusted upward or downward based on an appropriate

1  positive or negative multiplier based on reasonableness

2  factors. In re Bluetooth, 654 F.3d at 942. The foremost

3  consideration in determining the reasonableness of a

4  lodestar figure should be "the benefit obtained for the

5  class." Id.(citing Hensley v. Eckerhart, 461 U.S. 424,

6  434-36 (1983); McCown v. City of Fontana, 565 F.3d

7  1097, 1102 (9th Cir. 2009)). The contingency nature of

8  plaintiffs' counsel's representation cannot be used to

9  justify a fee enhancement or an inflated hourly rate.

10 Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 947

11 (9th Cir. 2007); see also Cann v. Carpenters' Pension

12 Trust Fund, 989 F.2d 313, 318 (9th Cir. 1993)

13 (contingency fee enhancement); Davis v. City and Cnty.

14 of San Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992),

15 vacated in part on other grounds, 984 F.2d 345 (1993)

16 (inflated hourly rate). Rather, the "key consideration

17 in determining a fee award is reasonableness in light

18 of the benefit actually conferred," even under a

19 lodestar analysis. Create-A-Card, Inc. v. Intuit, Inc.,

20 No. C07-06452 WHA, 2009 WL 3073920, at *3 (N.D. Cal.

21 Sept. 22, 2009).

22      Under the Proposed Settlement terms, the class has

23 achieved extremely limited results, unfair, inadequate,

24 and insufficient results, as argued elsewhere in this

25 brief. "[W]here the plaintiff has achieved 'only

26 limited success,' counting all hours expended on the

27 litigation—even those reasonably spent—may produce an

28 'excessive amount' . . . ." In re Bluetooth, 654 F.3d

at 942 (quoting Hensley, 461 U.S. at 436, 440).

Therefore, the fee award requested by Plaintiffs'

counsel is excessive in this case, and a negative

multiplier should be applied due to the sheer

inadequacy of the results obtained for the class.

Further separate and independent negative reductions

from the lodestar amount are also appropriate for block

billing and billing in quarter-hour increments, as will

now be explained in depth.

    Reductions are appropriate where plaintiffs'

counsel chooses to "block bill" it's time rather than

itemize each task individually. Welch v. Metropolitan

Life Ins. Co., 480 F.3d at 948. The fee applicant bears

the burden of documenting the appropriate hours

expended in the litigation and must submit evidence in

support of those hours worked. Id.; see also Gates v.

Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992). Block

billing justifies reductions because it makes it more

difficult to determine how much time was spent on

particular activities. Welch, 480 F.3d at 948; see

also, e.g., Role Models Am., Inc. v. Brownlee, 353 F.3d

962, 971 (D.C. Cir. 2004) (reducing requested hours

because counsel's billing "lump[ed] together multiple

tasks, making it impossible to evaluate their

reasonableness"); Fischer v. SJB-P.D. Inc., 214 F.3d

1115, 1121 (9th Cir. 2000) (holding that a district

court may reduce hours to offset "poorly documented"

billing). Block billing "may increase time by 10% to

1    30%." See The State Bar of California Committee on
2    Mandatory Fee Arbitration, Arbitration Advisory 03-01
3    (2003).

4        Here, Class Counsel as well as other Plaintiffs'
5    counsel have failed to individually itemize the tasks
6    completed during the hours claimed—only total
7    accumulated hours have been submitted per attorney,
8    with no timesheets specifying what tasks relating to
9    the litigation were accomplished. (See generally Pl.'s
10   Notice Of Mot. & Mot. For Award of Att'y's Fees,
11   Reimbursement of Expenses & Incentive Award Payments,
12   June 22, 2012, ECF No. 48.) It may be true that counsel
13   possess such documentation, and have merely failed to
14   submit it, in which case reduction is only appropriate
15   for those hours which were actually block billed.
16   Welch, 480 F.3d at 948. Therefore, the Court should
17   direct Class Counsel and other Plaintiffs' counsel to
18   submit full billing records for the Court's evaluation,
19   and enter reductions to the hours claimed where block
20   billing has occurred. Once the Court has separated
21   block billed hours from those for which counsel can
22   submit appropriate documentation, a 20% reduction on
23   block billed hours would be appropriate, as this
24   represents the middle range of the likely unjustified
25   increase in billed time from block billing practices.
26       Reductions are also appropriate where plaintiffs'
27   counsel chooses to bill in quarter-hour increments. See
28   Welch v. Metropolitan Life Ins. Co., 480 F.3d at 948-

49. This is because it may result in a request for
compensation for hours not reasonably expended on the
litigation. Id. Such findings may be made upon a review
of the firm's summary time sheet for features such as
"phone calls and e-mails that likely took a fraction of
the time," as well as "quarter-hour or half-hour
charges for the drafting of letters, telephone calls
and intra-office conferences." Id. at 949 (affirming
the district court's 20% across-the-board reduction on
counsel's requested hours where counsel had billed in
quarter-hour increments).

