1  JEFFREY F. KELLER (SBN 148005)          MICHAEL W. SOBOL (SBN 194857)
   **KELLER GROVER, LLP**                   **LIEFF CABRASER HEIMANN**
2  1965 Market Street                       **& BERNSTEIN, LLP**
   San Francisco, California  94103         275 Battery Street, 29th Floor
3  Telephone:  (415) 543-1305               San Francisco, CA  94111-3339
   Facsimile: (415) 543-7861                Telephone:  (415) 956-1000
4  E-Mail: jfkeller@kellergrover.com        Facsimile: (415) 956-1008
                                            E-Mail: msobol@lchb.com
5  JOHN G. JACOBS (*PRO HAC VICE*)
   BRYAN G. KOLTON (*PRO HAC VICE*)
6  **JACOBS KOLTON, CHTD.**
   55 West Monroe, Suite 2970
7  Chicago, Illinois 60603
   Telephone: (312) 427-4000
8  Facsimile: (312) 268-2425
   E-Mail: jgjacobs@jacobskolton.com
9  E-Mail: bgkolton@jacobskolton.com

10 Attorneys for Plaintiff and the Settlement Class

11 [*Additional Counsel on Signature Page*]

12                **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
13

14
   JOY NWABUEZE, individually and on behalf       Case No. CV 09-01529 SI
15 of a class of similarly situated individuals,
                                                  CLASS ACTION
16                        Plaintiff,
                                                  **PLAINTIFFS' NOTICE OF MOTION**
17        vs.                                     **AND MOTION FOR FINAL**
                                                  **APPROVAL OF THE SETTLEMENT,**
18                                                **PAYMENT OF ATTORNEYS' FEES**
   AT&T INC., a Delaware corporation; PACIFIC     **AND EXPENSES AND INCENTIVE**
19 BELL TELEPHONE COMPANY d/b/a AT&T              **AWARDS**
   CALIFORNIA, a California corporation; AT&T
20 SERVICES, INC., a Delaware corporation; AT&T   Location: Courtroom 10, 19th Floor.
   OPERATIONS, INC., a Delaware corporation; and  450 Golden Gate Avenue
21 DOES 1 through 21,                             San Francisco, California 94102
                                                  Date:  November 15, 2013
22                                                Time:  9:00 a.m.
                          Defendants.
23

24
                                                  **The Honorable Susan Illston**
25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on November 15, 2013, at 9:00 a.m. in the Courtroom of the Honorable Susan Illston, United States District Judge for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Joy Nwabueze and Amelia Terry ("Plaintiffs"), on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order of Final Approval of a proposed Settlement Stipulation And Agreement ("Settlement") entered into between the parties, for payment of Class Counsel's attorneys' fees and expenses, and payment of incentive awards to the representative plaintiffs.

    By this motion, Plaintiffs respectfully move the Court for entry of the [Proposed] Agreed Final Approval Order attached hereto, granting final approval of the proposed Settlement. This motion is based on the accompanying memorandum, the Settlement and all exhibits thereto, the separately-filed Declarations of Jennifer Keough and Resha Gadson, and the attached Declarations of John G. Jacobs, David Schachman, Jeffrey F. Keller, Michael Sobol and Michael A. Caddell, the argument of counsel, and all papers and records on file in this matter.

Dated: October 18, 2013               Respectfully submitted,

                                    */s/ John G. Jacobs*

                                      John G. Jacobs (*pro hac vice*)
                                      Bryan G. Kolton (*pro hac vice*)
                                      JACOBS KOLTON, CHTD.
                                      55 West Monroe Street, Suite 2970
                                      Chicago, Illinois 60603
                                      Telephone: (312) 427-4000
                                      Facsimile: (312) 268-2425
                                      E-mail: jgjacobs@jacobskolton.com
                                      E-mail: bgkolton@jacobskolton.com

                                      David Schachman (*pro hac vice*)
                                      LAW OFFICES OF DAVID SCHACHMAN, P.C.
                                      55 West Monroe Street, Suite 2970
                                      Chicago, Illinois 60603
                                      Telephone: (312) 427-9500
                                      Facsimile: (312) 268-2425
                                      ds@schachmanlaw.com

1    Jeffrey F. Keller (State Bar No. 148005)
     KELLER GROVER, LLP
2    1965 Market Street
     San Francisco, CA 94103
3    Telephone:  (415) 543-1305
     Facsimile:  (415) 543-7861
4    jfkeller@kellergrover.com

5    Michael W. Sobol (State Bar No. 194857)
     LIEFF CABRASER HEIMANN & BERNSTEIN,
6    LLP
     275 Battery Street, 29th Floor
7    San Francisco, CA  94111-3339
     Telephone:  (415) 956-1000
8    Facsimile:  (415) 956-1008
     msobol@lchb.com
9
     Michael A. Caddell
10   Cynthia B. Chapman
     Craig C. Marchiando (*Pro Hac Vice*)
11   **CADDELL & CHAPMAN**
     1331 Lamar, Suite 1070
12   Houston, TX  77010
     Telephone:  (713) 751-0400
13   Facsimile:  (713) 751-0906
     mac@caddellchapman.com
14   cbc@caddellchapman.com
     ccm@caddellchapman.com
15
     *Class Counsel*
16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL                    CASE NO. 4:09-CV-01529 SI
APPROVAL OF THE SETTLEMENT, ETC.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.      THE SETTLEMENT MERITS FINAL APPROVAL ................................................. 4

    A.  The Settlement Is The Product Of Arms-Length Negotiation ........................... 6

    B.  The Immediate Relief Provided By The Settlement Is Particularly Impressive
        Given The Significant Class Certification, Liability, And Damages Hurdles
        Plaintiffs Faced In This Risky, Expensive and Complex Litigation, And
        Given The Possibility Of Delayed Recovery Or No Recovery At All ............. 7

    C.  The Overwhelmingly Positive Reaction Of The Class Members Supports
        Approval ........................................................................................................... 9

    D.  The Recommendations Of Experienced, Well-Informed Counsel Favor
        Approval ......................................................................................................... 10

II.     THE OBJECTIONS SHOULD BE OVERRULED .................................................. 11

    A.  Most Of The 25 Purported Objections Were Not Filed And/Or Served In
        Compliance With The Court's Preliminary Approval Order
        And The Notice ............................................................................................... 13

    B.  Some Purported Objectors Lack Standing ..................................................... 15

    C.  Separate And Apart From Their Failure To Comply With The Court's
        Order Or Lack Of Standing, None Of The Purported Objections
        Has Merit ........................................................................................................ 15

        1. Objections That Fail To State Any Basis (8) ......................................... 15

        2. Objectors That Do Not Appear To Be Objecting To The
           Settlement .......................................................................................... 16

        3. Objectors Raising Individual Issues Not Affecting The Class
           And Settlement As A Whole And Who Seek Unique
           Remedies (10) .................................................................................... 16

        4. Objections To The Claims Process ....................................................... 18

        5. Miscellaneous Objections ..................................................................... 20

           a. Objection Of Rose Amelia Zurek (Mancilla) ............................. 20
           b. Objection Of Gordon Morgan PC ............................................. 22
           c. Objection Of Charles M. Thompson ......................................... 25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**6. The Objections To The Requested Fees And Expenses And Incentive Awards For The Representative Plaintiffs Should Be Overruled** ................................................................................................ 26

**CONCLUSION** ................................................................................................ 29

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

ii

## **TABLE OF AUTHORITIES**

*Barnes v. FleetBoston Fin. Corp,*
 2006 WL 6916834 (D. Mass. Aug. 22, 2006)...................................................20

*Blessing v. Sirius XM Radio Inc.,*
 507 F. App'x 1, 2 (2d Cir. 2012) ....................................................................25

*Boyd v. Bechtel Corp.,*
 485 F.Supp. 610 (N.D.Cal.1979) ................................................................ 9, 10

*Byrd v. Civil Serv. Comm'n,*
 459 U.S. 1217 (1983) ........................................................................................ 4

*Churchill Village, L.L.C. v. Gen. Elec.,*
 361 F.3d 566 (9th Cir. 2004)........................................................................ 4, 9

*Class Plaintiffs v. City of Seattle,*
 955 F.2d 1268 (9th Cir. 1992)....................................................................... 4, 6

*Collins v. Cargill Meat Solutions Corp.,*
 274 F.R.D. 294 (E.D.Cal.2011) ......................................................................24

*Curtis–Bauer v. Morgan Stanley & Co.,*
 2008 WL 4667090 (N.D.Cal. Oct.22, 2008)...................................................... 6

*Dennings v. Clearwire Corp.,*
 928 F. Supp. 2d 1270 (W.D. Wash. March 11, 2013) .....................................22

*Dennings v. Clearwire Corp.,*
 2013 WL 3870799 (W.D. Wash. July 13, 2013) .............................................22

*Ellis v. Naval Air Rework Facility,*
 87 F.R.D. 15 (N.D. Cal. 1980 .......................................................................... 6

*Gould v. Alleco, Inc.,*
 883 F.2d 281 (4th Cir. 1989)...........................................................................15

*Hanlon v. Chrysler Corp.*
 150 F.3d 1011 (9th Cir. 1998)..................................................... 5, 6, 12, 17, 18

*Harris v. Vector Marketing Corp.,*
 2012 WL 381202 (N.D. Cal. Feb. 6, 2012).....................................................17

*In re Apple Inc. Sec. Litig.,*
 2011 WL 1877988 (N.D. Cal. May 17, 2011) .................................................10

*In re Bluetooth Headset Prods. Liab. Litig.,*
 654 F.3d 935 (9th Cir. 2011)...........................................................................12

