Gordon Morgan (*Pro Se* Objector/Appellant)
4701 Ayers, Ste.105
Corpus Christi, Texas  78415
Telephone: (361) 887-4700

**FILED**

DEC 2 4 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY NWABUEZE, et al., | Case No. C 09-01529 SI |
| Plaintiffs, | |
| v. | |
| AT&T INC., et al., | |
| Defendants. | |

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that Objector/Appellant Gordon Morgan hereby appeals the Order Granting Final Approval of Class Settlement dated November 27, 2013 (Dkt. # 247) and any other order or judgment granting approval or the settlement and/or attorneys' fees and/or expenses in this matter.  This appeal is to the Ninth Circuit Court of Appeals.  A copy of said judgment or order is attached hereto. (See Exhibit "A")

I have received legal assistance in this matter from Bandas Law Firm, P.C. and do not seek any special advantage or favor because this is filed *pro se*.

Dated: December 23, 2013                 Respectfully submitted,

By: _____

Gordon Morgan *Pro Se* Objector/Appellant

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing with the Clerk of the Court using FedEx Priority Overnight Delivery and that a true and correct copy of the foregoing document has been forwarded to all counsel via U.S. Mail on this the 23rd day of December, 2013.

DATED this December 23, 2013.

John G. Jacobs
55 West Monroe Street, Suite 2970
Chicago, IL  60603

Douglas R. Tribble
501 West Broadway, Suite 1100
San Diego, CA  92101

Gordon Morgan *Pro Se* (Objector/Appellant)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOY NWABUEZE, individually and on behalf of
a class of similarly situated individuals,

        Plaintiffs,

v.

AT&T INC., et al.,

        Defendants.

No. C 09-01529 SI

**ORDER GRANTING FINAL APPROVAL
OF CLASS SETTLEMENT**

On November 15, 2013, the Court conducted a fairness hearing regarding final approval of the
settlement agreement in this action, as well as attorneys' fees and expenses, and incentive payments to
the class representatives. Having considered the arguments of counsel and the papers submitted, the
Court GRANTS final approval of the settlement agreement; GRANTS the requested incentive awards;
but defers ruling on the attorneys' fees and expenses as set forth below.

## BACKGROUND

This lawsuit was brought in early 2009 against AT&T on behalf of a purported class of current
and former AT&T landline customers who had allegedly been billed by AT&T for unauthorized charges
placed on their bills by billing aggregators on behalf of third-party providers. *See* Complaint. This
practice of placing unauthorized charges on customers' monthly phone bills is known as "cramming."
*See, e.g.,* First Amended Complaint ("FAC") at ¶¶ 50, 137.

**United States District Court**
For the Northern District of California

**EXHIBIT**

A

United States District Court
For the Northern District of California

The operative complaint in this case alleges that AT&T knowingly permits the third-party billing and collection services to place unauthorized charges on its customers' monthly bills. *Id.* at ¶ 2. Plaintiffs allege that "AT&T could eliminate the problem in an instant if it chose to, but it has very deliberately chosen to continue things as they are." *Id.* Plaintiffs further allege that AT&T does not permit the third-party providers to directly charge its customers; instead, AT&T requires them to bill through what are known as "billing aggregators." *Id.* at ¶ 5. The billing aggregators then act as an intermediary between the third-party service providers and the local exchange carriers ("LECs"). *Id.* Plaintiffs claim that "[t]he third parties send their billings to the billing aggregators, and the billing aggregators in turn send those billings along to the appropriate LEC, and the LEC places those charges on its customers' monthly phone bills." *Id.*

Plaintiffs and the putative class and sub-class bring claims against AT&T for: (1) violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (2) conspiracy to violate RICO §§ 1961-1968; (3) violations of 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401; (4) tortious interference with a contract; and (5) breach of trust. *Id.* at ¶¶ 72-113; 123-133. Plaintiffs, on behalf of the sub-class, also bring claims against AT&T for: (1) breach of contract; (2) violation of California Public Utilities Code § 2890; and (3) violation of California Business & Professions Code § 17200 *et seq. Id.* at ¶¶ 114-122, 134-150. Plaintiffs, the putative class and sub-class "seek actual, treble and exemplary damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees." *Id.* at ¶ 7.