In summation, the Court should institute several
independent reductions from the attorney's fee award to
ensure the fairness and reasonableness of any fee
award.

CONCLUSION

Neither the Proposed Settlement, nor the proposed
attorneys' fee award should be given final approval by
the Court. The Proposed Settlement is a coupon
settlement which violates multiple provisions of CAFA,
and should be rejected on that basis alone. The terms
of the Proposed Settlement also would provide extremely
minimal relief to the class, such that the Proposed
Settlement cannot be approved as fair, reasonable, or
adequate under Fed. R. Civ. P. 23(e). Further, the
Proposed Settlement Class should be decertified because

1  individualized issues of state consumer protection law
2  predominate over any common issues. Finally, the
3  proposed attorneys' fee award is excessive and
4  unjustifiable under any theory of calculation, and must
5  be both reduced and delayed in order for the Court to
6  faithfully execute its independent fiduciary duty to
7  the class. For all of these reasons, the Proposed
8  Settlement and attorneys' fee request represent an
9  unfair and unjust attempt to liquidate the consumer
10 rights of the Objector and tens of thousands of
11 similarly-situated consumers for grossly inadequate
12 consideration. Due to the signs of collusion, the
13 Objector can only conclude that Class Counsel
14 sacrificed the interests of the class for a chance at
15 obtaining significant attorneys' fees without
16 opposition from AT&T. In the interests of justice, the
17 Proposed Settlement and attorneys' fee award must be
18 rejected. Objector, Mrs. Zurek, in PRO SE, and
19 unskilled in law, studying the instant matter and
20 writing this Objection in her spare time after working
21 long hours as a waitress at minimum wage, hopes that
22 voicing her opinion as a working class person, who
23 actually has to work very hard for every dollar she
24 earns, against ludicrous and excessive attorney fee
25 awards, helps the honorable Court to understand how the
26 common United States citizen thinks about that
27 litigation attorneys abuse the legal system for their
28 sole benefit. $5,500,000 in attorneys' fees? How many

1 more luxury automobiles, yachts and villas do these
2 attorneys need? The objector, Mrs. Zurek, working since
3 1999 as a waitress at minimum wage, living in a small
4 border town close to Mexico, does not even own a car
5 after all those years of hard work.
6
7
8 I affirm, under penalty of perjury, that the foregoing
9 is true and correct.
10
11
12
13
14 June 10, 2013                    Respectfully submitted:
15
16
17 ................................................................
18 Rosa Amelia Zurek
   IN PRO PER
19 558 South 2nd Street,
   Apt. 8
20 El Centro, CA 92243-2760
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

THE UNDERSIGNED DECLARES:

On June 10, 2013 I served a copy of

## OBJECTION OF CLASS MEMBER ROSA AMELIA ZUREK

## TO THE PROPOSED SETTLEMENT AND NOTICE OF

## INTENT TO APPEAR

by depositing it as 1st class mail in a mail box, in El Centro, California, in an envelope bearing the requisite postage, addressed as follows:

**John G. Jacobs**

(Class Counsel)

55 West Monroe Street, Suite 2970

Chicago, IL 60603


**Douglas R. Tribble**

(AT&T's counsel)

501 W. Broadway, Suite 1100

San Diego, CA 92101


**Settlement Administrator**

Nwabueze v. AT&T, Inc.

c/o GCG

P.O. Box 35045

Seattle, WA 98124

OBJECTION TO PROPOSED SETTLEMENT - Case No.: CV 09-1529 SI - 28

1

2          I declare under penalty of perjury that the foregoing is true and correct.

3    Executed at El Centro, California, on June 10, 2013.

4

5                                        ..................................................................

6                                        Rosa Amelia Zurek
                                         558 South 2nd Street, Apt. 8
7                                        El Centro, CA 92243-2760

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28