*In re Corrugated Container Antitrust Lit.,*
 659 F.2d 1322 (5th Cir. 1981)..........................................................................12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

iii

*In Re Groupon Marketing And Sales Practices Litigation,*

    No. 3:11-md-02238-DMS-RBB (Dkt. No. 57, p.5) (filed July 6, 2012)
(S.D. Cal.) ........................................................................................................ 21 n. 8

*In re Ins. Brokerage Antitrust Litig.,*

    579 F.3d 241 (3d Cir. 2009).............................................................................25

*In re Omnivision Technologies, Inc.*

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 8

*In re Syncor ERISA Lit.,*

    516 F.3d 1095 (9th Cir. 2008).........................................................................12

*In re TD Ameritrade Account Holder Litig.,*

    2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ........................................ 5, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*

    2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) .................................................14

*In re Warfarin Sodium Antitrust Litig.,*

    212 F.R.D. 231 (D. Del. 2002).........................................................................25

*Lane v. Facebook, Inc.,*

    696 F.3d 811 (9th Cir. 2012)....................................................................17, 23

*Linney v. Cellular Alaska Partnership,*

    1997 WL 450064 (N.D. Cal. Jul. 18 1997)......................................................10

*Malta v. The Fed. Home Loan Mtge. Corp.,*

    Case No. 3:10-cv-01290-BEN-NLS, ECF (Dkt. No. 91)( S.D. Cal.) ..............................23

*Mangone v. First USA Bank,*

    206 F.R.D. 222 (S.D. Ill. 2001)......................................................................... 8

*McClellan v. SFN Group, Inc.,*

    2012 WL 2367905 (N.D. Cal. June 21, 2012) .................................................18

*Molski v. Gleich,*

    318 F.3d 937 (9th Cir. 2003)............................................................................. 5

*Moore v. Verizon Communications Inc.,*

    2013 WL 4610764 (N.D. Cal., August 28, 2013) ................................. 2 n. 2, 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 5, 9, 10

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,*

    688 F.2d 615 (9th Cir.1982).................................................................. 4, 5, 6, 8

*Radosti v. Envision EMI, LLC,*

    717 F.Supp.2d 37 (D.D.C.2010) .....................................................................21

*Rodriguez v. West Puhl'g Corp.,*

    563 F.3d 948 (9th Cir.2009).................................................................5, 10, 23

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL              CASE NO. 4:09-CV-01529 SI
APPROVAL OF THE SETTLEMENT, ETC.

iv

*Shames v. Hertz Co.*,

    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ................................................................ 18

*Stammco, LLC v. United Tel. Co. of Ohio*,

    994 N.E.2d 408 (Ohio 2013) ............................................................................... 7 n.4

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) .................................................................................. 12

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) ................................................................................... 23

*United States v. State of Or.*,

    913 F.2d 576 (9th Cir. 1990) .......................................................................... 11, 15

*Villegas v. J.P. Morgan Chase & Co.*,

    2012 WL 3542187 (N.D. Cal. Aug. 14, 2012 ........................................................ 18

**Statutes Rules & Regulations:**

    Fed. R. Civ. P. 23 (e) .......................................................................................... 4
    Fed.R.Civ.P. 23(e)(5) ........................................................................................ 15

    Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C. 1711 – 1715 .......................... 21
    47 U.S.C. § 222(a) ............................................................................................ 19

    Cal. Pub. Util.Code § 2891(a) ............................................................................. 19

**Miscellaneous:**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed.2002) ...................... 6, 12

Manual For Complex Litigation, Fourth (Fed. Jud. Ctr. 2004) ("MCL 4th") ............................ 4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL            CASE NO. 4:09-CV-01529 SI
APPROVAL OF THE SETTLEMENT, ETC.

v

## INTRODUCTION

By this Motion, Plaintiffs respectfully request that the Court take the final step in the class action settlement approval process by granting final approval to the proposed Settlement reached between the parties in this case.  On January 17, 2013, this Court granted preliminary approval to the Settlement and approved the Notice Plan submitted by the parties (Dkt. No. 159).  AT&T and the Settlement Administrator then provided more than 23 million[1] mailed and e-mailed notices to present and former AT&T landline customers, as well as providing national and regional newspaper publication notice and a settlement website notice supported by Google Adwords. Jennifer Keough Declaration ("Keough Decl.") ¶¶ 10-22; Resha Gadson Declaration (Gadson Decl.) ¶¶ 4-24.   In addition, as previously attested, AT&T provided CAFA notice to the appropriate State and Federal officials across the country.  The deadline for objections and exclusion requests has passed (September 2, 2013).  Only 1,339 exclusion requests have been received, and 25 objections from putative class members, which lack merit for the reasons discussed later in this memorandum.  (Keough Decl. ¶ 26; Jacobs Declaration ¶ 2).

The elements of the Settlement – and their effect on consumers – were described in detail in Plaintiffs' Motion For Preliminary Approval (Dkt. No. 153) and Plaintiffs' Motion for Attorney Fees (Dkt. No. 197) and will only be briefly summarized here.  Those elements present ample basis to approve the Settlement as fair, reasonable and adequate under the governing legal standards.

The Settlement provides Class Members the opportunity to recover 100% of all unauthorized charges for the period January 1, 2005 through January 14, 2013.   There is no cap on the amount any individual Class Member may recover and no cap on the aggregate amount AT&T is obligated to pay to Class Members.  The ability to recover 100% of all unauthorized charges constitutes a remarkable result in any case, and especially in a cramming case, with their special litigation risks.   To Class Counsel's knowledge, with the exception of the *Verizon*

---

[1]     In order to prepare the 23,201,063 class member list, AT&T made an undertaking it had never done before, involving more than 2,500 hours of computer programming time and review of more than a billion monthly billing records.   Gadson Decl. ¶¶ 4-6.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 1 -

settlement recently granted final approval by Judge Armstrong[2], no private class action settlement, nor any state or federal regulatory or law enforcement judgment or consent decree, has heretofore succeeded in obtaining such a result.

In addition, the Settlement provides Class Members with the right to obtain, for free, in an easily understandable format, a billing summary identifying all third-party charges for which they were billed during the class period and the ability to use that billing summary to submit a claim form to recover 100% of the unauthorized third-party charges. The free billing summaries are a significant benefit. Most consumers do not retain their old telephone bills, and many are not aware that their telephone bills may have contained such third-party charges and thus do not understand that they should review their bill to see if they were billed for these charges. But even if class members had their old bills or could otherwise obtain them for free, the billing summaries spare them the time and difficulty of weeding through years of bills, one by one, to ascertain if there were charges. Class Counsel and AT&T created the format for the billing summaries as part of this Settlement so that they could be easily understood and used to submit a claim either online or as part of a paper claim. As a result of this Settlement, AT&T designed, developed and implemented computer programs to search approximately eight years of bills for each Class Member requesting a billing summary and then extracted the names of each third-party provider and aggregator, and the respective monthly and total charges billed by each aggregator/third-party provider. (Gadson Decl. ¶¶ 4-6, 25-27). This billing summary identifies each aggregator and each third-party provider that billed for Third Party Charges during the class period, the amount of each charge and credit and the net total for each provider (without extraneous other information), and was provided to the Class Member in a consumer-friendly and understandable format. All a claimant has to do is place a checkmark the claimant says was unauthorized.

The right to obtain the billing summaries presents an unprecedented and extremely valuable benefit made available to Class Members. To Class Counsel's knowledge, except for the *Verizon* case, no private class action settlement, nor any state or federal regulatory or law enforcement judgment or consent decree, has heretofore succeeded in making this amount of

---

[2]  *Moore v. Verizon Comm. Inc.,* 2013 WL 4610764 (N.D. Cal., August 28, 2013).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 2 -

1  historical information available, in a distilled, easily understandable format, for free.  These two

2  aspects of the monetary portion of the Settlement – the opportunity to recover 100% of all

3  unauthorized charges and the provision of a free billing summary -- provide nearly everything

4  that the Class might have been able to recover had the case been litigated, class issues resolved in

5  favor of a certification, the case won on the merits, and both class certification and the decision

6  on the merits upheld on appeal.  The Settlement provides all of these benefits now, rather than

7  years in the future, and avoids the undisputed risks posed by continued litigation.

8      As discussed in the fee motion (Dkt. No. 197 at 12 fn. 8), the injunctive/remedial relief

9  provisions of the Settlement that were effectuated before AT&T decided to exit the market for

10  third party billing for so-called enhanced services (which billings AT&T has represented have

11  been the source of the vast majority of cramming complaints) had a dramatic effect on cutting

12  back on third-party billings.  Just one aggregator alone reported a drop of $37 million in revenue

13  for just the few months of the first year after the AT&T contracts were revised in accordance with

14  the remedial provisions set forth in Exhibit 12 to the Settlement Agreement.  Then, an even more

15  profound change happened:  AT&T exited the business.  In March of 2012, AT&T announced

16  that it would exit the business of billing for what AT&T claims are the vast bulk of the type of

17  third party charges that have given rise to this litigation, and in fact did so as of September 17,

18  2012.  (Settlement Agreement  V.B.)

19      It can scarcely be doubted that the results achieved in this case compare extraordinarily

20  favorably to any injunctive/remedial relief that the Class Members might have been able to expect

21  to recover had the case been litigated to conclusion.[3]

22      In summary, whether viewed from the perspective of what the Settlement achieves for the

23  Class in comparison to either (i) the additional relief (if any) that might have been available

24  through continued litigation and the risks presented thereby, or (ii) the historical context of fifteen

25  years of regulatory, legislative, judicial and law enforcement efforts to combat cramming, the

26  Settlement is an outstanding accomplishment and is more than fair, reasonable and adequate.

27

28  _____

[3]   In January of 2011, the Court in this case dismissed plaintiffs' claims for injunctive relief because of potential interference with the regulatory jurisdiction of the California Public Utility Commission.    (Dkt. No. 88 at 21:13-27.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 3 -

1   While no Settlement is perfect, and the governing standards for approval do not require perfection

2   (a settlement is, after all, a compromise of disputed claims), the monetary benefits of the

3   Settlement and the injunctive/remedial relief provisions of the Settlement provide a compelling

4   basis for approval of the Settlement as fair, reasonable and adequate.