On August 13, 2009, plaintiffs filed a first amended complaint. On January 29, 2011, the Court granted in part and denied in part defendant's motion to dismiss the FAC.[1] Dkt. 88. The Court denied the motion with respect to plaintiffs' RICO claims, breach of contract claim, tortious interference with contract claim, and the claim for violation of California Public Utilities Code § 2890. *Id.* The Court also denied the motion with regard to plaintiffs' unfair competition claim to the extent that it was predicated on unlawful or unfair practices, but granted the motion to the extent it was based on

---

[1] The lapse of time between filing the FAC and the Court's ruling on defendant's motion to dismiss was due to ongoing settlement negotiations. When the negotiations were unsuccessful, defendants re-noticed the motion.

fraudulent practices. *Id.* The Court granted the motion with respect to the remainder of plaintiffs' claims. *Id.*

Beginning in August, 2011, the parties engaged in settlement negotiations, first before Judge Eugene Lynch (Ret.), and then before Judge Wayne Brazil (Ret.). *See* Dkt. 153. After nearly a year of negotiations, the parties reached agreement on a proposed settlement ("Settlement"). *Id.*

The terms of the Settlement include: (1) billing credit (for current customers) or refunds (for former customers) for 100% of the unauthorized third-party charges; (2) remedial remedies, as detailed below; (3) payment of attorneys' fees and expenses in an amount not to exceed $5,500,000, or the amount awarded in *Moore v. Verizon*; and (4) incentive awards of $5,000 to the two Class Representatives. Dkt. 153-1. In addition to paying the attorneys' fees, AT&T will be responsible for payment of the costs of notice and administration of the Settlement. *Id.* To assist customers in determining whether, and in what amounts, they have been overcharged, AT&T has agreed to provide customers, free of charge, with a billing summary identifying all third-party charges they incurred during the class period. *Id.* Using that billing summary, customers may submit claims to recover 100% of the unauthorized charges. *Id.*

With respect to the remedial relief, AT&T represents that at this time it has fully implemented the remedial remedies to which the parties agreed. *Id.* Specifically, effective September 17, 2012, AT&T no longer allows any third-party billing of enhanced services.[2] *Id.* Thus, the parties agree that AT&T has already complied with the agreed to remedial relief. However, AT&T has also agreed to provide its current incumbent LEC customers an informational bulletin regarding the kinds of third-party billing that AT&T still permits. *Id.*

In exchange for the relief set forth above, the class members agree to release claims against (1) all AT&T entities; (2) all billing Clearinghouses and their related affiliates; and (3) all third parties who placed a third-party charge on an AT&T customer's bill.[3] On January 17, 2013, the Court issued an Order granting preliminary approval of the proposed Settlement.

---

[2] At the fairness hearing, counsel for AT&T explained that "enhanced services" are any non-basic telephone or web-based services. According to counsel for AT&T, the only third-party charges that it still permits are toll charges, for example, directory assistance.

[3] The parties provide a list of entities excluded from this list of releases. Dkt. 153-1, Ex. 13.

United States District Court
For the Northern District of California

1      On April 1, 2013, following several discussions with the Federal Trade Commission ("FTC")
2 and the Department of Justice ("DOJ"), the parties made various modifications to the Settlement
3 Agreement. Dkt. 161. These modifications related to the notice provisions of the Settlement, as well
4 as to the claim reimbursement process. *Id.*

5      On August 12, 2013, Class Counsel filed a motion for Attorneys' Fees and Expenses and Class
6 Representative Incentive Awards. Dkt. 197. On August 30, 2013, the FTC filed a motion for leave to
7 file an *amicus* brief about the Settlement. Dkt. 210. The FTC's brief expresses concerns regarding the
8 adequacy of the class notice procedures, the difficulty of the claim reimbursement process, the
9 inadequacy of the remedial relief, and the breadth of the required release. *Id.* On September 2, 2013,
10 the DOJ filed a "statement of interest" noting its concerns regarding the Settlement. Dkt. 211. The
11 DOJ's concerns are similar to the FTC's. *Id.* On September 25, 2013, the Court granted the FTC's
12 unopposed motion to file an *amicus* brief. Dkt. 227.

13      On October 18, 2013, plaintiffs filed a Motion for Final Approval of the Settlement, Payment
14 of Attorneys' Fees and Expenses and Incentive Awards. Dkt. 230.

15

16                                **LEGAL STANDARD**

17      Federal Rule of Civil Procedure 23(e) provides that: "The claims, issues, or defenses of a
18 certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."
19 Court approval requires a two-step process: (1) preliminary approval of the settlement; and (2) following
20 a notice period to the class, final approval of the settlement at a fairness hearing. *See Nat'l Rural*
21 *Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). The Court may issue final
22 approval of a class settlement "only after a hearing and on finding that it is fair, reasonable, and
23 adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th
24 Cir. 2011).

25      Rule 23(e)'s primary concern is "the protection of those class members, including the named
26 plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for*
27 *Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

28

United States District Court
For the Northern District of California

In considering final approval of a proposed settlement, the Court's discretion is guided by the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In addition to these factors, the Court may consider the procedure by which the parties arrived at the settlement to determine whether the settlement is truly the process of arm's length bargaining, rather than the product of collusion or fraud. *See Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The Court's role in evaluating a proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625). In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.").

//

//

//

1

**DISCUSSION**

2    **1.    Balancing of Factors.**

3         The Court first applies the relevant factors to the proposed Settlement to determine whether

4    approval should be granted. For the reasons stated below, the Court finds that this Settlement is fair,

5    adequate, and reasonable.