5   Below, we analyze separately each of the required standards governing approval of class

6   action settlements.

7   **ARGUMENT**

8   Judicial proceedings under Rule 23 have led to a defined three-step procedure for approval

9   of class action settlements: (1) certification of a settlement class and preliminary approval of the

10   proposed settlement after submission to the Court of a motion for preliminary approval;

11   (2) dissemination of notice of the proposed settlement to the class; and (3) a final approval

12   hearing for the Court to consider whether the settlement is fair, reasonable and adequate and in

13   the best interests of the class, and, if so, to grant final approval to the settlement. *See* MANUAL

14   FOR COMPLEX LITIGATION (FOURTH) ("MCL 4th"), §§ 21.63 *et seq*. (2004).

15   In granting preliminary approval of the Settlement and ordering that notice be

16   disseminated to the Class, the Court has taken the first two steps in the process. With this

17   Motion, Plaintiffs respectfully request that the Court take the third and final step in the settlement

18   approval process by granting final approval of the proposed Settlement.

19   **I.**      **The Settlement Merits Final Approval.**

20   The law favors the compromise and settlement of class action suits. *See, e.g., Byrd v.*

21   *Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566,

22   576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

23   *Officers for Justice v. Civil Serv. Comm'n of the City of San Francisco*, 688 F.2d 615, 625 (9th

24   Cir. 1982). Under Rule 23(e) of the Federal Rules of Civil Procedure, "The claims, issues, or

25   defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the

26   court's approval" and such approval may occur "only after a hearing and on finding that the

27   settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed. R. Civ. P.

28   23. The primary concern of Rule 23(e) is "the protection of those class members, including the

1  named plaintiffs, whose rights may not have been given due regard by the negotiating parties."

2  *Officers for Justice*, 688 F.2d at 624.

3       In determining whether a settlement agreement is fair, adequate, and reasonable, a district

4  court may consider some or all of the following factors:

5            the strength of plaintiffs' case; the risk, expense, complexity, and likely
             duration of further litigation; the risk of maintaining class action status
6            throughout the trial; the amount offered in settlement; the extent of
             discovery completed, and the stage of the proceedings; the experience and
7            views of counsel; the presence of a governmental participant; and the
             reaction of the class members to the proposed settlement.
8

9

10  *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  This list is not exhaustive, and different

11  factors may predominate in different factual contexts.  *In re TD Ameritrade Account Holder*

12  *Litig*., No. C 07-2852 SBA, 2011 WL 4079226 at *4.  (N.D. Cal. Sept. 13, 2011).  Under certain

13  circumstances, one factor alone may prove determinative in finding sufficient grounds for court

14  approval.  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D.

15  Cal. 2004) .  In addition to these factors, the Court may also consider the procedure by which the

16  parties arrived at the settlement to determine whether the settlement was likely the result of good

17  faith negotiations at arm's length, or whether it was the product of fraud or collusion. *Id.*

18       "[T]he decision to approve or reject a settlement is committed to the sound discretion of

19  the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and

20  proof."  *Hanlon*, 150 F.3d at 1026.  In exercising this discretion, "[t]his circuit has long deferred

21  to the private consensual decision of the parties."  *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948,

22  963 (9th Cir.2009).  Thus, in evaluating whether the settlement is fair and adequate, the Court's

23  function is not to second-guess the settlement's terms:

24            [T]he court's intrusion upon what is otherwise a private consensual agreement
             negotiated between the parties to a lawsuit must be limited to the extent necessary
25            to reach a reasoned judgment that the agreement is not the product of fraud or
             overreaching by, or collusion between, the negotiating parties, and that the
26            settlement, taken as a whole, is fair, reasonable and adequate to all concerned.
             Therefore, the settlement or fairness hearing is not to be turned into a trial or
27            rehearsal for trial on the merits. Neither the trial court nor this court is to reach
             any ultimate conclusions on the contested issues of fact and law which underlie
28

1

2

the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

3

4   *Officers for Justice*, 688 F.2d at 625; *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of

5   compromise; the question we address is not whether the final product could be prettier, smarter or

6   snazzier, but whether it is fair, adequate and free from collusion.").  This is especially so "in light

7   of the strong judicial policy that favors settlements, particularly where complex class action

8   litigation is concerned." *City of Seattle*, 955 F.2d at 1276; *see also Curtis–Bauer v. Morgan*

9   *Stanley & Co*., No. C 06–3903 TEH, 2008 WL 4667090, at *4 (N.D.Cal. Oct.22, 2008)

10  (Henderson, J.) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring

11  settlement, particularly in class action law suits.").

12      The Settlement here readily satisfies the standard for final approval because:  (A) it is the

13  product of  serious, arms-length negotiations between the parties reached after hard-fought

14  litigation and thorough investigation and discovery, (B) it provides substantial relief to the

15  Settlement Class in light of the significant risks, expenses, complexity and duration of further

16  litigation and appeals and of a maintaining class action status, and it provides that relief now

17  rather than, *if at all*, at some uncertain date in the future, (C) it has received an overwhelmingly

18  positive reaction from the Settlement Class, and (D) it was negotiated by experienced and well

19  informed counsel, under the supervision of two experienced and highly regarded mediators, Judge

20  Eugene Lynch (ret.) and Judge Wayne Brazil (ret).

21      **A.**      **The Settlement is the Product of Arms-Length Negotiation**

22      Where a settlement is the product of arms-length negotiations conducted by capable and

23  experienced counsel, the court begins its analysis with a presumption that the settlement is fair

24  and reasonable.  *See* 4 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.

25  2002); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

26      Here, the parties engaged in over a year of arms-length negotiation before retired Judge

27  Eugene Lynch of this Court and then finished the negotiations before Judge Brazil, also formerly

28  of this Court.  (Dkt. No. 153-5, Jacobs Decl. ¶¶ 4-9 5, Dkt. No. 153-6, Schachman Decl. ¶ 10.)

The mediations included extensive information exchanges, briefing and in-person negotiations, ultimately culminating in the Settlement submitted for final approval by this Motion.

**B.  The Immediate Relief Provided By The Settlement Is Particularly Impressive Given The Significant Class Certification, Liability, and Damages Hurdles Plaintiffs Faced In This Risky, Expensive and Complex Litigation, and Given The Possibility Of Delayed Recovery, Or No Recovery At All.**

To date, numerous putative class action cases have been filed against telephone companies as well as third party providers to address the problem of cramming, but as discussed in Plaintiffs' Preliminary Approval Motion, those cases have met either with dismissals or settlements that provided only a fraction of the benefits provided here.  (See, Dkt. No. 153-5, Jacobs Decl. ¶11[4].)

Throughout the litigation, in its written papers as well as in settlement negotiations, AT&T maintained that Plaintiffs would be unable to (1) secure certification of a litigation class, [5] (2) hold AT&T liable for the unauthorized billing of third-party billers, and (3) succeed on the merits of the case, including Plaintiffs' RICO theory of liability.  *See also* Defendants' Answer to the Complaint, Dkt. No. 195 (asserting <u>44</u> separate affirmative defenses, only one of which need gain traction with a judge or jury to defeat Plaintiffs' claims).  In addition, AT&T maintained that Plaintiffs would be unable to prove damages on a classwide basis because the question of whether individual Class Members authorized particular charges is inherently individual.  Though Plaintiffs dispute AT&T's characterization of their claims, the history of cramming cases to date underlines the challenge of litigating this case to judgment.  Moreover, the inherent uncertainty that comes with all class litigation poses additional risks.  If Plaintiffs failed to obtain certification of a contested litigation class, the case would effectively be over and class members left with nothing.  And, even if Plaintiffs were successful in a motion for class certification absent the

---

[4]  Notably, between the time of the Jacobs Declaration referred to above and the present, the *one* cramming  case that had not yet been finally denied class certification referred to in the declaration now <u>has</u> been authoritatively rejected for class certification.   On July 16, 2013, on its second time to consider the case, the Ohio Supreme Court definitively ruled that a class could not be certified in that case.  S*ammco, LLC v. United Tel. Co. of Ohio,* 994 N.E.2d 408, 411 (Ohio 2013).

[5] The Court certified, for settlement purposes only, a Settlement Class in the Preliminary Approval Order.  (Dkt. No. 159, ¶¶ 4-7.)  However, if the Court fails to grant final approval of the Settlement Agreement, the certification of the class will automatically become void.   (*Id.* ¶ 9.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 7 -

Settlement, Defendants could move for decertification of the class before or during trial and could also challenge a contested class certification decision on appeal.  Fed. R. Civ. P.23(c)(1)(C).

In addition, it is certain that in the absence of the settlement, the expense, duration and complexity of the protracted litigation that would result would be substantial, as significant hurdles remain, including, among other things, anticipated summary judgment motions, contested class certification, *Daubert* motions, and appeals.  Yet, the added cost and burden of litigation would not necessarily produce better results for the Class.  Thus, not only does this Settlement achieve substantial benefits for Class Members akin to the benefits available at law following a judgment, but it does so at significantly reduced expense and delay to the Class. In short, the Settlement provides certain recovery now rather than uncertain, and potentially *no* recovery, later.