6

7         **A.    Strength of Plaintiffs' Case.**

8         The first factor for the Court to consider is the strength of the plaintiffs' case. This action

9    reached settlement before the Court had occasion to consider the merits of the claims. However, while

10   the plaintiffs believe their claims are meritorious, they concede that they would face significant hurdles

11   should the case proceed through litigation. Dkt. 230 at 7. Numerous class action lawsuits in the

12   cramming context have resulted either in outright dismissal, or in settlements with little significant

13   recovery for the plaintiffs. *Id.* Given the challenges the plaintiffs would face should this case move

14   forward, this factor weighs in favor of approving the Settlement.

15

16        **B.    Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

17        The Court next considers the risk, expense, complexity, and likely duration associated with

18   pursuing this case through the trial and appellate process. The plaintiffs acknowledge that there is

19   substantial risk in pursuing the case. *Id.* Indeed, the plaintiffs note that, throughout this process AT&T

20   has maintained that the plaintiffs would be unable to: "(1) secure certification of a litigation class, (2)

21   hold AT&T liable for the unauthorized billing of third-party billers, and (3) succeed on the merits of the

22   case, including Plaintiffs' RICO theory of liability." *Id.* Additionally, because proving that particular

23   Class Members did not authorize certain charges is an inherently individual question, AT&T maintains

24   that the plaintiffs would be unable to prove classwide damages. *Id.*

25        The plaintiffs assert that, without a settlement, the Class would incur huge expenses as the case

26   proceeded through "anticipated summary judgment motions, contested class certification, *Daubert*

27   motions, and appeals." *Id.* at 8. Moreover, even after enduring protracted litigation, there is no certainty

28   that the plaintiffs would recover anything at all. *Id.*

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The Court finds that the plaintiffs have shown that, should the case go forward, AT&T would vigorously defend against this action. Accordingly, without this Settlement, the plaintiffs risk denial of a motion for class certification, possible dismissal at the summary judgment stage, and a judgment in AT&T's favor after trial. These risks, coupled with the considerable expense associated with further litigation, weigh in favor of approving the Settlement.

### C.       Risk of Maintaining Class Action Status.

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. As noted above, AT&T has maintained throughout this process that it was prepared vigorously to oppose the plaintiffs' class certification. *Id.* at 7. Although the plaintiffs contest AT&T's characterization of their claims, they concede that any one of AT&T's 44 asserted affirmative defenses, if successful, would defeat their claims. *Id.* Furthermore, courts have frequently refused to certify classes in cramming cases. *See id.* Thus, considering the difficulties in certifying and maintaining a class in this type of case, the Court finds that this factor weighs in favor of approving the Settlement.

### D.       Amount Offered in Settlement.

The amount offered in the Settlement is another factor that weighs in favor of approval here. AT&T has agreed to pay 100% of all unauthorized third-party charges incurred by customers who submit claims. In addition, AT&T no longer permits any third-party charges for enhanced services, and has agreed to provide information to its current customers regarding precisely what kinds of third-party billing it still permits. Moreover, AT&T will be required to pay the costs of notice and settlement administration, as well as Class Counsels' attorneys' fees and expenses in an amount up to $5,500,000, and incentive awards for the Class Representatives up to $5,000 each.

The changes AT&T has made regarding its third-party billing practices benefit not just the Class Members, but all of AT&T's current and future customers as well. Because the Settlement therefore confers a substantial benefit upon the Class, the Court finds that this favor also weighs in favor of approving the Settlement.

E.      **Extent of Discovery Completed and the Stage of the Proceedings.**

The parties in this case litigated a motion to dismiss, participated in ADR proceedings, and engaged in settlement talks, before two separate mediators, over the course of nearly a year before finally reaching this Settlement.  That the parties were able to reach settlement at this stage of the proceedings weighs in favor of approving the Settlement.

F.      **Experience and Views of Counsel.**

The experience and views of counsel also support approval of the Settlement here.  Class Counsel and the attorneys representing AT&T are experienced in this type of litigation and are in a position to offer opinions regarding whether this Settlement is fair, adequate, and reasonable.  All counsel involved in this case unreservedly recommend approving this Settlement.  Dkt. 230 at 11.  Given the breadth of experience these counsel represent, the Court credits their recommendations that this Settlement should be approved.

G.      **Governmental Participant.**

The next factor the Court considers is the presence of a governmental participant in the case.  Both the FTC and the DOJ have weighed in with concerns regarding the fairness and adequacy of the proposed settlement.  While the parties agreed to modify the terms of the Settlement in response to some issues raised by the governmental entities, the final proposal does not alleviate all of the concerns raised by the FTC and the DOJ.  While the FTC and the DOJ are not precisely participants in the case, not actually being parties to the litigation, the Court nevertheless finds that this factor weighs against approving the Settlement.