The Settlement ensures that Class Members may claim and be refunded the <u>full</u> amount (100%) of all unauthorized charges, with no individual limits and no aggregate limits on the amounts paid, a result heretofore unseen in cramming litigation other than the companion *Verizon* case, and rarely seen in any litigation.  *Mangone v. First USA Bank*, 206 F.R.D. 222, 228 (S.D. Ill. 2001) ("This is an unusual and very desirable feature of this Settlement because settlements, by their nature, typically do not yield 100% recovery for plaintiffs."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (a settlement amounting to "only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *OmniVision,* 559 F. Supp. 2d at 1042 (finding a certain recovery of 6% of the potential recovery after accounting for attorneys' fees and costs to be reasonable and favor approval of the settlement). The Settlement also requires AT&T to provide free billing summaries to requesting class members for the full 8-year period covered by the Settlement, it  requires AT&T to separately pay various (and substantial) costs, such as costs of notice and settlement administration, class representative incentive awards and Plaintiff's counsel's attorneys' fees and expenses, so that Class Members do not have to pay them out of their own recovery as is typically the case in class action settlements (or in a litigated recovery).

When weighed against the considerable risks and expense, duration and complexity of continued litigation, the reasonableness of these immediate settlement benefits is readily apparent, and strongly favors final approval of the Settlement.

**C.    The Overwhelmingly Positive Reaction Of The Class Members Supports Approval.**

The reaction of the Settlement Class Members to the proposed Settlement has been overwhelmingly positive and strongly supports final approval.  Courts have repeatedly recognized "that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. Here, 25 persons filed what out of an abundance of caution might be described as objections to the Settlement.[6]  Leaving aside the fact that some of these persons purporting to file objections were not class members and are thus without standing and most purported objections are procedurally deficient, that is an infinitesimal percentage of the class, something on the order of 1/10,000ths of 1%.  (Jacobs Decl. ¶ 2; Gadson Decl. ¶8).  We discuss separately in Section II below the substance of objections, but the fact is, virtually no one had any objection.  Similarly, only 1,339 people opted out of the settlement, a mere 5/1000ths of 1% of the Class.  Courts have routinely approved class action settlements where the percentage of objectors or opt outs have been substantially higher than this amount. *See e.g., Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 622 (N.D.Cal.1979) (approving settlement over objections from 16% of the class); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir.2004) (approving settlement where 545 people out of an initial notice pool of 90,000 objected to the settlement or excluded themselves).

---

[6]    The parties and the Settlement Administrator have reviewed documents submitted to the Clerk to identify objections, and are agreed that the documents attached hereto at Group Exhibit 1 are the communications that might be considered to express objections (without regard to whether they comply with the Court's order for substance and procedure for filing objections).   These documents were received by the Clerk of the Court, the Settlement Administrator, and/or by Class Counsel (see Jacobs Decl., attached hereto, ¶ 2).   In addition, there are letters regarding the filing of claims or obtaining billing summaries that the parties agreed do not appear to be objections. The parties will be prepared to respond at the final approval hearing to any questions the Court may have concerning such materials.

This handful of opt outs and objections is far overshadowed by the overwhelming participation of the Class in the settlement process.  To date, more than half a million requests for billing summaries have been submitted and more than $16,000,000 in claims had been filed as of mid-October, with  substantial time to go in the claims filing period.   Indeed, in this case, the Court has received the unusual letter from a lawyer on behalf of two companies, noting that while he has filed "many objections over the last five years," he notes that "It was heartening to see that the parties had reached such a fair proposal," and stating, "My clients ask the court to approve the proposed settlement."  (Letter of Gary W. Sibley, attached as Exhibit 2 hereto.)   The response of the Class to the Settlement confirms the Court's initial finding of fairness, reasonableness, and adequacy in its Preliminary Approval Order, and supports the grant of final approval.   *In re Apple Inc. Sec. Litig*., No. 5:06-CV-05208-JF HRL, 2011 WL 1877988 (N.D. Cal. May 17, 2011) (Fogel, J.) ("The small number of objections raises a strong presumption that the settlement is favorable to the class.  *See, In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D.Cal.2008). The Court concludes that none of the objections rebuts this presumption.")

**D.      The Recommendations Of Experienced, Well-Informed Counsel Favor Approval.**

The recommendation of experienced counsel regarding the Settlement should be given significant weight.  *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ,1997 WL 450064, at 5 (N.D. Cal. Jul. 18 1997); *Boyd v. Bechtel Corp*., 485 F.Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528-29 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").  Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez, 563 F.3d at 967 (quoting In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995)).*

1   As the Court is aware from its experience during the pendency of this Action, Class

2   Counsel are experienced class action firms that have substantial experience securing the rights of

3   consumers nationwide.   Through their investigation, research, review of discovery materials,

4   consultation with experts, litigation, mediation sessions, and the settlement process, Class

5   Counsel had an intimate understanding of the law and facts at issue, had a clear view of the

6   strengths and weaknesses of their case and were in possession of sufficient information to make

7   an informed decision about settlement and to intelligently negotiate its terms for the ultimate

8   benefit of the Class.   Counsel have unreservedly recommended the Settlement to the Court as

9   being in the best interests of the class.  (Dkt. No. 153-5, Jacobs Decl. ¶¶ 12, 15; Dkt. No. 153-6,

10  Schachman  Decl. ¶ 15.)

11   For its part, AT&T is also represented by experienced, sophisticated counsel in the class

12  action field, and they too recommend the Settlement.

13  **II.      The Objections Should Be Overruled.**

14   Of the 23,000,000 notices sent to current and former AT&T landline account customers

15  (current customers were mailed two such notices), the more than 5,190,000 present and former

16  customers who were sent emailed notice, the others who read the nationally and regionally

17  published notices, and the more than 864,000 individuals who have as of mid-October viewed the

18  settlement website, only 25 persons have submitted objections, a miniscule fraction -- less than

19  1/10,000 of one per cent of class.  Gadson Decl. ¶ 8; Jacobs Decl. ¶ 2).    In addition, the U.S.

20  Department of Justice ("DOJ") filed a Statement of Interest criticizing the Settlement, Dkt. No.

21  211, and the Federal Trade Commission ("FTC") filed a proposed *amicus* brief (and motion for

22  leave to file it) opposing the Settlement.  (Dkt. No. 210.)   By a separate filing, we respond to the

23  FTC and DOJ filings, and do not address their arguments here.   Below, we address the few

24  objections made by putative class members.

25   Before doing so, though, it seems appropriate to note the heavy burden an objector bears

26  to try to block approval of a settlement at this stage.   Where a court has granted preliminary

27  approval, has found that the settlement is the product of arms' length negotiation, where

28  experienced, sophisticated counsel recommend the settlement to the court, and where the reaction

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 11 -

1   of the class is overwhelmingly positive, courts impose a heavy burden on an objector to block

2   final approval of the settlement. *United States v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990)

3   ("In this circuit, we have usually imposed the burden on the party objecting to a class action

4   settlement" and recognizing that where a court is satisfied that the decree was the product of good

5   faith, arms-length negotiations, a negotiated decree is presumptively valid and the objecting party

6   "has a heavy burden of demonstrating that the decree is unreasonable.").

7       Regardless of burden, the objections lack merit. The thrust of some of the objections that

8   have been filed is that the Settlement is less than perfect in various ways. But the Court's task is

9   not to imagine the perfect settlement or the ideal outcome for one party or another. Settlements

10  are, by definition, compromises. *In re Corrugated Container Antitrust Lit.*, 659 F.2d 1322, 1325

11  (5th Cir. 1981). The Court's task is to determine whether the settlement, as a whole, is fair,

12  adequate, and reasonable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

13  Instead of splicing settlements and evaluating their terms in a vacuum, the Ninth Circuit

14  recognizes that "[i]t is the settlement taken as a whole, rather than the individual component parts,

15  that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

16  2003). The Court performs this review in light of the Ninth Circuit's strong judicial policy

17  favoring voluntary resolution of complex litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095,

18  1101 (9th Cir. 2008) (citing *Officers for Justice*, 688 F.2d 615.

19      Here, many of the Objectors focus on theoretical ideal settlements, devoid of compromise

20  or the reality of risk and complexity in class action litigation, by addressing specific components

21  that they believe could be better for the Class Members. But ideal relief is not a settlement – it is

22  a 100% trial victory reached immediately. No settlement achieves perfect relief.

23      Where, as here, the settlement was negotiated at arms-length by capable and experienced

24  counsel, courts *begin* their analysis with a presumption that the settlement is fair and reasonable.

25  *See* 4 H. Newberg & A. Conte, Newberg on Class Actions § 11.41 (4th Ed. 2002); *Ellis v.

26  Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). Objectors do not raise any

27  arguments to rebut that presumption; they fail to point to fraud or duress (or anything approaching

28

it) that could cast doubt on the Settlement.  *See Bluetooth*, 654 F.3d at 947.  Therefore, the Objections should be overruled, and the Court should approve the Settlement.

Before we address the merits of the objections, we wish to be clear that there are virtually no objections that are appropriately before the Court.  We discuss this immediately below in Subsections A (objections that failed to comply with the Court's Preliminary Approval Order and the Notice) and B (objections filed by persons who appear to lack standing), but while they should be rejected on those bases, we want there to be no question but that the objections also fail *on the merits,* and thus we address them in Subsection C below.   For the Court's convenience, copies of all purported objections are attached hereto as part of Group Exhibit 1, in alphabetical order.

**A.**      **Most Of The 25 Purported Objections Were Not Filed And/Or Served In Compliance With The Court's Preliminary Approval Order And The Notice**

The Court's Preliminary Approval Order states, in relevant part, as follows:

> 15.      Any Settlement Class Member who wishes to object to the proposed Settlement, the applications for attorneys' fees, costs and expenses or the request for the payment of incentive awards must file with the Court, and serve upon Class Counsel and Defendants' Counsel, a written objection no later than September 2, 2013.
>
> (a)      Any Settlement Class Member who intends to object to this Agreement must include with the objection his/her name and address and telephone number and all arguments, citations, and evidence supporting the objection.  An objecting Settlement Class Member must state, in writing, all objections and the basis for any such objection(s), and provide a statement as to whether the Objector intends to appear at the Final Approval Hearing, either with or without counsel.  Objections not filed and served in accordance with this Order shall not be received or considered by the Court.  Any Settlement Class Member who fails to timely file and serve a written objection in accordance with this Order shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Proposed Settlement, to the fairness, reasonableness, or adequacy of the Proposed Settlement, to the payment of attorneys' fees, costs, and expenses, the payment of incentive awards, or to the Final Approval Order or the right to appeal same.