H.      **Reaction of Class Members.**

The reaction of the Class members is another factor the Court considers.  AT&T and the Settlement Administrator in this case have provided mail and e-mail notices to more than 23,000,000 people who have been identified as potential class members. Dkt. 230 at 1.  Out of this enormous class,

8

only 25 individuals have objected to the Settlement. *Id.* at 9. Additionally, only 1,339 people have chosen to opt out. *Id.* To date, AT&T has received more than 500,000 requests for billing summaries, and more than $16,000,000 in claims have been filed. *Id.* at 10. The Court finds that these numbers demonstrate a favorable response by the Class Members; this factor therefore weighs in favor of approving the Settlement.

### I.      Arms- Length Negotiation.

Finally, the Court considers whether the parties reached this Settlement as a result of good faith, arms-length negotiations rather than as a result of fraud or collusion. The parties here engaged in settlement talks, overseen by two different mediators, over the course of nearly a year before finally agreeing upon this Settlement. Considering the nature and length of the negotiations process, the Court is satisfied that this Settlement is not the product of collusion or fraud, but rather is the result of a successful arms-length negotiation. Therefore, this factor also weighs in favor of approving the Settlement.

### J.      Conclusion.

Although the two governmental entities express ongoing concerns regarding the fairness and adequacy of the settlement, the Court finds that, on balance, the relevant factors weigh in favor of finding that the proposed Settlement is fair, adequate, and reasonable.

### 2.      Objections.

When determining the final approval of a class action settlement, the Court considers whether there are objections to the proposed settlement, and the nature of those objections. The mere fact that there are objections to the settlement does not necessitate disapproval; instead, the Court must evaluate the objections to determine whether they suggest serious reasons why the proposed settlement might be unfair. *Moore v. Verizon Commc'ns*, No. C 09-1823 SBA, 2013 WL 4610764, at *9 (N.D. Cal. Aug. 28 2013). For the following reasons, none of the objections in this case requires rejecting the Settlement.

**A. Standing to Object.**

Only members of the Settlement Class have standing to object to a proposed settlement. *See* Fed. R. Civ. P. 23(e)(5); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). Thus, the Court need not consider objections made by individuals who are not members of the Settlement Class, because they lack standing. *Moore*, 2013 WL 4610764, at *9. According to Resha Gadson, Associate Director of Systems Integration for AT&T, objectors Charles M. Thompson and Diana Marmorstein did not incur any third-party charges during the class period and are therefore not members of the Settlement Class. Dkt. 234, ¶ 28. Further, objector Cathy Lochridge has only a wireless telephone account with AT&T, and she is also therefore not a member of the Settlement Class. *Id.* Because these individuals lack standing to object, the objections they submitted are OVERRULED.

**B. Procedurally Deficient Objections.**

The Preliminary Approval Order states, in relevant part:

> 15. Any Settlement Class Member who wishes to object to the proposed Settlement, the applications for attorneys' fees, costs and expenses or the request for the payment of incentive awards must file with the Court, and serve upon Class Counsel and Defendants' Counsel, a written objection no later than September 2, 2013.
>
> (a) Any Settlement Class Member who intends to object to this Agreement must include with the objection his/her name and address and telephone number and all arguments, citations, and evidence supporting the objection. An objecting Settlement Class Member must state, in writing, all objections and the basis for any such objection(s), and provide a statement as to whether the Objector intends to appear at the Final Approval Hearing, either with or without counsel. Objections not filed and served in accordance with this Order shall not be received or considered by the Court. Any Settlement Class Member who fails to timely file and serve a written objection in accordance with this Order shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Proposed Settlement, to the fairness, reasonableness, or adequacy of the Proposed Settlement, to the payment of attorneys' fees, costs, and expenses, the payment of incentive awards, or to the Final Approval Order or the right to appeal same.

Dkt. 159 at 8-9. The objections submitted by the following individuals failed to comply with the Court's procedural requirements for objecting to the Settlement: Patricia Bradshaw; Steve Barclay; Elizabeth Jordan; Blanca Cordero; Elinor Donovan; Alexander Drummond; Patricia Penney; Milagros Herrera; Richard Fox; Diana Marmorstein; B & D Sod/Bill Faiella; Cathy Lochridge; Angela Price;

United States District Court
For the Northern District of California

1   Michale Stanberry; Millie Stanberry; Charles Thompson; Phillip James; Pearlie Mendosa; Janet Taylor;
2   Shirley Thomas; Lula Wardlaw; and Aki Heihai/Biao Xu.