The Class Notice further instructs class members that any objection to the Settlement must be timely mailed to Class Counsel and defense counsel and timely filed with the Court.  The notice instructs class members that objections must include the objector's name, address, phone number, a detailed statement of the objection, all factual and legal support for the objection,

1   evidence supporting the objection, including evidence of the objector's membership in the

2   Settlement Class, and the caption and case number appearing on the Settlement Class Notice.

3       The objections submitted by the following persons failed to comply with one or more of

4   the procedural requirements for objecting to the Settlement set out above and should be

5   overruled: Patricia Bradshaw, Steve Barclay, Elizabeth Jordan, Blanca Cordero, Elinor Donovan,

6   Alexander Drummond, Patricia Penney, Milagros Herrera, Richard Fox, Diana Marmorstein,  B

7   D Sod/Bill Faiella, Cathy Lochridge, Angela Price, Michale Stanberry, Millie Stanberry,  Charles

8   Thompson, Phillip James, Pearlie Mendosa, Janet Taylor, Shirley Thomas, Lula Wardlaw, and

9   Aki  Heihai/Biao Xu.

10      The purported objections of Patricia Bradshaw, Steve Barclay and Elizabeth Jordan,

11  postmarked on September 6, 2013, September 5, 2013 and September 7, 2013 respectively, were

12  filed after the objection deadline and are untimely.  *In re TFT-LCD (Flat Panel) Antitrust Litig.,*

13  MDL 3:07-MD-1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ("His objection herein is

14  untimely, having been mailed on November 28, 2011, rather than filed with the Court on that

15  date. On that basis alone, the Court refuses to consider the objection.").

16      Purported objectors Patricia Bradshaw, Blanca Cordero, Elinor Donovan, Alexander

17  Drummond, Patricia Penney, Angela Price, and Steve Barclay failed to file a written objection

18  with the Court, while Milagros Herrera failed to serve a written objection on counsel. (Jacobs

19  Decl. ¶ 4.)  *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226

20  at *14 (N.D. Cal. Sept. 13, 2011) ("There were seven additional objections that were submitted to

21  the Court, but that were *not* served on counsel. Since these objections were not submitted in

22  compliance with the Notice, they are not properly before the Court.") (emphasis in original).

23      The purported objections of Blanca Cordero, Alexander Drummond, Richard Fox,

24  Milagros Herrera, Diana Marmorstein, Pearlie Mendosa, Patricia Penney, Angela Price, Janet Lou

25  Taylor, Shirley Thomas, Lula Wardlaw, and Steve Barclay also failed to provide a telephone

26  number.

27      The following purported objections failed to state what their objection is and/or the basis

28  for their objection:   Lula Wardlaw, Pearlie Mendosa, Alexander Drummond, Blanca Cordero,

Patricia Penney, Aki  Heihai / Biao Xu, Steve Barclay and Angela Price.  (These are dealt with in C.1 below.)

The following purported objectors failed to include a statement as to whether they intend to appear at the Final Approval Hearing, as required by the Court's Preliminary Approval Order: Patricia Bradshaw, Steve Barclay, Elizabeth Jordan, Blanca Cordero, Elinor Donovan, Alexander Drummond, Patricia Penney, Milagros Herrera, Richard Fox, Diana Marmorstein,  B D Sod/Bill Faiella, Cathy Lochridge, Angela Price, Michale Stanberry, Millie Stanberry,  Charles Thompson, Phillip James, Pearlie Mendosa, Janet Taylor, Shirley Thomas, Lula Wardlaw, and Aki Heihai/Biao Xu.  Gordon Morgan affirmatively stated that he will not attend.

**B.**     **Some Purported Objectors Lack Standing**

 Three of the purported objectors -- Diana Marmorstein, Ph.D., Charles M. Thompson, and Cathy Lochridge -- do not appear to be members of the Settlement Class, and thus lack standing to object to the settlement. *Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir. 1989); see Fed.R.Civ.P. 23(e)(5).  As detailed in the Declaration of Resha Gadson, ¶28, each of these persons provided identifying information which AT&T used to search its Settlement Class List to identify any associated AT&T accounts.  As a result of this search, AT&T determined that Charles M. Thompson and Diana Marmorstein are not members of the Settlement Class because AT&T could not find any account with third party charges and Cathy Lochridge is not a member of the Settlement Class because the only account identified with her is a wireless telephone account.  These objections are not properly before the Court and should be overruled.

**C.**     **Separate And Apart From Their Failure To Comply With The Court's Order or Lack of Standing, None Of The Purported Objections Has Merit**

Among the small number of objections filed, only a few appear to be objections to any specific element of the Settlement, as many merely state "I object" or something of that nature, or object to the class action settlement process in general.  Of the specific objections, the largest category of objections came from people who desire more from the settlement than 100% reimbursement, although it is unclear why or what would satisfy them.  In short, as discussed

below, none of the objections satisfies the objector's burden to demonstrate that the settlement is unreasonable.  *See, e.g., United States v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990).

### 1.  Objections that Fail to State any Basis (8)

As noted above, Lula Wardlaw, Pearlie Mendosa, Alexander Drummond, Blanca Cordero, Patricia Penney, Aki  Heihai / Biao Xu, Steve Barclay and Angela Price failed to state what their objection is and/or the basis for their objection.  For example, objector Lula Wardlaw submits the statement "Objection A.T.T. Class Act Settlement" without further explanation.  Objector Pearlie Mendosa states, "I do hereby make my objection known and give my attorney the right to comment on the settlement."   Alexander Drummond and Angela Price merely wrote, "I choose to object" and "I, Angela Price, 'object,'" respectively.  Steve Barclary merely writes "Notice to Reserve My Objection."  Patricia Penney states without explanation "I do object to attorneys' fees and expenses."  Blanca Cordero states "I decided to object" without any explanation of what her objection is.  Because these objectors failed to identify any specific grounds for their objections and therefore do not raise any objections to the fairness, adequacy or reasonableness of the settlement, the Court, even though it need not consider them, nonetheless should summarily dismiss them on the merits.  *Moore v. Verizon Comm. Inc.,* 2013 WL 4610764, *9, n. 17 (N.D. Cal., August 28, 2013) (overruling objection on the merits when objector "failed to articulate any basis for his objection to the Settlement").

### 2.  Objectors That Do Not Appear to Be Objecting to the Settlement

Several objectors, while they use the word "objection" in their correspondence, do not appear to be objecting to any of the terms of the settlement.  Biao Xu on behalf of Aki  Heihai/ Hehai Machinery, writes "Following is our objection and comments on the last monthly statement issued by AT&T" and appears to be complaining about "AT&T customer service" relating to the "disconnection of his service, including DSL."  Letter of Biao Xu, Hehai Machinery, LLC, Elinor Donovan says she does not "want to sue AT&T" and "This is my objection" but that is not an objection to the settlement; it is at most a request to be excluded.   Elizabeth Jordan doesn't use the word "objection," but says she believes that "AT&T should be charged with strong

penalties to pay customer Elizabeth Jordan" and earlier says "I am applying for payment of 100% of all unauthorized Third Party Charges…"

### 3.   Objectors Raising Individual Issues Not Affecting The Class and Settlement as A Whole And Who Seek Unique Remedies (10)

Ten of the objectors—Lou Janet Taylor, Richard Fox, Phillip James, Bill Faiella / B&D Sod, Michele and Millie Stanberry, Alma Rose Snyder, Bio Xu / Hehai Machinery, LLC (Aki Heihai), Patricia Bradhaw and Elizabeth Jordan—raise objections that their individual issues are not appropriately addressed by the proposed settlement.[7]  Many of these objections complain about injuries that are unrelated to the allegations in the action, such as identity theft, copyright infringement, customer service, invasion of privacy and personal injury.  *See* Dkt. Nos.  202, 203, 215, 196, 219.  For those objectors who experienced unique and individualized injuries, such injuries would not be addressed by this lawsuit even if it were to proceed.

In addition, all of these objectors simply seek a better result for themselves which, without more, is insufficient to overturn a settlement agreement.  *See Hanlon*, 150 F.3d at 1027 ("Of course it is possible, as many of the objectors' affidavits imply that the settlement could have been better.  But this possibility does not mean the settlement presented was not fair, reasonable or adequate."); *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (settlement agreements "will necessarily reflect the interests of both parties to the settlement, including those of the defendant.").  Thus, for example, one court in the Northern District of California held that a class member's objection "on the basis that she is deserving of more money, at least $7,000, given her particular circumstances," was "not realistic" and did not establish that the settlement was unfair. *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *3 (N.D. Cal. Feb.

---

[7] *See* Letters of Lou Janet Taylor and Bob Taylor, and of Richard Fox (no compensation for recovery for the time spent contacting AT&T regarding disputed third-party charges); Letter of Phillip James (no compensation for collections charges or "damages resulting from stress of having to expend time and energy" to address charges); Letter of Bill Faiella, B&D Sod (loss of business revenue due to retaliation against business for failure to pay third-party charges); Letters of Michale and Millie Stanberry(failure to reimburse "for advertising costs I cannot advertise my business," for "pain and suffering," "copyright infringement" and "lec-codes tampering"); Letter of Alma Rose Snyder (failure to remedy "issues of invasive use of another's information by a third party," invasion of privacy, or "financial losses due to abusive and invasive business communications practices from the perpetrators of the third-party billing scheme"); Letter of Elizabeth Jordan (failure to "pay strong penalties to Elizabeth Jordan" and the remedy the unfair treatment of customers, and their "pain and suffering [and] panic…."); Letter of Patricia Bradhaw ("I would like the incentive award. I think AT&T should admit to their wrongdoing").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, ETC.