3          Specifically, Patricia Bradshaw's objection is OVERRULED because she filed it after the stated
4   objection date of September 2, 2013, failed to file a written objection with the Court, and failed to
5   include a statement regarding whether she intended to appear at the final approval hearing. Steve
6   Barclay's objection is OVERRULED because it is untimely, he failed to file a written objection with
7   the Court, and his objection does not include a telephone number, a statement of the basis of his
8   objection, or a statement regarding whether he plans to appear at the final approval hearing. Elizabeth
9   Jordan's objection is OVERRULED because it is untimely, and her objection does not include a
10  statement regarding whether she plans to appear at the final approval hearing. Blanca Cordero's
11  objection is OVERRULED because she failed to file a written objection with the Court, and her
12  objection does not contain a telephone number, a statement of the basis of her objection, or a statement
13  regarding whether she plans to appear at the final approval hearing. Elinor Donovan's objection is
14  OVERRULED because she failed to file her objection with the Court, and because her objection does
15  not include a statement regarding whether she plans to appear at the final approval hearing. Alexander
16  Drummond's objection is OVERRULED because he failed to file his objection with the Court, and
17  because his objection does not contain a telephone number, a statement of the basis of his objection, or
18  a statement regarding whether he plans to appear at the final approval hearing. Patricia Penney's
19  objection is OVERRULED because she failed to file her written objection with the Court, and because
20  her objection does not contain a phone number, a statement of the basis of her objection, or a statement
21  regarding whether she plans to appear at the final approval hearing. Milagros Herrera's objection is
22  OVERRULED because she failed to serve her written objection on counsel, and because her objection
23  does not contain a phone number, or a statement regarding whether she plans to appear at the final
24  approval hearing. Richard Fox's objection is OVERRULED because his objection does not contain a
25  phone number, or a statement regarding whether he plans to appear at the final approval hearing. Diana
26  Marmorstein's objection is OVERRULED because her objection does not include a phone number, or
27  a statement regarding whether she plans to appear at the final approval hearing. B & D Sod/Bill
28  Faiella's objection is OVERRULED because his objection does not contain a statement regarding

1   whether he plans to appear at the final approval hearing. Cathy Lochridge's objection is OVERRULED

2   because her objection does not contain a statement regarding whether she plans to appear at the final

3   approval hearing.  Angela Price's objection is OVERRULED because she failed to file a written

4   objection with the Court, and because her objection does not contain a phone number, a statement of

5   the basis of her objection, or a statement regarding whether she plans to appear at the final approval

6   hearing. Michale and Millie Stanberrys' objections are OVERRULED because they do not contain

7   statements regarding whether they plan to appear at the final approval hearing.  Charles Thompson's

8   objection is OVERRULED because his objection does not include a statement regarding whether he

9   plans to appear at the final approval hearing.  Phillip James's objection is OVERRULED because his

10  objection does not contain a statement regarding whether he plans to appear at the final approval

11  hearing.  Pearlie Mendosa's objection is OVERRULED because her objection does not contain a

12  statement of the basis of her objection, or a statement regarding whether she plans to appear at the final

13  approval hearing. Janet Taylor's objection is OVERRULED because her objection does not contain a

14  phone number, a statement of the basis of her objection, or a statement regarding whether she plans to

15  appear at the final approval hearing.  Shirley Thomas's objection is OVERRULED because her

16  objection does not contain a phone number, or a statement regarding whether she plans to appear at the

17  final approval hearing. Lula Wardlaw's objection is OVERRULED because her objection does not

18  contain a phone number, a statement of the basis of her objection, or a statement regarding whether she

19  plans to appear at the final approval hearing. Aki Hehai/Biao Xu's objection is OVERRULED because

20  the objection does not include a statement of the basis of the objection, or a statement regarding whether

21  the objector plans to appear at the final approval hearing.

22

23       **C.       Substantive Objections.**

24       In addition to being procedurally deficient, none of the twenty-two objections discussed above

25  warrants rejecting the Settlement, for the reasons that follow.

26  //

27  //

28

### (1)   Objections that Fail to State a Basis for Objecting.

The objections of Lula Wardlaw, Pearlie Mendosa, Alexander Drummond, Blanca Cordero, Patricia Penney, Aki/Heihai/Biao Xu, Steve Barclay, and Angela Price do not state why they are objecting. These objectors submitted documents including statements ranging from "I decided to object," to "I do hereby make my objection known and give my attorney the right to comment on the settlement." None of these objectors stated a basis for their objections. Therefore, their objections are also OVERRULED because they do not raise concerns regarding the fairness, adequacy, or reasonableness of the Settlement.

### (2)   Objections to Actions Beyond the Settlement.

The objections of Biao Xu, Elinor Donovan, and Elizabeth Jordan are not actually objections to the Settlement. Biao Xu appears to be objecting to the most recent monthly statement received from AT&T and the disconnection of his DSL service. Elinor Donovan states that she does not "want to sue AT&T," and Elizabeth Jordan states that "AT&T should be charged with strong penalties to pay customer Elizabeth Jordan" and further attempts to apply for reimbursement of unauthorized third-party charges. Therefore, these objections are also OVERRULED because they are not actually objections to the substance of the Settlement.