- 17 -

CASE NO. 4:09-CV-01529 SI

6, 2012).  The same is true here.  Class Counsel has obtained full reimbursement for Class

Members of any unauthorized charges during the class period, and also obtained injunctive relief

governing third-party billing practices.  These are substantive benefits that correlate closely with

the injuries alleged in the action.  To the extent that a few Class Members believe they are entitled

to greater remedies than the Settlement provides, they were free to opt out and seek them.  *See,

e.g., Hanlon*, 150 F.3d at 1027; *Lane*, 696 F.3d at 824.

### 4.  Objections To the Claims Process

Some objectors complain about the claims process -- Cathy Lochridge states that she

doesn't "understand why AT&T can't figure out these fees for us" (Dkt. No. 213) and Milagros

Herrera asserts that AT&T should know if it "owes its clients monies" and that "AT&T should

refund all of its clients whatever is owed to them."  (Dkt. No. 190)  This Settlement, including the

claims-made process, is the product of compromise following extensive arms-length negotiations,

and serves a legitimate purpose.  Here, it is undisputed that not all Third-Party Charges were

unauthorized, and the parties take sharply contrasting views on the percentage of unauthorized

charges.  AT&T claims that the charges at issue are imposed by third parties and that it doesn't

know whether or not a particular customer authorized the Third-Party Charges.

The Settlement calls for AT&T to provide a free billing summary of all such charges, and

merely calls for class members to state something well within their knowledge:  whether to the

best of their knowledge and belief they authorized the charges for which they are making a claim.

That is not unreasonable.  2 McLaughlin on Class Actions § 6:23 (9th ed.) ("Permitting recovery

without submission of a claim form satisfactorily establishing membership in the class and

entitlement to recovery is rarely, if ever, appropriate where it is difficult to determine class

membership, fact of damage or actual damage amounts or other similar prerequisites to

recovery.").  Indeed, courts in this Circuit and nationwide regularly approve claims-made

settlements.  *Shames v. Hertz Co*., 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) ("[T]here is

nothing inherently objectionable with a claims-submission process, as class action settlements

often include this process, and courts routinely approve claims made settlements." (collecting

cases)).  *See, e.g., Hanlon v. Chrysler Corp.¸* 150 F.3d 1011, 1027 (9th Cir. 1998); *Villegas v. J.P.*

1   *Morgan Chase & Co.*, 2012 WL 3542187 (N.D. Cal. Aug. 14, 2012); *McClellan v. SFN Group,*

2   *Inc.*, 2012 WL 2367905 (N.D. Cal. June 21, 2012) (same).

3       Moreover, as Ms. Lochridge further notes, she is "glad that someone decided to sue" so

4   that she became aware of the issue, as she finds her billing statements "very hard to make sense of

5   in the first place," and she has requested a billing summary.  *Id.*  Thus, in Ms. Lochridge's case,

6   her objection itself illustrates one of the benefits provided by the Settlement, the provision of a

7   streamlined way to review all third party charges and submit a claim.

8        Objector Charles M. Thompson objects to "the complex procedure requiring class

9   members to be compensated" without any explanation as to what he finds so "complex" about the

10  claims process.  The proposed Claim Form (which may be submitted by mail or online) is short

11  and simple, requiring some basic contact and account information from the claimant and

12  requiring that the claimant identify the Third Party Charges that he, she or it claims were not

13  authorized. Claimants do not have to review eight years' worth of bills to submit a claim. To help

14  Class Members identify unauthorized Third-Party Charges, they are provided, upon request and

15  without charge, a Billing Summary report that provides, in an easily understandable format a

16  month by month listing of each Third-Party Charge placed on their AT&T landline telephone bill

17  during the class period, the name of the entity that placed the charges, credits, if any, and the net

18  total amount by billing entity.  A claimant must simply place a check mark next to any charge that

19  the claimant believes was unauthorized.  The Billing Summary (as well as the Notice) explains

20  what the summary is, how to use it to file a claim, and provides class members a link to a website

21  with detailed instructions on how to submit a claim.

22      Claimants can request Billing Summaries online, via email, or by postal mail using a

23  simple request form, or by calling a toll free number and speaking to a live operator, and have the

24  option of receiving the summaries by postal mail or email.  In addition, the Settlement

25  Administrator and Class Counsel have been available to provide, and have in fact provided, free

26  assistance to Settlement Class Members in obtaining and submitting Billing Summaries and

27  Claim Forms.

28

Milagros Herrera objects to having to provide the last four digits of her social security number to request a billing summary, and asserts that "AT&T should know if it owes its clients monies." This is not an objection to the fairness, reasonableness or adequacy of the Settlement, but, rather, reflective of a heightened concern about identity security. But that is the very reason AT&T requires this confirmation information: AT&T has represented that it is prohibited by law (47 U.S.C. § 222(a); Cal. Pub. Util.Code § 2891(a)) from releasing its customers' billing records to anyone other than the customer without the customer's written consent. Thus, the billing summary must be validated to ensure that the actual account holder is the one seeking and receiving the information, and the requirement of providing the last four digits of the Social Security Number is surely a sensible and reasonable requirement. It certainly does not turn this 100-cents-on-the-dollar Settlement into one that is unfair, unreasonable or inadequate.

### 5. **Miscellaneous Objections**

#### a. **Objection of Rose Amelia Zurek (Mancilla)**

Objector Rose Amelia Zurek (actually, it appears, her husband Michael is the real objector but uses her as the nominal objector) raises several objections, all of which lack merit and should be overruled. Before we address the merits, we wish to apprise the Court of what appears to be Zurek's true intentions. It turns out that Mr. Zurek is using this objection as a "greenmail" tool. Mr. Zurek attached to the copy of the objection he sent to counsel – but understandably *not* on the copy he filed with the Court – a letter offering to go away if counsel would pay him $30,000. (Jacobs Decl. ¶ 3). His letter is included in Group Exhibit 1 along with the purported objection. It states in relevant part, "If you settle this matter, my wife will withdraw her objection. I will extend to you an offer to settle this matter with my wife for $30,000 if the settlement terms are reached by 5:00 p.m. PST on Friday, June 28, 2013." He further threatened that, "We are prepared to fully participate in the judicial process to insure that this settlement does not survive review. This includes an appeal in the unlikely event her objection will be dismissed."

This "stick up artist" type of objection provides no benefit to anyone other than the objector. *Barnes v. FleetBoston Fin. Corp,* No. CA 01-10395-NG, 2006 WL 6916834 at *1 (D. Mass. Aug. 22, 2006). ("[O]bjectors to class action settlements can make a living simply by filing

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, ETC.

- 20 -

CASE NO. 4:09-CV-01529 SI

1    frivolous appeals and thereby slowing down the execution of settlements.  The larger the

2    settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting

3    for an appeal to be resolved (even an expedited appeal).  Because of these economic realities,

4    professional objectors can levy what is effectively a tax on class action settlements, a tax that has

5    no benefit to anyone other than the objectors.   Literally nothing is gained from the cost.

6    Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised,

7    gains nothing.").

8        The question seems not to be whether to credit Zurek's "objection," but, rather, what

9    sanction should be imposed for this conduct.

10       Apart from his criminous motives, on substance, the objection appears to be a hodgepodge

11   of arguments literally "copied and pasted" from a different brief in an entirely different

12   settlement.[8]  Thus, the objection leads with the argument that the proposed settlement is a

13   "coupon" settlement and as such violates the Class Action Fairness Act ("CAFA") of 2005, 28

14   U.S.C. §§ 1711 - 1715.  But this fails to distinguish between a coupon settlement and a settlement

15   for monetary relief.  A "coupon settlement" is defined as one "that provides benefits to class

16   members in the form of a discount towards the future purchase of a product or service offered by

17   the defendant."  *Radosti v. Envision EMI, LLC*, 717 F.Supp.2d 37, 54 n.16 (D.D.C.2010).  Here,

18   class members are being reimbursed without any obligation to purchase further products or

19   services from AT&T.  This is not a coupon settlement.

20       Zurek also objects that "The original complaints, preconsolidation, sounded claims in state

21   consumer protection laws including fraud, misrepresentation and false advertising" and that due

22   to differences in state law, the class should be decertified because individual issues predominate

23

---

24   [8]  See, Objection Of Padraigin Browne To Proposed Settlement And Proposed Attorneys' Fee
     Award, *In Re Groupon Marketing And Sales Practices Litigation*, No. 3:11-md-02238-DMS-
25   RBB (Dkt. No. 57, p.5) (filed July 6, 2012) (S.D. Cal.) ("Although Class Counsel has been
     careful to never use the word "coupon" in describing the proposed settlement, instead favoring
26   the term "Settlement Voucher" (see generally Stipulation of Settlement), mere semantics are not
     sufficient to escape one's obligations under Federal law") and compare with Zurek's brief at 5
27   ("Although Class Counsel has been careful to never use the word "coupon" in describing the
     proposed settlement, instead favoring the term "Claim Form" (see generally Stipulation of
28   Settlement), mere semantics are not sufficient to escape one's obligations under Federal law.")

over common issues.  Those arguments might have applied to the case from which he borrowed them, but they do not apply to this case.  This case, which was brought pursuant to the federal RICO statute, was never "consolidated," and never asserted any other States' consumer protection law other than California (and only then for a putative California-only SubClass). This Court previously found that all of the requirements of Rule 23 have been satisfied, including that questions of law and fact common to settlement class predominated over any questions affecting only individual class members, and Ms. Zurek's objection provides absolutely no basis in fact or law for decertifying the class.  The question seems not to be whether to credit Zurek's "objection," but, rather, what sanction should be imposed for this conduct.