### (3)   Objections that Seek a More Favorable Result.

The objections of Lou Janet Taylor, Richard Fox, Phillip James, Bill Faiella/B&D Sod, Michele and Millie Stanberry, Biao Xu, Patricia Bradshaw, and Elizabeth Jordan all seek what they individually view as "better" remedies. These objectors would, variously, like to be reimbursed for the time spent contacting AT&T about disputed third-party charges, seek damages for stress, damages for loss of business revenue, advertising costs, assert privacy issues, and copyright infringement. Patricia Bradshaw's objection states that she "would like the incentive award." That a more favorable result for some Class Members could potentially have been reached is not a sufficient reason to reject an otherwise fair and reasonable settlement. *See Hanlon*, 150 F.3d at 1027. Therefore, these objections

13

United States District Court
For the Northern District of California

1    are also OVERRULED because they do not demonstrate that the agreed-upon Settlement is not fair,

2    adequate, and reasonable.

3

4                    **(4)     Objections to the Claims Process.**

5         The objections of Cathy Lochridge, Milagros Herrera, and Charles Thompson take issue with

6    the claim reimbursement process outlined in the Settlement.  Cathy Lochridge and Milagros Herrera

7    both assert that AT&T should be responsible for determining what it owes to each current or former

8    customer. Charles Thompson characterizes the claim reimbursement procedure as "complex," but does

9    not explain why.  The Court has already determined that the claims process does not render this

10   Settlement unfair, inadequate, or unreasonable; therefore, these objections are also OVERRULED.

11

12             **D.     Remaining Objections of Class Members.**

13        Of the twenty-five objections received in response to the proposed Settlement, only three

14   complied with the Court's procedural requirements.  As set forth below, none of the remaining three

15   objections requires rejection of the Settlement.

16

17                    **(1)     Alma Rose Snyder**

18        Alma Rose Snyder objects to the Settlement on the grounds that it "does not address the

19   grievances of those whose privacy has been invaded by third-party use of their phone number and other

20   information," and that it fails to address the needs of those "who continue to suffer financial losses due

21   to abusive and invasive business communications practices from the perpetrators of the third-party

22   billing scheme."  That a settlement could potentially have reached a more favorable result for certain

23   individuals in the class does not demonstrate that the agreed-upon settlement is not fair, adequate, and

24   reasonable. *See Hanlon*, 150 F.3d at 1027.  Therefore, Ms. Snyder's objection is OVERRULED.

25

26                    **(2)     Rosa Amelia Zurek**

27        Rosa Amelia Zurek, through her husband, objects to the Settlement on several grounds.  Dkt.

28   180.  However, in a separate document, not filed with the Court, Ms. Zurek's husband informed Class

                                             14

United States District Court
For the Northern District of California

Counsel that he had filed an objection on his wife's behalf. *See* Dkt. 230-1. He stated: "If you settle this matter, my wife will withdraw her objection. I will extend to you an offer to settle this matter with my wife for $30,000 if the settlement terms are reached by 5:00 PM PST on Friday, June 28, 2013." *Id.* He further notes that, if Class Counsel rejects his offer, his wife will file an appeal should the Court approve the Settlement. *Id.* The true basis for Ms. Zurek's objection thus appears to be obtaining additional money for herself, or for her husband, rather than a concern for the fairness, adequacy, and reasonableness of the Settlement. Therefore, the Court OVERRULES this objection as frivolous and meritless.

### (3)    Gordon Morgan

Gordon Morgan objects to the Settlement on several grounds. Dkt. 214. His objections are largely conclusory and fail to provide legal support or evidence. Mr. Gordon has acted as an objector in at least two other cases within this Circuit. *See Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. March 11, 2013) (finding that Morgan's objections to the settlement were "without merit" and requiring him to post an appeal bond of $41.150 based on "vexatious intent in filing [his] notice of appeal"); *Dennings v. Clearwire Corp.*, Case No. C10-1859 JLR, 2013 WL 3870799 at *2-3 (W.D. Wash. July 13, 2013) ("Objectors directly disobeyed a court order. They were ordered to either post a bond within five days or else withdraw their appeal. They did neither . . . . Objectors' decision to ignore the court's appeal bond order is only the most recent episode in Objectors' ongoing procedural machinations before this court and the Ninth Circuit. Objectors' strategy this time around is consistent with their behavior in these proceedings: they appear to believe that they do not need to follow court orders until they are threatened with sanctions for failing to do so . . . . This is not acceptable conduct for attorneys appearing before this court."). *See also Malta v. The Fed. Home Loan Mtge. Corp.*, S.D. Cal., No. 3:10-cv-01290-BEN-NLS, ECF Dkt. No. 91 (June 21, 2013 Order overruling objection by Gordon Morgan). The Court finds that Mr. Morgan's objection is without merit and his objection is OVERRULED.

//

United States District Court
For the Northern District of California

**D.      Outstanding Concerns of the FTC and DOJ.**

As discussed above, in April, 2013, the parties amended the proposed Settlement in response to issues raised by the FTC and the DOJ regarding notice to Class Members as well as the claims process itself.  However, both the FTC and the DOJ remain concerned that several aspects of the proposed Settlement are not fair, adequate, or reasonable.  These concerns are addressed below.