**b.    Objection of Gordon Morgan PC**

Gordon Morgan is a professional objector, who has in the past been required to post a bond (which he failed to do) for his appeal of a class action settlement approval.

> Plaintiffs [had] demonstrated legitimate concerns regarding whether the objections made by Mr. Morgan and Mr. De La Garza are serious and whether their attorney is a so-called 'professional objector.' " (12/11/12 Order (Dkt. # 84).) Plaintiffs eventually deposed Mr. Morgan and Mr. De La Garza and learned that Mr. Morgan had no personal objection to the settlement, neither of them had read the settlement agreement or their own objections to it, and both have worked with the same attorney on other class action cases. (*See* Memorandum (Dkt. # 97).

*Dennings v. Clearwire Corp.,* 928 F. Supp. 2d 1270, 1271 (W.D. Wash. March 11, 2013) (Morgan's objections to the settlement were "without merit" and requiring him to post an appeal bond of $41,150 based on "vexatious intent in filing their notice of appeal"). *See, also, Dennings v. Clearwire Corp.,* Case No. C10-1859 JLR, 2013 WL 3870799 at *2-3 (W.D. Wash. July 13, 2013) ("Objectors directly disobeyed a court order. They were ordered to either post a bond within five days or else withdraw their appeal. They did neither....Objectors' decision to ignore the court's appeal bond order is only the most recent episode in Objectors' ongoing procedural machinations before this court and the Ninth Circuit. Objectors' strategy this time around is consistent with their behavior in these proceedings: they appear to believe that they do not need to follow court orders until they are threatened with sanctions for failing to do so.... This is not acceptable conduct for attorneys appearing before this court.") *See, also, Malta v. The Fed. Home*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

- 22 -

CASE NO. 4:09-CV-01529 SI

*Loan Mtge. Corp.,* S.D. Cal., Case No. 3:10-cv-01290-BEN-NLS, ECF Dkt. No. 91 (June 21, 2013 Order overruling objection by Gordon Morgan).

Mr. Gordon has filed a kitchen-sink objection, raising numerous boilerplate objections, but for each one he either provides insufficient detail to apply the objection to the facts of the present settlement, or states a specific objection that is inaccurate or unsupported by the facts. In addition, the entirety of Mr. Morgan's objections are devoid of any legal support or evidence. For example, Mr. Morgan objects that "Parties have not met their burden to show that the settlement is fair, reasonable and adequate," but provides no explanation as to why the Parties haven't done so.

Mr. Morgan objects that the Notice does not give enough information about the "amount the class will receive" to assess the settlement's fairness. *Id.* There is no legal requirement that a settlement notice set forth the amount that each class member will be entitled to receive or the aggregate value to the class of the settlement. *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir. 1993) (rejecting objectors' arguments that the notice must specify potential recovery); *Rodriguez v. W.Publ'g Corp.*, 563 F.3d 948, 962 (9th Circ. 2009) (while the notice does not "analyze the expected value, we do not see why it should."). In this case, the Notice explained that class members "may apply for payment of 100% of all unauthorized Third-Party Charges...that have not already been reimbursed" and further clarifies that "[p]ayment amounts may vary considerably among class members" and that "Class Counsel contend that some class members may have claims of hundreds of dollars or more." Thus, the "value" of the settlement to each class member is 100% recovery. Talking about aggregate potential damages of the class was meaningless; what mattered was what was available to the individual class member. Compare *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (Rule 23 notice "does not require an estimate of the potential value of those claims.").

Mr. Morgan also objects that the Notice does not explicitly define who is a class member. (Dkt. No. 214)  With respect to the class definition, every form of Notice sets forth the language of the actual class definition as included in the Settlement Agreement itself, and approved by the Court, which is the most accurate definition possible. Dkt. No. 161, Exhs. 2-5. In addition, the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 23 -

Notices explain that "AT&T ILEC means an AT&T-affiliated incumbent local exchange carrier, such as Pacific Bell Telephone Company, d/b/a AT&T California, etc." *See id.* Furthermore, additional background information has been provided to the class members to assist them in understanding the class definition: *See id.,* Exs. 2, 3, 5 (providing information on "What are 'Third-Party Charges'?" and "What are 'Unauthorized Third-Party Charges'?"). In addition, if class members had questions about the settlement class definition, they easily could have obtained additional information about the settlement from the Court's public docket, the settlement website (which has copies of the Settlement Agreement and the Preliminary Approval Order on it) or from the Settlement Administrator and/or Class Counsel, whose names, telephone numbers, postal addresses and email addresses were provided to class members in the Notices.

Mr. Morgan also objects that the release is overly broad, but does not cite any particular language of the release that he objects to, or any case law to support his position. Here, the release is appropriately limited to claims "arising out of or relating to any allegations or on any basis that a Third-Party Charge was unauthorized or that the authorization was obtained by deceptive or misleading practices," which closely tracks the substance of the underlying complaint. Stipulation and Settlement Agreement, Dkt. No. 156-1, at 29, Section XI.A. Such a release is proper. *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D.Cal.2011) (holding that release of claims was not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

Mr. Morgan also asserts that Class Counsel has not met its burden to establish the class action requirements under Rule 23, but again fails to identify any particular deficiency or cite any supporting authority. Finally, Mr. Morgan objects that the procedures for objecting to the settlement are "burdensome." This objection is meritless on its face, as the objection process in this settlement is straightforward and requires only that class members wishing to object: (1) identify themselves; (2) provide a statement of all objections and their basis (with any arguments, citations and evidence in support); (3) provide notice of intent to appear if they wish to do so; and (4) that they serve the objection on Parties and the Court and post-marked prior to the Noticed

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

- 24 -

CASE NO. 4:09-CV-01529 SI

deadline.  *See* Settlement Agreement, Dkt. No. 156-1, at 28, Section X.  Mr. Morgan does not provide any suggestions for how the objection requirements could be made any simpler.

We note one other aspect of Mr. Morgan's purported objection.  Mr. Morgan attempts to "join in and incorporate herein by reference any and all objections filed by other objectors as though set forth in full, to the extent not inconsistent with the specific objections made herein." Such a purported objection-by-incorporation clearly violates this Court's Preliminary Approval Order which requires that objectors "must include" with the objection "all arguments, citations, and evidence supporting the objection" and "must state, in writing, all objections and the basis for any such objection(s)."  *See, also, In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 263 (3d Cir. 2009) (holding that where objector attempted to "incorporate by reference into its objection every argument raised in every brief, declaration and exhibit that was submitted," Objector "forfeited the opportunity to challenge" aspects of the District Court's decision to approve Settlement by "failing to make any mention of those arguments in its written objection.").  Mr. Morgan's objections are both improper and without merit.

### c.  <u>Objection Of Charles M. Thompson</u>

Charles M. Thompson, an attorney in Alabama, has filed a two sentence objection.  One sentence objects "to the said settlement and the complex procedure requiring class members to be compensated while paying millions of dollars to attorneys," with no further detail as to what problems he finds with the settlement or its procedures or what is unfair, unreasonable or inadequate about the settlement.   He then adds a second sentence:  "I have read online other complaints and objections of other class members and join in any of those validly made."  We have already discussed above the impropriety of this attempted objection-by-incorporation.

But there is another aspect to this attempt to "join in" other unspecified objections.  It is, we would suggest, to keep Mr. Thompson in the mix so that he can act as a spoiler with regard to bringing an appeal.   It appears to be nothing more than attempt to delay or interfere with the final approval of the settlement and the delivery of benefits to the class.  Mr. Thompson appears to be a "professional objector."  *See, e.g., Blessing v. Sirius XM Radio Inc.,* 507 F. App'x 1, 2 (2d Cir. 2012) (rejecting appeal of settlement approval on behalf of objector represented by "Charles M.

Thompson, Birmingham, Alabama"), for Objectors–Appellants."); *In re Warfarin Sodium*

*Antitrust Litig.,* 212 F.R.D. 231, 236 (D. Del. 2002) aff'd, 391 F.3d 516 (3d Cir. 2004) (approving

settlement over objections, and denying motion to intervene by Objector "Bradley et al."

represented by "Charles M. Thompson…Birmingham, Alabama. Counsel for Objector [Bradley

et al.]" since "The movants' primary motivation in filing these motions to intervene is to preserve

their rights to object to the settlement and appeal settlement approval.").  To boot, Mr. Thompson

appears not to be a member of the class, as set forth in Section II.B immediately above.

### 6.   The Objections To The Requested Fees And Expenses and Incentive Awards For The Representative Plaintiffs Should Be Overruled

Only a tiny number of putative class members (Diana Marmorstein, Ph.D., Charles M.

Thompson, Cathy Lochridge, Gordon Morgan, Patricia Penney and Shirley Thomas) have filed

what could be considered objections to the requested fee.   None presents a reasoned objection,

but rather a knee-jerk reaction against attorneys getting paid.

Diana Marmonstein, Ph.D. asks this Court to "throw out the settlement and the case as

being frivolous and a waste of the court's time," stating that the suit is an "abuse of the U.S.

Judicial System.  Its only purpose is to enrich a few sleazy lawyers," and goes on to argue that she

is given an opportunity to obtain "a few cents to a few dollars as a result of minor transgressions

of large corporations" whereas the lawyers "seek millions to hundreds of millions of dollars" in

fees.  Dkt. No. 194.  Dr. Marmonstein clearly hates class actions, but does not provide any

reasoned argument against the modest fee requested here.

Patricia Penny states only, "I am not opting out, but I do object to attorneys' fees and

expenses."   That is all she says on the subject.