The FTC makes several points regarding the fairness and adequacy of the proposed settlement.  Specifically, the FTC suggests that: (1) the form of notice is inadequate; (2) the claims process is unduly complicated; (3) permitting challenges to any claims brought is unreasonable; (4) the remedial relief is inadequate; (5) the required release is too broad; and (6) the requested attorneys' fees are too high. *See* Dkt. 210-1.

While the FTC voices valid concerns, the Court finds that the FTC has failed to demonstrate that the Settlement should be rejected.  In approving a proposed settlement, the proper standard for the Court to apply is whether the settlement is fair, adequate, reasonable, and free from collusion or fraud, not whether the Class could have secured a better deal in exchange for the release of their claims. *See Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."); *Officers for Justice*, 688 F.2d at 625 ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'") (citations omitted).

Both the FTC and the DOJ question whether the form of notice is adequate.  The Court is persuaded by the arguments of Class Counsel that the notice provided in the Settlement is adequate. Customers identified as potential Class Members received notice in the form of a "call-out" on the front of their monthly bills, informing them that their bill contained additional important information. Dkt. 232 at 6.  The insert itself was bright yellow, a color designed to stand out from the rest of the bill. *Id.* As noted above, AT&T has already received over half a million requests for billing summaries, and more than $16,000,000 in claims have been filed. *Id.* at 7.  This indicates that the notice provisions are

United States District Court
For the Northern District of California

1  working. The notice provisions of the Settlement do not render the Settlement unfair, inadequate, or

2  unreasonable.

3        The Court further notes that the claims process itself is not as burdensome as the FTC contends.

4  As part of the Settlement, AT&T provides to past and current customers, upon request but free of

5  charge, a billing summary detailing all third-party billing charges each individual incurred. *Id.* at 10.

6  The Class Member must identify which, if any, of the third-party charges were unauthorized, and file

7  a claim for reimbursement with AT&T. *Id.* This process is consumer-friendly, and not nearly as

8  arduous as the FTC contends.

9        Nor does the process for challenging claims render the Settlement unfair or unworkable. Once

10  a Class Member has filed a claim for reimbursement, the only way that claim can be challenged is if an

11  entity swears, under penalty of perjury, that the consumer actually used the service billed for, the

12  consumer never paid for the service at all, or the entity already reimbursed the consumer for the claimed

13  charges. In theory, the challenge process should not block valid claims for reimbursement and, as Class

14  Counsel affirm, "claimants will be represented by Class Counsel in the challenge process and Class

15  Counsel are keenly attuned to any chicanery." *Id.* at 11.

16        The FTC next argues that the remedial relief is inadequate because AT&T will still permit some

17  third-party charges to appear on its bills. However, AT&T and Class Counsel assert that the elimination

18  of billing for "enhanced" third-party services will eliminate the "overwhelming bulk" of all

19  unauthorized third-party charges. *See id.* at 11-12. Additionally, the Settlement requires AT&T to

20  inform all current customers about what types of third-party billing it still permits. Thus, the Settlement

21  is not unfair, inadequate, or unreasonable due to the remedial relief it offers.

22        The FTC further asserts that the terms of the release are too broad. The Court is persuaded by

23  AT&T's statement that, without this broad release, no settlement would have been possible. *See* Dkt.

24  233 at 10. AT&T asserts that, without a release of the third-party billers and aggregators – who will be

25  providing most of the funds for the Settlement – it could never have entered into this Settlement at all.

26  *Id.* The law evinces a clear preference for settlement and compromise in the class action context. *See*

27  *Officers for Justice*, 688 F.2d at 625. Further, the Court has no discretion to alter any terms of a

28  settlement reached through good-faith negotiations. *See Hanlon*, 150 F.3d at 1026. Certainly the FTC

United States District Court
For the Northern District of California

1  would prefer not to release more culpable entities from liability. However, this is not a sufficient reason

2  to reject the Settlement.

3        The FTC's final concern is that the attorneys' fees requested are out of proportion to the Class

4  Members' recovery, and therefore they are unfair. Because the Court will consider the adequacy of the

5  attorneys' fees separately, the Court will not address this concern here.

6        In sum, the Court finds that the FTC's and the DOJ's concerns regarding the Settlement, while

7  valid, do not establish that the Settlement is unfair, inadequate, or unreasonable.

8

9  **3.     Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards.**

10        Finally, the Court must determine whether the requested attorneys' fees and expenses, and the

11  Class Representatives' incentive awards are fair and reasonable. For the reasons set forth below, the

12  Court finds that the incentive awards are fair and reasonable, but will require more detailed information

13  before awarding attorneys' fees and expenses.

14

15        **A.     Attorneys' Fees and Expenses.**

16        The Ninth Circuit has held that in a class action, "the district court must exercise its inherent

17  authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker*

18  *v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999). The judge is obligated to

19  ensure that any fee award is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir.

20  2003).