Shirley Thomas's objection is not clear, but it clearly states that she objects to the

settlement and seems to think that fees and expenses should be paid in separately and not reduce

class member payments.  That, of course, is precisely the way the Settlement is structured.   Fees

and expenses paid to Class Counsel will not reduce any payment to class members.

Cathy Lochridge complains "The lawyers are getting $5,500,000 but we are only getting

whatever we go to the trouble to add up."   It is not clear if this is meant to object to the amount of

attorneys' fees or an objection to having to file a claim in order to get a recovery.  Whatever it is, it does not present any reasoned or informed argument against the modest fee here.

Millie and Michale Stanberry filed identical (perhaps photocopied) objections that state as to attorneys' fees only "This is the Objection to the Request Class Counsels" and seem to suggest that payment to Class Counsel should be paid $999,999 "for advertising cost" (with no explanation of what this means or how that number was arrived at), and then goes on to suggest that they should be paid $1,000,000,000.   Again, this is not a reasoned or informed argument against the fee here.

Charles Thompson does not specifically object to the fees, but states that "I object to the said settlement and the complex procedure requiring class members to be compensated while paying millions of dollars to attorneys."   We have previously discussed Mr. Thompson's objection to the settlement, and as noted, it does not appear to make a specific objection to the fees, much less provide a reasoned argument against the fees.

Mr. Zurek's objection (filed in the name of his wife), in addition to arguing (incorrectly) that this is a coupon settlement, argues that the "fee request is disproportionate to the actual benefits derived by class members."  In fact, as we demonstrate below, the fee here is well below the fee that would be paid on a percentage-of-the-recovery method of awarding fees.   A fee "proportionate to the actual benefits derived" would be substantially higher.

The DOJ is silent on the question of Class Counsel's fees, but the FTC (at 15-16) asserts that a "disproportionate distribution of the settlement" will go to counsel, but, as we demonstrate below, that is demonstrably not true.  The FTC asserts, by *ipse dixit*, that ultimately  no one will be paid anything meaningful from the settlement and cites to *Bluetooth* for the proposition that the "reasonableness of attorneys' fees must be assessed in light of the results obtained."  (FTC at 16.)   No one can review the benefits obtained and the results achieved here and question the modesty and reasonableness of the fees here.

Gordon Morgan, who objects to what seems like every aspect of the Settlement, objects to fees stating, "The Settlement references a request for fees in the amount of $5,500,000, but gives no further information with which to assess fairness," ignoring that our detailed motion for fees

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 27 -

1    was filed on the Court's ECF system and posted on the settlement website as an "Important

2    Document."   And while Mr. Morgan claims a lack of information to evaluate the fee request, he

3    is nonetheless able to conclude (although he does not say how) that the request "is excessive

4    under both a lodestar and a percentage of recovery methodologies."  It is not.

5            Under any method of analysis, the request is eminently reasonable (indeed, modest), and

6    substantially less than would be expected in a case with this result.  As of the end of July, Class

7    Counsel had devoted more than $5,656,871.88 in time and expenses to the case, with a great deal

8    more to come, yet have, consistent with the Settlement Agreement, limited their fee and expense

9    request to $5,500,000.  (Dkt. No. 197-1at ¶¶23-24.) If fees are awarded on a percentage of the

10   recovery basis, the fee request is modest.   Using amounts actually claimed, as distinct from the

11   more generous calculation of amounts made available, still reflects how modest the fee request is.

12   As we discussed in our motion for approval of attorneys' fees and expenses (Dkt. No 197 at 6-8),

13   in the Ninth Circuit, in claims-made settlements, courts apply a percentage to a number derived

14   from adding monies made available to the class, plus costs of notice and administration plus

15   attorneys' fees and expenses paid in addition to settlement payments.  We noted that the

16   Settlement provides free billing summaries to Class Members who request them, and that based

17   only on the number of billing summaries requested as of that date (many have been filed since

18   then), the value of those billing summaries was well in excess of $100 million, charged at the

19   rates AT&T charges for providing copies of old bills to customers.  No one has disputed that

20   calculation, nor, we believe, could they.

21           But, as we note below, this benefit (which serves a consumer education function as well as

22   a facilitation of claims filing) can be completely ignored in making a percentage-of-the-recovery

23   calculation and a much higher fee than is requested is *still* implied.

24           As of mid-October,[9] more than $16.3 million in claims under $10,000 have been filed,

25   ──────────────────────

26   [9] The claims filing deadline is not until December 2, 2013 or 30 days after Class members receive a timely requested billing summary, whichever is later.  More than 502,000 billing summary

27   request forms have been submitted so far requesting summaries for 548,000 accounts, thousands of which are still being processed or as to which the billing summaries have only just recently

28   been sent.  Keough Decl. ¶ 25; Gadson Decl. ¶ 27.

completely excluding all claims over $10,000 (although, to be sure, there are customers with legitimate claims well over $10,000) .  Together with the estimated $16 million in notice and administration costs that AT&T will pay the Settlement Administrator (Keough Decl. ¶ 32), under the most conservative analysis, this makes the benefits conferred more than $32.3 million (even without taking into account the attorneys' fees and expenses that will be paid *in addition* to all other payments and benefits).  Application of the Ninth Circuit's 25% "benchmark" implies a fee far in excess of that requested here.

Under a lodestar analysis, the fee is just as clearly modest and below what anyone would expect in a case of this nature and with this result.  As of late July, Class Counsel's lodestar and expenses were *already* in excess of the requested fee, and since then they have devoted an additional $ 274,875.01 in time and expenses to the litigation, with much more to come.  (Jacobs Decl. ¶ 7.)   As of the end of September, the lodestar and expenses devoted to the case are in excess of $ 5,900,000 (*id.*), thus yielding a *negative* multiplier in a case where application of traditional lodestar methodology would imply a significantly higher fee than is requested here.[10]

As for the requested incentive awards, only three objectors have said anything about them.  Cathy Lochridge states, "I'm not sure what they have to do, but $5,000 for the Class Representatives seems really high."  Shirley Thomas objects on the mistaken belief that such award will reduce payments to Class Members.  Finally, Gordon Morgan objects, "Additional objection is made to the $5,000 incentive awards to each class representative as excessive," with no further exposition.  As demonstrated in Class Counsels' Motion for Attorneys' Fees and Expense and Class Representative Incentive Awards  (Dkt. No 197 at 14-15) the requested incentive awards are reasonable and should be awarded.

## CONCLUSION

Class members have the ability to file claims for refunds of 100 cents on the dollar of all

---

[10]    If the Court awards the full request of $5.5 million and the Court approves it, Class Counsel will pay $50,000 to counsel in each of two of the cases listed on the website as "Existing Litigation,"  *Jones v. Southwestern Bell Telephone Co.,* in Saline County Arkansas circuit court, and *Kim Arnold v. AT&T, Inc.,* currently pending on appeal before the United States Court Of Appeals For The Tenth Circuit.   Such counsel have agreed that they will provide assistance if needed to respond to challenges to Class Member claims.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT, ETC.

CASE NO. 4:09-CV-01529 SI

- 29 -

crammed charges during the eight-year class period, and there is no possibility in the foreseeable future of a return to the cramming that gave rise to this litigation.  By any definition, such a settlement is fair, reasonable and adequate to the class.

And, it should be noted, that this is a net-net settlement.   No deductions are made from the class's recovery for the substantial notice and administration costs of the settlement (in excess of $16 million – Keough Decl. ¶ 32) nor for attorneys' fees.   Those are paid *in addition* to the monetary benefits paid to the class.

This Settlement, unlimited in its monetary relief to Class Members, and unprecedented in the scope of its injunctive relief, has led a great number of AT&T customers to claim refunds for unauthorized charges placed on their bills that they paid during the Class Period.  And, as a result of this Settlement, millions more consumers have been educated about the problem of cramming, and millions more have benefited from AT&T's exit from billing for so-called miscellaneous or enhanced services.   The Settlement is, at a minimum, fair, reasonable and adequate to the members of the class and should be given final approval.

For the reasons stated, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the [Proposed]  Final Approval Order And Judgment.

Dated: October 18, 2013          Respectfully submitted,

                                 */s/ John G. Jacobs*

                                 John G. Jacobs (*pro hac vice*)
                                 Bryan G. Kolton (*pro hac vice*)
                                 JACOBS KOLTON, CHTD.
                                 55 West Monroe Street, Suite 2970
                                 Chicago, Illinois 60603
                                 Telephone: (312) 427-4000
                                 Facsimile:  (312) 268-2425
                                 E-mail:  jgjacobs@jacobskolton.com
                                 E-mail:  bgkolton@jacobskolton.com

                                 David Schachman (*pro hac vice*)
                                 LAW OFFICES OF DAVID SCHACHMAN, P.C.
                                 55 West Monroe Street, Suite 2970
                                 Chicago, Illinois 60603
                                 Telephone:  (312) 427-9500
                                 Facsimile:  (312) 268-2425
                                 ds@schachmanlaw.com

1  Jeffrey F. Keller (State Bar No. 148005)
   KELLER GROVER, LLP
   1965 Market Street
2  San Francisco, CA 94103
   Telephone:  (415) 543-1305
3  Facsimile:  (415) 543-7861
   jfkeller@kellergrover.com
4
   Michael W. Sobol (State Bar No. 194857)
5  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
6  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
7  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
8  msobol@lchb.com

9  Michael A. Caddell
   Cynthia B. Chapman
10 Craig C. Marchiando (*Pro Hac Vice*)
   CADDELL & CHAPMAN
11 1331 Lamar, Suite 1070
   Houston, TX  77010
12 Telephone:  (713) 751-0400
   Facsimile:  (713) 751-0906
13 mac@caddellchapman.com
   cbc@caddellchapman.com
14 ccm@caddellchapman.com

15 *Class Counsel*

16

17

18

19

20

21

22

23

24

25

26

27

28