21        In common fund cases in the Ninth Circuit, the "benchmark" award is 25 percent of the recovery

22  obtained, with 20–30% as the usual range. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

23  (9th Cir. 2002). As the court in *Vizcaino* noted, the 25% benchmark rate is a starting point for the

24  analysis, and the selection of the benchmark or any other rate must be supported by findings that take

25  into account all of the circumstances of the case, including the result achieved, the risk involved in the

26  litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards

27  made in similar cases, and the lodestar crosscheck. *Id.* at 1048-50. Under the lodestar method, the

28  "figure is calculated by multiplying the number of hours the prevailing party reasonably expended on

the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942.

Where, as here, a settlement does not create a common fund from which to draw, the Ninth Circuit may analyze the case as a "constructive common fund" for fee-setting purposes. *See Bluetooth*, 654 F.3d at 940-41. To calculate appropriate attorneys' fees under the constructive common fund method, the Court should look to the maximum settlement amount that could be claimed. *See, e.g., Lopez v. Youngblood*, No. CV–F–07–0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 1, 2011); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-02069, 2011 WL 31266, at *5 n.5 (N.D. Cal. Jan. 5, 2011).

As noted above, to date, AT&T has received more than 500,000 requests for free billing summaries, and more than $16,000,000 in claims have been filed. The terms of the Settlement require AT&T to pay 100% of all valid claims it receives. Moreover, AT&T is financially responsible for compiling the free billing summaries, an expense that it asserts would have cost the Class Members over $100 million if AT&T did not provide them. *See* Dkt. 197 at 8. Additionally, AT&T will be responsible for paying the Settlement Administrator, a cost estimated to exceed $15,000,000. *Id.* The attorneys' fees and expenses will also be paid by AT&T, and will not be deducted from the recovery of any of the Class Members. Instead, this cost is in addition to all the other costs AT&T has agreed to pay under the terms of the Settlement. Finally, AT&T does not oppose the fees requested in this case, but instead agrees that it will pay not more than $5,500,000, or, an amount not to exceed the fee awarded in *Moore v. Verizon Communications*, No. C 09-1823 SBA.[4]

However, Class Counsel has not provided the Court with sufficient information to determine whether the fees requested in this case are fair and reasonable. Class Counsel has submitted declarations including the total hours each attorney at each firm billed on this matter, but there is no information

---

[4]The Court notes that, to date, no fees have been awarded in *Moore*. On November 27, 2013, Magistrate Judge Corley filed her Report and Recommendation Re: Motion for Attorneys' Fees in that case, finding that $7,500,000 in fees was warranted. *See* No. C 09-1823 SBA, Dkt. 211. Her recommendations will be considered by Judge Armstrong in due course.

regarding the nature of the tasks performed, or when they were performed – that is, before or after settlement was reached. Moreover, one firm, Lieff Cabraser, includes a billing summary encompassing not just lawyers and paralegals, but also billing out for clerks, litigation support, and one individual designated as "research." Dkt. 197-4 at 15. Based on the information currently before the Court, it is not possible to determine whether the fees sought are fair and reasonable.

Accordingly, Class Counsel is hereby ORDERED to file with the Court a sworn, written description detailing the projects and tasks completed by each lawyer involved in the case, and when the tasks were accomplished, as well as each firm's expense records for the expenses incurred during this litigation. **These supplemental materials shall be filed no later than December 13, 2013.**

### B.  Class Representative Incentive Awards.

Finally, Class Counsel request an incentive award of $5,000 for each Class Representative to compensate them for their efforts on behalf of the class. Dkt. 197. "The district court must evaluate [named plaintiffs'] awards individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. In this District, a $5,000 payment is presumptively reasonable. *Ko v. Natura Pet Products, Inc.*, No. C 09–02619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (citing *Hopson v. Hanesbrands Inc.*, No. CV–08–0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)).

Class Counsel state that both Class Representatives "exhibited a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action." Dkt. 197 at 15. They provided information and documents, in the pre-litigation phase, and continued to assist counsel after the lawsuit was filed. *Id.* Both Class Representatives helped with discovery and submitted to depositions. *Id.* Ms. Nwabueze, the named plaintiff here, also "submitted her personal computer to

examination by forensic examination, reviewed the briefing on Defendants' motion to dismiss and made [herself] available by phone for the parties' mediation sessions." *Id.* In light of the assistance the Class Representatives provided in this case, the Court finds that the requested incentive award of $5,000 for each of the Class Representatives is reasonable.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the record before it, the Court hereby ORDERS that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

2. The terms of the Settlement Agreement as modified by the parties are incorporated into this Order and are APPROVED.

3. All objections to the Settlement are OVERRULED.

4. The parties and the Settlement Administrator shall perform their respective obligations under the terms of the Settlement Agreement.

5. Class Counsel is ORDERED to provide the Court with more detailed information regarding the tasks performed by each attorney and the expenses each firm incurred, to aid the Court in accurately calculating fair and reasonable attorneys' fees and expenses. **These supplemental materials shall be filed no later than December 13, 2013.**

6. The Class Representatives are each awarded $5,000 as an incentive award.

**IT IS SO ORDERED.**

Dated: November 27, 2013

_Susan Illston_
_____
SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE